ACCEPTED
15-25-00002-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/27/2025 7:05 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00002-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/27/2025 7:05:52 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS
# FOR THE FIFTEENTH DISTRICT OF TEXAS

## IN RE SYNERGY GLOBAL OUTSOURCING, LLC,

*Relator.*

**Original Proceeding from
Cause No. 24-BC01B-0007, in the
First Business Court Division,
Dallas County, Texas**

## RESPONSE IN OPPOSITION TO PETITION FOR WRIT OF MANDAMUS

Barry Barnett
Susman Godfrey L.L.P.
5956 Sherry Lane, Suite 2000
Dallas, Texas 75225

Ophelia Camiña
Jeffrey Zerda
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002

Ravi Bhalla
Susman Godfrey L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001

*Attorneys for Real Parties in Interest*

# TABLE OF CONTENTS

CORRECTED STATEMENT OF JURISDICTION.................................................1

ISSUES PRESENTED..........................................................................................2

INTRODUCTION ...............................................................................................3

STATEMENT OF FACTS ...................................................................................4

LEGAL STANDARD...........................................................................................6

SUMMARY OF ARGUMENT ...........................................................................7

ARGUMENT.......................................................................................................10

1.   The Business Court correctly held that this case was not removable
     to the business courts because it is not an action "commenced on or
     after September 1, 2024." ....................................................................10

     A.   By its plain text, H.B. 19 does not permit removal of cases
          filed before September 1, 2024 to the business courts........................10

     B.   Synergy's proposed interpretation of section 8 is untenable. ............11

     C.   H.B. 19's substantive removal provisions are subject to
          section 8's temporal limitation...........................................................15

     D.   The Court need not consult extrinsic sources to aid its
          interpretation, but if it does, administrative guidance and
          commentary confirm the statute's plain meaning. ............................15

     E.   Synergy's discussion of constitutional retroactivity is a
          distraction. ...........................................................................................20

     F.   Every court considering the issue has rejected Synergy's
          position. ................................................................................................21

2.   Synergy cannot show that it lacks an adequate remedy at law. ....................23

     A.   The impropriety of Synergy's direct appeal does not mean
          that Synergy lacks an adequate remedy at law....................................23

i

B.    Mandamus is not justified merely because it is "forum-related." .................................................................................24

C.    Synergy has an adequate remedy at law in the normal course. .................................................................................26

CONCLUSION AND PRAYER ..........................................................27

# TABLE OF AUTHORITIES

**Page(s)**

*BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*,
519 S.W.3d 76 (Tex. 2017)..................................................................................10

*Bestway Oilfield, Inc. v. Cox*,
No. 24-BC11A-0016, 2025 WL 251338
(Tex. Bus. Ct. Jan. 17, 2025) ..............................................................................22

*Colum. Med. Ctr. of Las Colinas, Inc. v. Hogue*,
271 S.W.3d 238 (Tex. 2008) ..........................................................................13, 14

*E. El Paso Physicians Med. Ctr., L.L.C. v. Vargas*,
511 S.W.3d 172 (Tex. App.—El Paso 2014, pet. denied)...................................12

*Energy Transfer LP v. Culberson Midstream LLC*,
No. 24-BC01B-0005, 2024 WL 5320611
(Tex. Bus. Ct. Oct. 30, 2024) ..............................................................................22

*Fort Worth Transp. Auth. v. Rodriguez*,
547 S.W.3d 830 (Tex. 2018) ...............................................................................15

*In re AIU Ins. Co.*,
148 S.W.3d 109 (Tex. 2004) ....................................................................24, 25, 26

*In re CSX Corp.*,
124 S.W.3d 149 (Tex. 2003) ..................................................................................7

*In re Essex Ins. Co.*,
450 S.W.3d 524 (Tex. 2014) ..................................................................................6

*In re Gulf Coast Bus. Dev. Corp.*,
247 S.W.3d 787 (Tex. App.—Dallas 2008, orig. proceeding)........................7, 27

*In re John G. and Marie Stella Kenedy Mem'l Found.*,
315 S.W.3d 519 (Tex. 2010) ................................................................................27

*In re M.C.C.*,
187 S.W.3d 383, 384 (Tex. 2006) ........................................................................21

*In re Prudential Ins. Co.*,
148 S.W.3d 124 (Tex. 2004) ....................................................................24, 25, 26

*In re Vantage Drilling Int'l*,
   555 S.W.3d 629 (Tex. App.—Houston [1st Dist.] 2018, orig.
   proceeding) ..............................................................................................26

*Jorrie v. Charles*,
   No. 24-BC04B-0001, 2024 WL 5337409
   (Tex. Bus. Ct. Nov. 7, 2024)....................................................................22

*Lone Star NGL Prod. Servs. LLC v. EagleClaw Midstream Ventures*,
   *LLC*, No. 24-BC11A-0004, 2024 WL 5337407
   (Tex. Bus. Ct. Dec. 20, 2024) ..................................................................22

*Robinson v. Crown Cork & Seal Co.*,
   335 S.W.3d 126, 128–29 (Tex. 2010) ........................................................20

*Rodriguez v. State*,
   953 S.W.2d 342 (Tex. App.—Austin 1997, pet. denied) ...................................12

*Seter v. Westdale Asset Mgmt., Ltd.*,
   No. 24-BC01A-0006, 2024 WL 5337346
   (Tex. Bus. Ct. Dec. 16, 2024) ..................................................................22

*Synergy Glob. Outsourcing, LLC v. Hinduja Glob. Sols., Inc.*,
   No. 24-BC01B-0007, 2024 WL 5337412
   (Tex. Bus. Ct. Oct. 31, 2024)...................................................................22

*Tema Oil & Gas Co. v. ETC Field Servs., LLC*,
   No. 24-BC08B-0001, 2024 WL 5337411
   (Tex. Bus. Ct. Nov. 6, 2024)....................................................................22

*Tex. Health Presbyterian Hosp. of Denton v. D.A.*,
   569 S.W.3d 126 (Tex. 2018) ....................................................................16

*TGS-NOPEC Geophysical Co. v. Combs*,
   340 S.W.3d 432 (Tex. 2011) ....................................................................10

*Waak v. Rodriguez*,
   603 S.W.3d 103 (Tex. 2020) ....................................................................13

*Walker v. Packer*,
   827 S.W.2d 833 (Tex. 1992) ..............................................................*passim*

iv

*Winans v. Berry*,
No. 24-BC04A-0002, 2024 WL 5337410
(Tex. Bus. Ct. Nov. 7, 2024).....................................................................22

*XTO Energy, Inc. v. Hous. Pipe Line Co., LP*,
No. 24-BC11B-0008, 2024 WL 5337408
(Tex. Bus. Ct. Nov. 26, 2024)...................................................................22

**Statutes**

Acts 2001, 77th Leg., ch. 1090 (H.B. 2249)..............................................19

Acts 2005, 79th Leg., ch. 490 (H.B. 410)..................................................19

Acts 2023, 88th Leg., ch. 380 (H.B. 19).............................................*passim*

Tex. Gov't Code § 25A.006 ......................................................................15

**Other Authorities**

David G. Cabrales, Foley & Lardner LLP,
Texas Legislature Passes Bill Creating Specialized Business Trial
Courts: 12 Things You Need to Know Now (May 26, 2023) ...........................18

Andrew Debter & Timothy Wells, Brown Fox PLLC,
Texas Means Business: What to Expect Upon the Arrival of
Texas's New Business Courts (Aug. 14, 2023)..............................................17

Mitch Garrett and D. Hunter Polvi, Dallas Ass'n of Young Lawyers,
Texas Business Court: Essentials, Strategies, and Advocacy – Part
II .............................................................................................................18

Off. Ct. Admin., Tex. Jud. Branch, Creation of the Business Court of
Texas, Effective September 1, 2024 (Aug. 13, 2024) .....................................16

Antonin Scalia & Bryan A. Garner,
Reading Law: The Interpretation of Legal Texts (2012)...................................12

LeElle B. Slifer & John Sullivan, Winston & Strawn LLP, Business
Courts in Texas – Final Rules Approved (Aug. 29, 2024)................................18

Tex. Jud. Branch, Filing in the Texas Business Court.................................16

Michael W. Tankersley & Eugene Zilberman,
    *Texas Law: New Business Courts Should Reject Prior Pending*
    *Cases*, Tex. Lawbook (July 24, 2024) .........................................17, 18

**CORRECTED STATEMENT OF JURISDICTION**

This Court has jurisdiction to issue writs of mandamus under sections 22.221(c-1), 22.220(d)(3), and 25A.007(a) of the Texas Government Code.

**ISSUES PRESENTED**

1. Did the Business Court abuse its discretion in holding—like every other court that has considered the issue—that cases filed before September 1, 2024 may not be removed to the business courts?

2. Does Synergy lack an adequate remedy on appeal if its case proceeds in Dallas County District Court, which no party disputes is a proper forum?

**INTRODUCTION**

When the Texas Legislature passed House Bill 19, creating the state's new business courts and establishing a means for removing cases to those courts, it made sure to state that these "changes . . . apply to civil actions commenced on or after September 1, 2024." This lawsuit was filed in 2019 and is thus not removable to the business courts. Accordingly, when Relator Synergy Global Outsourcing, LLC ("Synergy") removed this years-old case to the First Business Court Division in Dallas County, the Court promptly remanded the case to the district court, where it originated.

Synergy asserts that the Business Court's decision was a clear abuse of discretion that warrants extraordinary relief from this Court. According to Synergy, H.B. 19 does not mean what it says. *Any* case—Synergy contends—no matter how old, may be removed to the new business courts.

But Synergy is wrong. Its arguments contradict the plain text of H.B. 19, violate fundamental principles of statutory interpretation, lack any support in on-point administrative guidance and practitioner commentary, and rely on irrelevant caselaw. It is unsurprising, then, that ***every single judge that has considered the issue*** has rejected the interpretation Synergy submits here.

Synergy's mandamus petition should be denied.

## STATEMENT OF FACTS

Synergy filed this lawsuit against Hinduja Global Solutions, Inc. ("HGSI") in the 191st Civil District Court of Dallas County on December 30, 2019. R. 43–44.[1] On March 5, 2020, HGSI asserted counterclaims against Synergy, and on July 2, 2020, HGSI asserted counterclaims against Counter-Defendant Ali Ganjaei. Supp. R. 1–23. On June 11, 2021, Synergy amended its petition to add claims against HGS Healthcare, LLC. Supp. R. 24–34. On September 15, 2021, HGS Healthcare asserted counterclaims against Synergy and Ganjaei. Supp. R. 35–57. As of September 2024, multiple issues remained pending in Dallas County District Court, including resolution of Ganjaei's personal-jurisdiction challenge with respect to HGS Healthcare's counterclaims, as well as Ganjaei's noncompliance with discovery orders on the same subject.

On October 1, 2024, Synergy removed this case to the newly created First Business Court Division in Dallas County. R. 38–41. The next day, the Business Court ordered the parties to submit briefing on the court's authority to hear the case under H.B. 19, the law that created the business courts and associated procedures, including removal. Supp. R. 58–60. The court specifically directed the parties to section 8, which provides, in full, that "[t]he changes in law made by this Act apply

---

[1]  Synergy's Record in Support of its Petition for a Writ of Mandamus is cited using the prefix "R." The HGS Parties' Supplemental Mandamus Record is cited using the prefix "Supp. R."

to civil actions commenced on or after September 1, 2024." *Id.* (quoting Acts 2023, 88th Leg., ch. 380 (H.B. 19) § 8); *see* Supp. R. 140.

Synergy and the HGS Parties each submitted an opening brief and response addressing whether cases filed prior to September 1, 2024 may be removed to the business courts. R. 130–142; R. 145–64. Synergy contended that, despite the statute's application to "civil actions commenced on or after September 1, 2024," this years-old case could nonetheless be removed to the business courts. *See* R. 130–142; R. 145–152. HGSI and HGS Healthcare ("the HGS Parties") demonstrated that this was wrong, as the statute's plain text provides that the Act's "changes in law," including the mechanisms for removing cases to the business courts, apply only to actions commenced on or after September 1, 2024, meaning that this case— commenced in December 2019—could not be removed. *See* R. 152–164.

On October 31, 2024, the Business Court issued an order agreeing with the HGS Parties and rejecting Synergy's arguments. *See* R. 165–175. Reasoning that it "cannot ignore [section 8's] plain language," and that the "plain text is dispositive," the court concluded that section 8 "limit[s] [the Act's] removal provisions to cases filed on or after September 1, 2024." R. 172–173, 175. The Business Court thus remanded this case to the 191st District Court in Dallas County, where it remains pending. R. 175.

In the months since the court's order, multiple other divisions of the business courts have come to the same conclusion, uniformly holding that H.B. 19 does not permit removal of cases filed before September 1, 2024 to the business courts.

On November 12, 2024, Synergy appealed the Business Court's remand order to this Court. Supp. R. 61. The HGS Parties moved to dismiss the appeal for lack of jurisdiction, because there is no final judgment nor authorization of an interlocutory appeal. *See* Supp. R. 65–104. Hours after its deadline to do so, Synergy filed its opposition to the HGS Parties' motion to dismiss the direct appeal. *See* Supp. R. 105–114. That motion remains pending.

On January 3, 2025, Synergy filed this separate mandamus proceeding, seeking a writ of mandamus compelling the Business Court to hear this case.

## LEGAL STANDARD

"Mandamus is intended to be an extraordinary remedy, available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). A court should issue mandamus only "to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *In re Essex Ins. Co.*, 450 S.W.3d 524, 526 (Tex. 2014) (quoting *Walker*, 827 S.W.2d at 839). Thus, to obtain mandamus relief, a party "must establish that (1) the trial court abused its discretion . . . , and (2) [the party] has no adequate remedy by appeal." *Id.*

6

As to the first requirement, "[a] clear abuse of discretion occurs when an action is 'so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996)). Regarding the second requirement, "[m]andamus will not issue where there is 'a clear and adequate remedy at law, such as a normal appeal.'" *Walker*, 827 S.W.2d at 840 (quoting *State v. Walker*, 679 S.W.2d 484, 485 (Tex. 1984)). "An appeal is inadequate when the parties are in danger of permanently losing substantial rights." *In re Gulf Coast Bus. Dev. Corp.*, 247 S.W.3d 787, 793 (Tex. App.—Dallas 2008, orig. proceeding). "Such a danger arises when the appellate court would not be able to cure the error, the party's ability to present a viable claim or defense is vitiated, or the error cannot be made part of the appellate record." *Id.* In short, "[t]he writ will issue 'only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies.'" *Walker*, 827 S.W.2d at 840 (quoting *Holloway v. Fifth Ct. of Appeals*, 767 S.W.2d 680, 684 (Tex. 1989)).

## SUMMARY OF ARGUMENT

Synergy falls far short of showing that it is entitled to issuance of the extraordinary writ of mandamus.

***First**, **the Business Court's decision was correct.*** The plain text of H.B. 19 is clear that "[t]he changes in law made by th[e] Act apply to civil actions

7

commenced on or after September 1, 2024." H.B. 19 § 8. The "changes in law" include the provisions authorizing removal to the business courts. *See id.* § 1. Section 8 is fatal to Synergy's effort to remove this 2019 case to the Business Court, and its arguments to the contrary are meritless.

For example, Synergy's argument that section 8 does not expressly *exclude* cases filed before September 1, 2024 ignores the only fair reading of the statute. The negative-implication canon instructs that the specification of actions "commenced *on or after* September 1" necessarily *excludes* actions commenced *before* September 1. Moreover, Synergy's interpretation of section 8 renders portions of H.B. 19 meaningless. For instance, while Synergy contends that section 8 "simply affirms that business courts will be open and accepting cases on September 1, 2024," Synergy fails to acknowledge that section 5 of H.B. 19 *already does that*, providing that "the business court is created September 1, 2024." H.B. 19 § 5. Synergy fails even to mention section 5 in its mandamus petition.

Synergy's other arguments fare no better. While Synergy points out that the substantive removal provisions of H.B. 19's section 1 contain no temporal limitation, this argument ignores that section 1 is among "[t]he changes in law made by th[e] Act." These provisions are thus, in turn, limited by section 8's temporal restriction.

Synergy's reliance on other statutes, from other contexts, also fails. Among multiple other problems, this argument impermissibly seeks to rewrite an

8

unambiguous statute using extrinsic sources. In any event, if the Court consults extrinsic aids, those sources overwhelming confirm the business court's conclusion that this case is not removable. Two administrative memoranda from the Texas Judicial Branch clearly state that the new removal provisions apply "only to actions filed after 9/1/2024." A bevy of practitioner-commentators agree.

Synergy's last argument on the merits rests on the constitutional retroactivity doctrine, which has nothing to do with this case. This dispute does not involve a constitutional retroactivity challenge to H.B. 19, and Synergy's contorted reasoning from this irrelevant body of law goes nowhere. Regardless, any doubts about the retroactive application of H.B. 19 are soundly dispelled by section 8, which, again, expressly provides that the new laws apply to "civil actions commenced on or after September 1, 2024." H.B. 19 § 8.

Tellingly, no fewer than seven business-court judges have considered and ruled on the issue Synergy raises to this Court, and not a single court has accepted Synergy's interpretation of H.B. 19. The Business Court's straightforward application of the statutory text was not an abuse of discretion, and Synergy is not entitled to mandamus relief.

*__Second__, Synergy has made no showing that it lacks an adequate remedy at law.* Under the status quo, the parties have returned to Dallas County District Court, where they have resumed litigating this case as before. Like any litigant, Synergy

9

may take an appeal after final judgment and seek review of the Business Court's remand order at that time.

Synergy makes no attempt to show why that remedy is inadequate. It says only that its direct appeal of the Business Court's order is at risk of dismissal. True as this is, it does not make mandamus—an extraordinary remedy—appropriate. Indeed, if those circumstances were sufficient to warrant mandamus relief, then *every* non-appealable interlocutory ruling could be reviewed on mandamus. That is not the rule.

Synergy fails to make either of the showings required for issuance of a writ of mandamus. The Business Court did not abuse its discretion, and Synergy has an adequate remedy at law. Its mandamus petition should be denied.

## ARGUMENT

1. **The Business Court correctly held that this case was not removable to the business courts because it is not an action "commenced on or after September 1, 2024."**

   A. **By its plain text, H.B. 19 does not permit removal of cases filed before September 1, 2024 to the business courts.**

"Clear text equals controlling text." *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 84 (Tex. 2017). If the statutory text is unambiguous, courts "adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

10

In 2023, the Texas Legislature passed H.B. 19, which created the Texas Business Courts and, among other provisions, established a means of removing cases from other forums to those courts. Section 8 of H.B. 19 provides that "[t]he changes in law made by this Act apply to civil actions commenced on or after September 1, 2024." H.B. 19 § 8; *see* Supp. R. 140. By its plain text, then, the Act does not apply to actions commenced before September 1, 2024. That includes the Act's provisions that establish the right to remove cases to the business courts and the procedures for doing so. H.B. 19 § 1; *see* Supp. R. 125–128. Accordingly, a party may not remove cases filed before September 1, 2024 to the business courts. Because this case was filed in 2019, it is not removable.

That basic reading ends the inquiry and confirms that the Business Court correctly remanded this case to the Dallas County District Court. But Synergy contests the plain text, arguing to the Business Court and now to this Court that, notwithstanding the clear instruction of section 8, the Texas Legislature intended to permit a case's removal to the business courts *regardless* of how old the case is. Synergy's arguments are meritless.

### B. Synergy's proposed interpretation of section 8 is untenable.

The Court should reject Synergy's core textual argument: that H.B. 19 permits removal of this case because section 8 does not say the Act applies "*only*" to cases filed on or after September 1, 2024. *See* Petition for Writ of Mandamus ("Pet.") at

11

14–22. This interpretation of section 8 ignores fundamental canons of statutory interpretation, including the negative-implication canon ("*expressio unius est exclusio alterius*"). *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012). This canon of construction—"so intuitive that courts often apply it correctly without calling it by name"—instructs that "[t]he expression of one thing implies the exclusion of others." *Id.* at 107, 111. As Texas courts have explained, this canon "means that a statute's inclusion of a specific limitation excludes all other limitations of that type." *Rodriguez v. State*, 953 S.W.2d 342, 354 (Tex. App.—Austin 1997, pet. denied); *see also E. El Paso Physicians Med. Ctr., L.L.C. v. Vargas*, 511 S.W.3d 172, 177 (Tex. App.—El Paso 2014, pet. denied).

Here, the Legislature stated that the Act "appl[ies] to civil actions commenced on or after September 1, 2024." H.B. 19 § 8. By expressing this specific limitation—"civil actions commenced *on or after* September 1, 2024"—the Legislature excludes all others—that is, civil actions commenced *before* September 1, 2024. This reading comports with common sense. As explained by Scalia and Garner's leading authority on interpretive methods, "[w]hen a car dealer promises a low financing rate to 'purchasers with good credit,' it is entirely clear that the rate is *not* available to purchasers with spotty credit." Scalia & Garner, Reading Law 107 (emphasis in original). So too here. When the Legislature stated that the Act applies

to actions "commenced on or after September 1, 2024," it is "entirely clear" that it does *not* apply to actions—like this one—commenced before that date. The Legislature did not need to include the word "only" to convey that clear meaning.

Synergy's proposed interpretation runs into another textual problem: by asserting that section 8 does *not* limit H.B. 19's application to cases filed on or after September 1, 2024, Synergy renders section 8 meaningless, thus "violat[ing] the cardinal rule of statutory interpretation that every word of text be given meaning." *Waak v. Rodriguez*, 603 S.W.3d 103, 108 (Tex. 2020); *see also Colum. Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."). Section 8 contains only one sentence, stating that the Act's changes in law "apply to civil actions commenced on or after September 1, 2024." H.B. 19 § 8. Synergy contends that this section "do[es] *not* prohibit removal of cases filed before September 1, 2024." Pet. at 11 (emphasis added). But by depriving section 8 of its only substance—a temporal limitation on which cases are subject to the changes in law—Synergy reads section 8 out of the statute entirely. Its interpretation is thus prohibited. *Waak*, 603 S.W.3d at 108; *Colum. Med. Ctr.*, 271 S.W.3d at 256.

Moreover, Synergy's contention that section 8 "simply affirms that business courts will be open and accepting cases on September 1, 2024," Pet. at 13, is untenable. It cannot be that section 8 merely signals the opening of the business

13

courts, because *a different section of H.B. 19 already does that*.  Section 5 of H.B. 19 says, in its entirety, that "[e]xcept as otherwise provided by this Act, the business court is created September 1, 2024."  H.B. 19 § 5.  If section 8 conveyed that the business courts would open on September 1, 2024, then section 5 is rendered "meaningless [and] superfluous."  *Colum. Med. Ctr.*, 271 S.W.3d at 256.

Notably, the HGS Parties pointed out this exact problem in their briefing before the Business Court, noting that "Synergy completely ignores Section 5 of H.B. 19, which states that 'the business court is created September 1, 2024.'"  R. 155–156.  Despite this glaring deficiency in Synergy's central argument, in its mandamus petition before this Court, Synergy *continues* to ignore section 5, failing to mention it even once to this Court.  But whether Synergy cares to acknowledge it or not, section 5 is fatal to its interpretation of section 8.  Section 8 does not, and cannot, operate solely to provide that the business courts will be open on September 1, 2024.

Even setting section 5 aside, Synergy's "open for business" interpretation of section 8 simply does not reflect what the text says.  As the Business Court observed, if the Legislature intended section 8 to convey that the business courts will "be open and accepting cases" starting on September 1, 2024, it would have said that.  *See* R. 174–175.  But it did not.  Section 8 does not speak to when the "courts" will "open," nor when they will "accept[]" cases.  It speaks instead to when the subject

14

"actions" must be "commenced." H.B. 19 § 8. The text makes clear that section 5 provides when the courts will open, and section 8 defines which cases the courts may hear. This 2019 case is not among them.

**C.      H.B. 19's substantive removal provisions are subject to section 8's temporal limitation.**

Synergy tries to distract from the clear limitation imposed by section 8 by arguing that the statute's substantive removal provisions—codified at section 25A.006(d) of the Texas Government Code—independently permit removal of this old case to the business courts. *See* Pet. at 19–21. But, whether by mistake or by design, Synergy's reasoning ignores that these provisions were created by section 1 of H.B. 19 and are therefore among the "changes in law made by th[e] Act." H.B. 19 § 8. Synergy thus lands itself back in section 8, which, again, provides that all such changes—including the removal provisions it cites—"apply to civil actions commenced on or after September 1, 2024." *Id.*

**D.      The Court need not consult extrinsic sources to aid its interpretation, but if it does, administrative guidance and commentary confirm the statute's plain meaning.**

In further aid of its fight against the text, Synergy resorts to extrinsic sources outside of H.B. 19, including other statutes that contain temporal limitations. *See* Pet. at 16–17. As a threshold matter, this interpretive maneuver is unnecessary. "When a statute is not ambiguous on its face, it is inappropriate to use extrinsic aids to construe the unambiguous statutory language." *Fort Worth Transp. Auth. v.*

15

*Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018); *see also Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018) ("[W]e do not consider legislative history or other extrinsic aides to interpret an unambiguous statute because the statute's plain language most reliably reveals the legislature's intent."). The Court should reject Synergy's attempt to deploy extrinsic materials to construe this unambiguous statute.

That said, if the Court finds any ambiguity in section 8 of H.B. 19 and thus endeavors to consult extrinsic sources to discern its meaning, it will find that those sources resoundingly support the Business Court's conclusion. For example, two separate memoranda on the Texas Judicial Branch's website state, in bolded and italicized typeface, that its instruction on "Removals to [the] Business Court" "[a]pplies *only to actions filed after 9/1/2024*."

> **Removals to Business Court – *Applies only to actions filed after 9/1/2024***

*See* Off. Ct. Admin., Tex. Jud. Branch, Creation of the Business Court of Texas, Effective September 1, 2024, at 2 (Aug. 13, 2024);[2] Tex. Jud. Branch, Filing in the Texas Business Court 2.[3]

---

[2] https://www.txcourts.gov/media/1459014/creation-of-tx-business-court-memo-to-dist-cty-clerks.pdf.

[3] https://www.txcourts.gov/media/1459071/filing-in-the-texas-business-court.pdf.

Practitioner-commentators overwhelmingly agree. For example, counsel for Ali Ganjaei, a counter-defendant in this case, co-authored an article in advance of the business courts' opening that stated that "the business courts will only have jurisdiction for cases commenced on or after September 1, 2024." Andrew Debter & Timothy Wells, Brown Fox PLLC, Texas Means Business: What to Expect Upon the Arrival of Texas's New Business Courts (Aug. 14, 2023).[4] An attorney who "helped lead the successful enactment of House Bill 19"[5] has addressed the issue at fuller length. *See* Michael W. Tankersley & Eugene Zilberman, *Texas Law: New Business Courts Should Reject Prior Pending Cases*, TEX. LAWBOOK (July 24, 2024).[6] In considering "whether cases pending in Texas state courts on Aug. 31 that otherwise satisfy the jurisdictional requirements of the Texas business court can be removed to the business court after it opens its doors on Sept. 1," the attorney-authors wrote: "The answer is clear. Attempts to remove these cases should be rejected by the business court." *Id.* The authors gave multiple reasons for this commonsense conclusion:

> The clear intent of HB19's authors was that pending cases in Texas state courts should not be pulled and sent to the business court Sept. 1. With the small number of judges initially serving the business court, the limited history, precedent and resources of the business court when it opens, and the potential for constitutional challenge, it was recognized that the business court would not have the resources to

---

[4]   https://brownfoxlaw.com/texas-courts-mean-business.
[5]   Michael W. Tankersley, Alston & Bird LLP, https://www.alston.com/en/professionals/t/tankersley-michael-w.
[6]   https://texaslawbook.net/texas-law-new-business-courts-should-reject-prior-pending-cases.

respond to a possible avalanche of hundreds if not thousands of pending cases.

*Id.* Other commentators are in accord. *E.g.*, LeElle B. Slifer & John Sullivan, Winston & Strawn LLP, Business Courts in Texas – Final Rules Approved (Aug. 29, 2024) ("[O]nly actions filed on or after September 1, 2024 may be removed under Rule 355 to a business court.");[7] Mitch Garrett and D. Hunter Polvi, Dallas Ass'n of Young Lawyers, Texas Business Court: Essentials, Strategies, and Advocacy – Part II (Aug. 27, 2024) ("Can you remove a case filed in district court before September 1, 2024? No. The changes in law apply to civil actions commenced on or after September 1, 2024. HB 19 § 8. A civil case already in district court before September 1 is a 'civil action . . . commenced' before the effective date.");[8] David G. Cabrales, Foley & Lardner LLP, Texas Legislature Passes Bill Creating Specialized Business Trial Courts: 12 Things You Need to Know Now (May 26, 2023) ("HB 19 will take effect on September 1, 2023, but will apply only to actions commenced on or after September 1, 2024.").[9]

Synergy's atextual interpretation of H.B. 19 finds no support in any administrative guidance or practitioner commentary. Synergy instead calls the

---

[7] https://www.winston.com/en/insights-news/business-courts-in-texas-final-rules-approved#:~:text=As%20with%20Rule%20354%2C%20if,355%20to%20a%20business%20court.

[8] https://www.dayl.com/2024/08/texas-business-court-essentials-strategies-and-advocacy-part-ii.

[9] https://www.foley.com/insights/publications/2023/05/texas-legislature-bill-specialized-business-courts.

Court's attention to various *other* statutes, from different contexts, that specify that the relevant law does not apply to actions commenced before a certain date. *See* Pet. at 16–17 (citing statutes). So, Synergy's argument goes, if the Legislature intended H.B. 19 to exclude cases filed before September 1, 2024, it would have used language similar to those statutes. *See id.* at 16.

But Synergy is cherry-picking. Other statutes demonstrate just the opposite: that if the Legislature seeks to rope in all cases pending as of a certain date, it makes that explicit. For example, in 2005, the Texas Legislature passed an Act relating to marital property and explicitly stated that "[t]he changes in law made by this Act apply . . . to a suit for dissolution of a marriage *pending before a trial court on* or filed on or after *the effective date of this Act*." Acts 2005, 79th Leg., ch. 490 (H.B. 410) § 2 (emphasis added);[10] Supp. R. 148. Similarly, in 2001, the Legislature passed an Act "relating to certain suits affecting the parent-child relationship," which provided in relevant part that the "changes in law made by this Act *apply to a pending suit* affecting the parent-child relationship *regardless of whether the suit was filed before, on, or after the effective date of this Act*." Acts 2001, 77th Leg., ch. 1090 (H.B. 2249) § 10 (emphasis added);[11] Supp. R. 145. While these statutes do not demand any particular reading of H.B. 19, they show that the language of

---

[10] https://lrl.texas.gov/scanned/sessionLaws/79-0/HB_410_CH_490.pdf.
[11] https://1.next.westlaw.com/Document/IF92744B323D644E990CB92D9275F0E0F/View/FullText.html?VR=3.0&RS=cblt1.0&__lrTS=20250122203608129&transitionType=Default&contextData=%28sc.Default%29.

19

other statutes is only minimally instructive.  These plausible alternatives to the language of H.B. 19 do not undermine the plain meaning of the language chosen.  As Synergy admits in reckoning with the above-cited statute, "the question for statutory interpretation is what the Legislature actually said."  Pet. at 21.  Here, the Legislature "actually said" that the changes in law apply to cases commenced on or after September 1, 2024.  H.B. 19 § 8.  Synergy's grab-bag of other statutes cannot rewrite that plain language.

## E.     Synergy's discussion of constitutional retroactivity is a distraction.

As its final argument, Synergy strays even farther afield, inviting the Court to wade into a constitutional retroactivity analysis.  *See* Pet. at 22–24.  The Court should ignore this sideshow.  The doctrine Synergy cites governs a court's assessment of whether a given statute violates the constitutional prohibition on retroactive application of laws.  *See Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 128–29 (Tex. 2010) ("The issue we address in this case is whether a statute . . . violates the prohibition against retroactive laws contained in article I, section 16 of the Texas Constitution as applied to a pending action.").  This case involves no such issue.  No party contends that retroactive application of H.B. 19 would violate the Texas Constitution.[12]  And even if constitutional retroactivity were implicated here,

---

[12]    If anything, it is *Synergy* that demands retroactive application of the law.  Any constitutional objection would thus belong to the HGS Parties, not Synergy.

20

Synergy's argument does not make sense. Synergy invokes the constitutional protection against retroactive *loss* of *existing* rights in an effort to *gain* a *new* right— that is, the right to remove a case to the business courts. Of course, Synergy cites no case deploying this twisted logic.

Regardless, any retroactivity question is put to bed here by the plain text of section 8. The Legislature dispelled any conceivable doubt about the retroactive effect of H.B. 19 when it explicitly wrote that "[t]he changes in law made by this Act apply to civil actions commenced on or after September 1, 2024." H.B. 19 § 8; *see In re M.C.C.*, 187 S.W.3d 383, 384 (Tex. 2006) ("Statutes are only applied retroactively if the statutory language indicates that the Legislature intended that the statute be retroactive.").

Synergy's foray into questions of constitutional retroactivity should be ignored.

## F. Every court considering the issue has rejected Synergy's position.

As the above discussion shows, there is no merit to Synergy's effort to dodge the clear text of H.B. 19 and remove this years-old case to the business courts. Tellingly, every single court that has considered this issue has rejected Synergy's arguments. In the brief period since the business courts began considering and ruling on this question, *seven* judges have issued *nine* opinions holding that cases filed prior to September 1, 2024 may not be removed to the business courts. Those cases are:

- *Energy Transfer LP v. Culberson Midstream LLC*, No. 24-BC01B-0005, 2024 WL 5320611 (Tex. Bus. Ct. Oct. 30, 2024) (Whitehill, J.)

- *Synergy Glob. Outsourcing, LLC v. Hinduja Glob. Sols., Inc.*, No. 24-BC01B-0007, 2024 WL 5337412 (Tex. Bus. Ct. Oct. 31, 2024) (Whitehill, J.)

- *Tema Oil & Gas Co. v. ETC Field Servs., LLC*, No. 24-BC08B-0001, 2024 WL 5337411 (Tex. Bus. Ct. Nov. 6, 2024) (Bullard, J.)

- *Jorrie v. Charles*, No. 24-BC04B-0001, 2024 WL 5337409 (Tex. Bus. Ct. Nov. 7, 2024) (Sharp, J.)

- *Winans v. Berry*, No. 24-BC04A-0002, 2024 WL 5337410 (Tex. Bus. Ct. Nov. 7, 2024) (Barnard, J.)

- *XTO Energy, Inc. v. Hous. Pipe Line Co., LP*, No. 24-BC11B-0008, 2024 WL 5337408 (Tex. Bus. Ct. Nov. 26, 2024) (Dorfman, J.)

- *Seter v. Westdale Asset Mgmt., Ltd.*, No. 24-BC01A-0006, 2024 WL 5337346 (Tex. Bus. Ct. Dec. 16, 2024) (Bouressa, J.)

- *Lone Star NGL Prod. Servs. LLC v. EagleClaw Midstream Ventures, LLC*, No. 24-BC11A-0004, 2024 WL 5337407 (Tex. Bus. Ct. Dec. 20, 2024) (Adrogué, J.)

- *Bestway Oilfield, Inc. v. Cox*, No. 24-BC11A-0016, 2025 WL 251338 (Tex. Bus. Ct. Jan. 17, 2025) (Adrogué, J.)

It is for good reason that each of these courts came to the same conclusion. By its plain text, H.B. 19 permits removal of cases filed on or after September 1, 2024. It does not permit removal of cases filed prior to that date.

This case was filed in 2019. Its remand to Dallas County District Court was proper, and the Business Court did not abuse its discretion in so ruling.

22

**2.**     **Synergy cannot show that it lacks an adequate remedy at law.**

Even if the Business Court erred—and it did not—and even if that error amounted to a "clear abuse of discretion"—it does not—Synergy is still not entitled to mandamus relief unless it shows that it lacks an adequate remedy at law. Synergy fails to make an adequate showing, dedicating all of two paragraphs to this fundamental requirement. *See* Pet. at 24. In its half-page of discussion, Synergy makes two arguments, neither of which suffices to carry its heavy burden.

**A.**     **The impropriety of Synergy's direct appeal does not mean that Synergy lacks an adequate remedy at law.**

Synergy asserts, without citation to any authority, that if this Court dismisses its *direct* appeal (as it should),[13] then Synergy "necessarily has no remedy from that appeal, making mandamus relief an appropriate alternative." *Id.* This suggestion is meritless. Dismissal of "*that appeal*" does not deprive Synergy of its appellate rights. Like any litigant, Synergy maintains the right to seek review of the Business Court's order in the normal course of litigation—that is, once final judgment is entered. And while such an appeal must await resolution of the trial-court proceedings, "an appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ." *Walker*, 827 S.W.2d at 842.

---

[13]   *See* Supp. R. 65–73 (demonstrating why Synergy's direct appeal must be dismissed for lack of jurisdiction).

Synergy's argument appears to be that an appeal is not adequate if it is not *immediate*. But if Synergy's proffered rule were the law, mandamus would be an "appropriate" means to review *every* non-appealable interlocutory ruling by a trial court. That is not the rule. Mandamus is an "extraordinary remedy" that is "available only in limited circumstances." *Walker*, 827 S.W.2d at 840. If that requirement were relaxed, "appellate courts would 'embroil themselves unnecessarily in incidental pre-trial rulings of the trial courts' and mandamus 'would soon cease to be an extraordinary writ.'" *Id.* at 842 (quoting *Braden v. Downey*, 811 S.W.2d 922, 928 (Tex.1991)). Here, mandamus relief is not appropriate for review of the Business Court's "incidental pre-trial ruling[]" remanding this case to Dallas County.

**B.      Mandamus is not justified merely because it is "forum-related."**

Nor is Synergy owed mandamus relief merely because its petition involves a "forum-related error[]." Pet. at 24. Synergy cites two Texas state cases for its "forum-related" mandamus proposition, *id.* at 24 & n.28 (citing *In re AIU Ins. Co.*, 148 S.W.3d 109, 115 (Tex. 2004) and *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004)), but these cases do not support Synergy's sweeping rule.

Decided on the same day, *In re AIU* and *In re Prudential* both involved "enforce[ment] [of] *contractual agreements* that substantively or procedurally affect[ed] proceedings in [Texas] courts." *In re AIU Ins. Co.*, 148 S.W.3d at 118

24

(emphasis added). *In re Prudential* involved the waiver of a jury trial in a commercial lease. 148 S.W.3d at 127. The Court explained that "[i]n no real sense can the trial court's denial of Prudential's contractual right to have the [counterparties] waive a jury ever be rectified on appeal," emphasizing that "[e]ven if Prudential could somehow obtain reversal based on the denial of its contractual right, it would already have lost a part of it by having been *subject to the procedure it agreed to waive*." *Id.* at 138 (emphasis added). This case involves no such "agree[ment]" or "waive[r]" that stands to be vitiated in the absence of mandamus.

Similarly, *In re AIU* involved a trial court's denial of a motion to enforce the parties' forum-selection clause in a contract. 148 S.W.3d at 110. Again, the Court's conclusion that the relator lacked an adequate remedy by appeal focused on this narrow, *contractual* feature of the case. Analogizing to arbitration agreements— also enforceable by mandamus—the Court explained that "[s]ubjecting a party to trial in a forum other than that *agreed upon* and requiring an appeal to vindicate the rights granted in a forum-selection clause is clear harassment," which warrants correction by mandamus. *Id.* at 115, 117 (emphasis added). The parties here did not "agree[] upon" removal of this years-old case to the Business Court. That decision was made unilaterally by Synergy.

25

At most, *In re AIU* and *In re Prudential* suggest that contractual forum provisions may be enforceable by mandamus.[14] But those are not the circumstances here. Synergy's effort to remove this case to the Business Court has no contractual basis. The HGS Parties never agreed to it. Synergy has no "rights" rooted in a "clause" that it seeks to "vindicate." *In re AIU*, 148 S.W.3d at 117. Synergy's removal to the Business Court was instead a one-sided demand to stop litigating in the forum where this case had been proceeding for the last five years. Mandamus relief is not appropriate under these circumstances. *See In re Vantage Drilling Int'l*, 555 S.W.3d 629, 636–37, 640 (Tex. App.—Houston [1st Dist.] 2018) (denying mandamus and distinguishing *In re Prudential* in part on the basis that "[n]o analogous loss of contracted-for rights is at risk here").

C.     **Synergy has an adequate remedy at law in the normal course.**

Synergy has an adequate remedy at law. Absent mandamus relief, Synergy will simply continue litigating this case in Dallas County District Court, where this case was proceeding for five years before Synergy removed it to the Business Court. Indeed, that is already happening. After the Business Court remanded the case, the parties resumed where they left off in Dallas County. No parties dispute—nor could they—that Dallas County is a proper forum for this litigation, or that an appeal to

---

[14]   Even that proposition is dubious. As *In re Prudential* itself reiterates, "whether an appellate remedy is 'adequate' so as to preclude mandamus review depends heavily on the circumstances presented and is better guided by general principles than by simple rules." 148 S.W.3d at 137.

Dallas's Fifth Court of Appeals may follow as needed. Synergy is unable to articulate what "substantial rights" it is in "danger" of "permanently losing" under this *status quo* scenario. *In re Gulf Coast* 247 S.W.3d at 793.

For this additional reason, mandamus is unjustified. Issuance of the writ is warranted to "spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re John G. and Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d 519, 523 (Tex. 2010) (internal quotation marks omitted). Here, there is no risk of "improperly conducted proceedings." A trial in Dallas County followed by an appeal to the Fifth Court of Appeals adequately answers any issues or errors arising in this litigation that Synergy may seek to correct. Its mandamus petition fails to demonstrate otherwise.[15]

## CONCLUSION AND PRAYER

This Court should deny Synergy's petition for a writ of mandamus.

---

[15] In closing, Synergy briefly asserts that its mandamus petition is timely. Pet. at 25. While the HGS Parties do not contest the timeliness of Synergy's petition, Synergy's reasoning contains incorrect facts. Synergy writes that its mandamus petition was timely filed, "as shown by the fact that the clerk's record for the [direct] appeal is not even due until December 30, 2026." *Id.* This is wrong. The deadline for the clerk's record is not two years away. The record was due—and indeed, was already submitted—on December 30, 2024, before Synergy filed its mandamus petition. *See* Supp. R. 149.

Dated: January 27, 2025

Respectfully submitted,

SUSMAN GODFREY L.L.P.

By: */s/ Barry Barnett*
   Barry Barnett
   State Bar No. 01778700
   5956 Sherry Lane, Suite 2000
   Dallas, Texas 75225
   Phone: 214-415-9675
   Fax: 713-654-6666
   bbarnett@susmangodfrey.com

   Ophelia Camiña
   State Bar No. 03681500
   Jeffrey Zerda
   State Bar No. 24098933
   1000 Louisiana Street, Suite 5100
   Houston, Texas 77002
   Phone: 713-653-7803
   Fax: 713-654-6666
   ocamina@susmangodfrey.com
   jzerda@susmangodfrey.com

   Ravi Bhalla (*pro hac vice*)
   New York State Bar No. 5748223
   One Manhattan West, 50th Floor
   New York, NY 10001
   Phone: 212-336-8330
   Fax: 212-336-8340
   rbhalla@susmangodfrey.com

   *Counsel for Real Parties in Interest*
   *Hinduja Global Solutions, Inc. and*
   *HGS Healthcare, LLC*

## RULE 52.3(j) CERTIFICATION

I certify under Rule 52.3(j) of the Texas Rules of Appellate Procedure that I have reviewed this Response in Opposition to Relator's Petition for a Writ of Mandamus and have concluded that every factual statement in the Response is supported by competent evidence included in the appendix or record.

*/s/ Barry Barnett*
Barry Barnett

## CERTIFICATE OF COMPLIANCE

I certify that this Response complies with the typeface requirements and word-count limitations of Rule 9 of the Texas Rules of Appellate Procedure because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes and it contains 5,828 words, including images, in the relevant sections.

*/s/ Barry Barnett*
Barry Barnett

## CERTIFICATE OF SERVICE

I certify that, on January 27, 2025, a true and correct copy of this document was filed with the Court of Appeals and served via electronic service on counsel of record and the Respondent in accordance with the Texas Rules of Appellate Procedure.

/s/ Barry Barnett
Barry Barnett


Counsel for Relator Synergy Global Outsourcing, LLC:

David S. Coale
dcoale@lynnllp.com
Michael K. Hurst
mhurst@lynnllp.com
Gregory A. Brassfield
gbrassfield@lynnllp.com
Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue
Suite 2700
Dallas, TX 75201

Respondent:
Hon. Bill Whitehill
First Business Court Division
Dallas County, Texas
BCDivision1B@txcourts.gov

No. 15-25-00002-CV

# IN THE COURT OF APPEALS
# FOR THE FIFTEENTH DISTRICT OF TEXAS

## IN RE SYNERGY GLOBAL OUTSOURCING, LLC,

*Relator.*

**Original Proceeding from
Cause No. 24-BC01B-0007, in the
First Business Court Division,
Dallas County, Texas**

## SUPPLEMENTAL MANDAMUS RECORD

Barry Barnett
Susman Godfrey L.L.P.
5956 Sherry Lane, Suite 2000
Dallas, Texas 75225

Ophelia Camiña
Jeffrey Zerda
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002

Ravi Bhalla
Susman Godfrey L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001

*Attorneys for Real Parties in Interest*

## SUPPLEMENTAL MANDAMUS RECORD INDEX

| Ex. | Description | Supplemental Record Citation |
|---|---|---|
| 1. | HGSI's Amended Answer and Original Counterclaims (Mar. 5, 2020) | Supp. R. 001–008 |
| 2. | HGSI's Amended Answer and Second Amended Counterclaims (July 2, 2020) | Supp. R. 009–023 |
| 3. | Synergy's Second Amended Petition (June 11, 2021) | Supp. R. 024–034 |
| 4. | Defendants' Fifth Amended Answer and Sixth Amended Counterclaims (Sept. 15, 2021) | Supp. R. 035–057 |
| 5. | Business Court Briefing Order (Oct. 2, 2024) | Supp. R. 058–060 |
| 6. | Synergy's Notice of Appeal (Nov. 12, 2024) | Supp. R. 061–064 |
| 7. | Appellees' Motion to Dismiss Appeal for Lack of Jurisdiction (Dec. 11, 2024) | Supp. R. 065–104 |
| 8. | Synergy's Response to Appellees' Motion to Dismiss (Jan. 4, 2025) | Supp. R. 105–114 |
| 9. | Acts 2023, 88th Leg., ch. 380 (H.B. 19) | Supp. R. 115–141 |
| 10. | Acts 2001, 77th Leg., ch. 1090 (H.B. 2249) | Supp. R. 142–146 |
| 11. | Acts 2005, 79th Leg., ch. 490 (H.B. 410) | Supp. R. 147–148 |
| 12. | Notice of Filing of Clerk's Record (Dec. 30, 2024) | Supp. R. 149 |

Dated: January 27, 2025

Respectfully submitted,

SUSMAN GODFREY L.L.P.

By: */s/ Barry Barnett*
    Barry Barnett
    State Bar No. 01778700
    5956 Sherry Lane, Suite 2000
    Dallas, Texas 75225

Phone: 214-415-9675
Fax: 713-654-6666
bbarnett@susmangodfrey.com

Ophelia Camiña
State Bar No. 03681500
Jeffrey Zerda
State Bar No. 24098933
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Phone: 713-653-7803
Fax: 713-654-6666
ocamina@susmangodfrey.com
jzerda@susmangodfrey.com

Ravi Bhalla (*pro hac vice*)
New York State Bar No. 5748223
One Manhattan West, 50th Floor
New York, NY 10001
Phone: 212-336-8330
Fax: 212-336-8340
rbhalla@susmangodfrey.com

*Counsel for Real Parties in Interest*
*Hinduja Global Solutions, Inc. and*
*HGS Healthcare, LLC*

## CERTIFICATE OF SERVICE

I certify that, on January 27, 2025, a true and correct copy of this document was filed with the Court of Appeals and served via electronic service on counsel of record and the Respondent in accordance with the Texas Rules of Appellate Procedure.

*/s/ Barry Barnett*
Barry Barnett

Counsel for Relator Synergy Global Outsourcing, LLC:

David S. Coale
dcoale@lynnllp.com
Michael K. Hurst
mhurst@lynnllp.com
Gregory A. Brassfield
gbrassfield@lynnllp.com
Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue
Suite 2700
Dallas, TX 75201

Respondent:
Hon. Bill Whitehill
First Business Court Division
Dallas County, Texas
BCDivision1B@txcourts.gov

# DECLARATION OF OPHELIA CAMIÑA

1.      My name is Ophelia Camiña.  My date of birth is December 5, 1955, and my business address is 1000 Louisiana Street, Suite 5100, Houston, Texas 77002.

2.      I am a partner in the law firm of Susman Godfrey LLP.  I represent the Real Parties in Interest Hinduja Global Solutions, Inc. and HGS Healthcare, LLC in this matter.  I have personal knowledge of the statements made in this declaration based on my representation of these parties.

3.      The documents contained within this supplemental mandamus record are true and correct copies of (1) documents filed in the 191st District Court of Dallas County, the First Business Court Division of Dallas County, and the Texas Fifteenth Court of Appeals, and (2) bills passed by the Texas Legislature, as made available by Internet sources.

4.      I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of January, 2025, in Dallas County, Texas.


Ophelia F. Camiña

4

FILED
3/5/2020 4:21 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Martin Reyes DEPUTY

Martin Reyes

No. DC-19-20539

| | | |
|---|---|---|
| SYNERGY GLOBAL OUTSOURCING, LLC, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | DALLAS COUNTY, T E X A S |
| HINDUJA GLOBAL SOLUTIONS, INC., | § § § § | |
| Defendants. | § | 191ST JUDICIAL DISTRICT |

## HGSI'S AMENDED ANSWER AND ORIGINAL COUNTERCLAIMS

Under Rules 92 and 97 of the Texas Rules of Civil Procedure, defendant Hinduja Global Solutions Inc. ("HGSI") answers Plaintiff's Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunctions ("Petition") and counterclaims against plaintiff Synergy Global Outsourcing, LLC ("Synergy") as follows:

## AMENDED ANSWER

### General Denial

1. HGSI generally denies the material allegations in the Petition and demands strict proof of each of them.

2. Plaintiff Synergy has unclean hands.

3. The doctrines of accord and satisfaction, estoppel, failure of consideration, fraud, illegality, payment, and waiver bar Synergy's claim in whole or in part.

4. HGSI may set off or recoup any liability it may have to Synergy with Synergy's liability to HGSI for its wrongful conduct towards HGSI.

5. HGSI reserves the right to plead additional matters in defense.

**Supp. R. 001**

1.      HGSI realleges each of the preceding allegations.

2.      HGSI is a Delaware corporation with its principal place of business in Lisle, Illinois.

3.      Synergy is a Nevada limited liability company with its principal place of business in New York, New York. It was formed in 2004. HBI Incorporated N.V. ("HBI"), a Curacao limited liability company, is a Manager of Synergy.

**Facts**

4.      HGSI was incorporated in Delaware on June 30, 2000. In the two decades since its formation, HGSI has provided business process management services in the United States, Canada, Jamaica, and elsewhere. Today, its operations principally involve furnishing other companies with back office, contact center, and human resource services.

5.      In 2003, HGSI secured the healthcare company Humana Inc. ("Humana") as a client, and HGSI began providing claims processing and other services to segments of Humana. Some of the founders or executives of Synergy helped introduce HGSI to Humana and received compensation for their assistance.

6.      Years after Humana became an HGSI client, Synergy's principals asked principals of HGSI to redocument the arrangement as if it had just begun. The purpose was to institute a potentially perpetual stream of large monthly payments, from HGSI to Synergy, that could continue regardless of whether Synergy provided anything of value to HGSI.

7.      The Broker Agreement that resulted from the discussions thus purported to contemplate, in paragraph 2, that Synergy, as "BROKER", would "make contacts" with Humana "for selling programs" of HGSI to Humana but that Synergy "shall not be obligated to assist

2

[HGSI] in the process of selling its Services to [Humana], or to coordinate or attend meetings" between HGSI and Humana. In spite of the fact that Humana had long been a client of HGSI at the time the Broker Agreement was drafted, paragraph 3 provided that Synergy would receive a "Brokerage Fee" based on HGSI's "Gross Services Revenue" from Humana. Given the volume of business with Humana, the Brokerage Fee was expected to involve several million dollars in payments by HGSI to Synergy every year.

8. Before or soon after HGSI signed the Broker Agreement in 2011, one or more principals of HGSI ("HGSI Principals") caused a controlling equity interest in Synergy to be conveyed to HBI, an HBI affiliate such as HBI Group Inc. ("HBI Group"), or other entities under HGSI Principals' control. As HGSI Principals contemplated when they arranged to make the acquisition, securing a controlling interest in Synergy gave HGSI Principals control of the Broker Agreement and the steam of payments under it on both the HGSI and Synergy sides. It also enabled HGSI Principals to divert millions of dollars in payments under the Broker Agreement to themselves through HBI, HBI Group, or other entities under HGSI Principals' control.

9. After HGSI Principals acquired a controlling interest in Synergy, Synergy began holding itself out publicly as a "member" of the "Hinduja Group" when it knew it was not. It made representations that it had licenses or certifications that it did not have but that HGSI did. It also appears to have asserted it had one or more of the same offices and officers as HGSI. Synergy did these things in interstate commerce, on the internet and otherwise, for the purpose of deceiving its audience into making purchasing decisions.

10. In 2018, the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") sent to an affiliate of HGSI a letter questioning a $1.7 million payment by the affiliate to an entity that was apparently affiliated with Synergy and HBI or their principals. One

3

of the HGSI Principals responded to the letter but did so without approval of HGSI's president. The events raised concern that doing business with Synergy may expose it to potential prosecution under United States law.

11. Synergy brought this action on December 30, 2019, and on the same day it obtained a temporary restraining order ("TRO") that purported to require HGSI to make "contractual" payments. Synergy's application and the TRO itself suffered from multiple defects, including a complete absence of admissible evidence supporting it (both declarations submitted by Synergy lacked a jurat), the unavailability of a mandatory injunction or one granting an award of monetary damages under these circumstances, and the absence of an expiration date in the TRO. Despite a motion by HGSI to dissolve the TRO on these and other grounds, Synergy pursued a motion to enforce the TRO and induced an Associate Judge to grant the motion on January 8, 2020, forcing HGSI to pay Synergy more than $650,000 pursuant to the TRO and enforcement order. Synergy's conduct was wrongful, and as a result the TRO was later dissolved.

**Count I**
**(Knowing Participation in Breach of Fiduciary Duty)**

12. HGSI realleges each of the preceding allegations.

13. A fiduciary relationship existed between HGSI and HGSI Principals.

14. Synergy knew of the fiduciary relationship between HGSI and HGSI Principals.

15. HGSI Principals breached their fiduciary duty to HGSI by, among other things, causing HGSI to enter into the Broker Agreement; acquiring a controlling interest in Synergy through ownership of HBI, HBI Group, or another entity; and diverting to themselves and otherwise receiving the benefits of payments by HGSI under the Broker Agreement.

16. The breaches of fiduciary duty injured HGSI and benefited HGSI Principals and Synergy.

4

17. HGSI is entitled to recover from Synergy the damages proximately caused by the breaches of fiduciary duty and to require Synergy to disgorge any benefits it received as a result of breaches, including payments under the Broker Agreement, and to take other corrective measures.

18. Because Synergy acted with malice and gross negligence, HGSI is also entitled to recover exemplary damages in an amount to be determined by the trier of fact under article 41 of the Texas Civil Practice and Remedies Code.

## Count II
## (False Advertising)

19. HGSI realleges each of the preceding allegations.

20. Synergy made false statements of fact about its services and commercial services in commercial advertisements, in violation of 15 U.S.C. § 1125(a).

21. The statements actually deceived or have a tendency to deceive a substantial segment of their audience.

22. The deception is likely to influence a purchasing decision.

23. Synergy caused the false statements to enter interstate commerce.

24. HGSI has been or is likely to be injured as a result.

25. HGSI is entitled to recover, under 15 U.S.C. § 1117(a), Synergy's profits, HGSI's damages, and the costs of the action.

## Count III
## (Injunctive Relief)

26. HGSI realleges each of the preceding allegations.

27. Synergy's wrongful conduct has caused and, unless the Court restrains it, will continue to cause HGSI irreparable injury, including through loss of goodwill and reputation.

5

HGSI accordingly requests the Court to enter temporary and permanent injunctions (a) prohibiting Synergy from continuing to engage in wrongful conduct alleged above and (b) correcting effects of the wrongful conduct.

**Count IV**
**(Wrongful Injunction and Enforcement Order)**

28. HGSI realleges each of the preceding allegations.

29. Synergy wrongfully obtained the TRO and the order enforcing it. Synergy's wrongful conduct injured HGSI. HGSI seeks return of its payment resulting from the wrongful injunction and enforcement order and all other available damages and relief.

**Count V**
**(Declaratory Judgment)**

30. HGSI realleges each of the preceding allegations.

31. The involvement of HGSI Principals in ownership and control of Synergy and its affiliates, direct or indirect receipt of payments and other benefits under the Broker Agreement, and connections to HGSI's publicly-traded parent raises substantial questions regarding the legality of the Broker Agreement and payments under it in light of applicable law. Synergy denies that the involvement of HGSI Principals presents any issues of legality, and as a result a substantial and actual controversy exists between HGSI and Synergy regarding those questions. The subject matter of the OFAC investigation raises additional legality concerns. HGSI seeks a judgment declaring whether the circumstances alleged above render the Broker Agreement or payments under it illegal under applicable law.

6

**Prayer**

HGSI requests that the Court award HGSI all appropriate relief, including actual and exemplary damages, disgorgement, profits, temporary and permanent injunctions, declaratory relief, and costs.

Respectfully submitted,

SUSMAN GODFREY L.L.P.

*/s/ Barry Barnett*
Barry Barnett
State Bar No. 01778700
8115 Preston Road, Suite 575
Dallas, Texas 75225
Phone: 866-754-1900
Fax:    713-654-6666
bbarnett@susmangodfrey.com

Ophelia Camina
State Bar No. 03681500
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Phone: 713-653-7803
Fax:    713-654-6666
ocamina@susmangodfrey.com

*Counsel for Hinduja Global Solutions, Inc.*

**CERTIFICATE OF SERVICE**

This certifies that on the 5th day of March, 2020, my office properly forwarded true and correct copy of Defendant Hinduja Global Solutions Inc.'s Amended Answer and Original Counterclaims to the following counsel of record in accordance with Rule 21 of the Texas Rules of Civil Procedure via electronic filing and first class mail:

7

Supp. R. 007

Michael K. Hurst
Gregory A. Brassfield
Lynn Pinker Cox & Hurst, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201

*/s/ Barry Barnett* _____
Barry Barnett

FILED
7/2/2020 1:52 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Kevin Molden DEPUTY

No. DC-19-20539

| | | |
|---|---|---|
| SYNERGY GLOBAL OUTSOURCING, LLC, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | DALLAS COUNTY, T E X A S |
| HINDUJA GLOBAL SOLUTIONS, INC., | § § § | |
| Defendant/Counter-Plaintiff, | § § | |
| v. | § § | |
| ALI GANJAEI, | § § | |
| Counter-Defendant. | § | 191ST JUDICIAL DISTRICT |

## HGSI'S AMENDED ANSWER AND SECOND AMENDED COUNTERCLAIMS

Under Rules 92 and 97 of the Texas Rules of Civil Procedure, Defendant and Counter-Plaintiff Hinduja Global Solutions Inc. ("HGSI") answers Plaintiff's Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunctions ("Petition") and counterclaims against Plaintiff Synergy Global Outsourcing, LLC ("Synergy") and third-party Counter-Defendant Ali Ganjaei ("Ganjaei," and, together with Synergy, the "Counter-Defendants") as follows:

## AMENDED ANSWER

### General Denial

1.       HGSI generally denies the material allegations in the Petition and demands strict proof of each of them.

### Affirmative Defenses

2.       Plaintiff Synergy has unclean hands.

3. The doctrines of accord and satisfaction, estoppel, failure of consideration, fraud, illegality, payment, and waiver bar Synergy's claim in whole or in part.

4. HGSI may set off or recoup any liability it may have to Synergy with Synergy's liability to HGSI for its wrongful conduct towards HGSI.

5. HGSI reserves the right to plead additional matters in defense.

## SECOND AMENDED COUNTERCLAIMS

### Parties

1. HGSI is a Delaware corporation with its principal place of business in Lisle, Illinois.

2. Synergy is a Nevada limited liability company with its headquarters in New York, New York and its operations in Texas. It was formed in 2004.

3. Ali Ganjaei is a citizen of the State of New Jersey. He formerly served as HGSI's General Counsel and on HGSI's Board of Directors. Ganjaei is also the Managing Director of HBI Incorporated N.V. and the CEO of NV Transition Inc. and HBI Group, Inc.

### Jurisdiction

4. The subject matter in controversy is within the jurisdictional limits of this court. Counter-Plaintiff seeks monetary relief over $1,000,000 and all other relief to which it is entitled.

5. The Court has personal jurisdiction over Synergy because it has submitted to the Court's jurisdiction by filing this cause and appearing before the Court.

6. The Court has personal jurisdiction over Ganjaei pursuant to Tex. Civ. Prac. & Rem. Code § 17.042 because, as more specifically alleged below, Ganjaei established minimum contacts with Texas by purposefully conducting activities directed to Texas, thereby obtaining the

benefits and protections of Texas's laws, and HGSI's counterclaims based on breach of fiduciary duty arise out of Ganjaei's contacts with Texas.

## Venue

7. Venue in Dallas County is proper because it is the venue in which the Plaintiff and Counter-Defendant Synergy intitially brought this action.

## Facts

8. HGSI was incorporated in Delaware on June 30, 2000. In the two decades since its formation, HGSI has provided business process management services in the United States, Canada, Jamaica, and elsewhere. Today, its operations principally involve furnishing other companies with back office, contact center, and human resource services.

9. In 2003, HGSI secured the healthcare company Humana Inc. ("Humana") as a client, and HGSI began providing claims processing and other services to segments of Humana. Some of the founders or executives of Synergy helped introduce HGSI to Humana and received compensation for their assistance.

10. Years after Humana became an HGSI client, Synergy's principals asked principals of HGSI to redocument the arrangement as if it had just begun. The purpose was to institute a potentially perpetual stream of large monthly payments, from HGSI to Synergy, that could continue regardless of whether Synergy provided anything of value to HGSI.

11. The Broker Agreement that resulted from the discussions thus purported to contemplate, in paragraph 2, that Synergy, as "BROKER", would "make contacts" with Humana "for selling programs" of HGSI to Humana but that Synergy "shall not be obligated to assist [HGSI] in the process of selling its Services to [Humana], or to coordinate or attend meetings" between HGSI and Humana. In spite of the fact that Humana had long been a client of HGSI at

the time the Broker Agreement was drafted, paragraph 3 provided that Synergy would receive a "Brokerage Fee" based on HGSI's "Gross Services Revenue" from Humana. Given the volume of business with Humana, the Brokerage Fee was expected to involve several million dollars in payments by HGSI to Synergy every year.

12. HBI Incorporated N.V. is a Curacao limited liability company. Entities related to HBI Incorporated N.V. include NV Transition Inc., a New York corporation, and HBI Group, Inc., a New York corporation (together with HBI Incorporated N.V, "HBI"). HBI is the majority owner and a Manager of Synergy. Ganjaei was HBI's chief executive officer at all relevant times.

13. Ganjaei, as general counsel for HGSI and a member of HGSI's board of directors, was instrumental in negotiating and drafting the terms of the Broker Agreement with Synergy's principals and in inducing HGSI to sign the agreement.

14. A written agreement between Ganjaei and HGSI provided the terms and conditions under which Ganjaei provided professional legal services to, for the benefit of, or on behalf of HGSI, including legal work that he knew concerned and was directed at operations, activities, benefits, relationships, and persons in Texas.

15. Before or soon after HGSI signed the Broker Agreement in 2011, one or more former principals of HGSI ("HGSI Principals"), including Ganjaei, caused a controlling equity interest in Synergy to be conveyed to HBI, HBI affiliates, or other entities under HGSI Principals' control. As HGSI Principals contemplated when they induced HGSI to enter into the Broker Agreement and arranged to make the acquisition of Synergy, securing a controlling interest in Synergy gave HGSI Principals control of the Broker Agreement and the stream of payments under it on both the HGSI and Synergy sides. It also enabled HGSI Principals to divert millions of dollars

in payments under the Broker Agreement to themselves through HBI, HBI affiliates, or other entities under HGSI Principals' control

16. The Broker Agreement was not fair to HGSI. For one thing, it guaranteed payments to Synergy indefinitely based on HGSI's revenue from Humana regardless of whether Synergy provided any services to HGSI. It was also unreasonable for HGSI to enter into the Broker Agreement in 2011 when it had already secured Humana as a client and compensated Synergy for its role in introducing them. In fact, the Broker Agreement was merely a vehicle for HGSI Principals to siphon money from HGSI for their own personal benefit. Even if the Broker Agreement were nominally approved by HGSI's Board of Directors, such approval would have been improper and ineffective because, among other things, the directors either were financially interested in the Broker Agreement, were unaware of HGSI Principals' financial interest in the Broker Agreement, or were so beholden to Ganjaei and other interested HGSI Principals that they did not exercise independent corporate scrutiny of the Broker Agreement.

17. On information and belief, a written agreement between Ganjaei and Synergy provided the terms and conditions under which Ganjaei provided professional legal services to, for the benefit of, or on behalf of Synergy, which received the benefit of Ganjaei's services in Texas and compensated Ganjaei for his services from Synergy's offices in Texas.

18. The Broker Agreement was to be performed in large part in Texas by Synergy, a company with offices in Dallas, Texas. The Broker Agreement contains a Texas choice-of-law provision and requires HGSI to wire Synergy's brokerage fees to State Bank & Trust in Carrollton, Texas and to provide notices to Synergy at its Dallas offices. Wilkes McCain ("McCain"), Synergy's president and a Texas resident, signed the Broker Agreement and performs substantially all of Synergy's services under that agreement.

19. After HGSI Principals acquired a controlling interest in Synergy, Synergy began holding itself out publicly as a "member" of the "Hinduja Group" when it knew it was not. It made representations that it had licenses or certifications that it did not have but that HGSI did. It also appears to have asserted it had one or more of the same offices and officers as HGSI. Synergy did these things in interstate commerce, on the internet and otherwise, for the purpose of deceiving its audience into making purchasing decisions.

20. In 2014, Ganjaei prepared and filed with the Texas Secretary of State's office on behalf of HGSI an application for registration as a foreign for-profit corporation in Texas. The application listed Ganjaei as a member of HGSI's board of directors.

21. In 2018, the United States Department of Treasury's Office of Foreign Asset Control sent to an affiliate of HGSI a letter questioning a $1.7 million payment by the affiliate to an entity that was apparently affiliated with Synergy and HBI or their principals. Ganjaei responded to the letter but did so without approval of HGSI's president. The events raised concern that doing business with Synergy may expose it to potential prosecution under United States law.

22. Ganjaei is HBI's point of contact for Synergy and spoke with McCain over the telephone regarding Synergy matters several times a year.

23. Ganjaei sent several emails on behalf of Synergy to HGSI and HGSI's parent company, Hinduja Global Solutions, Ltd., demanding that payments under the Broker Agreement be made to Synergy.

24. At the direction of Synergy's officers and Ganjaei, Synergy brought this action in Texas on December 30, 2019, and on the same day it obtained a temporary restraining order ("TRO") that purported to require HGSI to make "contractual" payments. Synergy's application and the TRO itself suffered from multiple defects, including a complete absence of admissible

**Supp. R. 014**

evidence supporting it (both declarations submitted by Synergy lacked a jurat), the unavailability of a mandatory injunction or one granting an award of monetary damages under these circumstances, and the absence of an expiration date in the TRO. Despite a motion by HGSI to dissolve the TRO on these and other grounds, Synergy pursued a motion to enforce the TRO and induced an Associate Judge to grant the motion on January 8, 2020, forcing HGSI to pay Synergy more than $650,000 pursuant to the TRO and enforcement order. Synergy's conduct was wrongful, and as a result the TRO was later dissolved.

25. In March 2020, Ganjaei participated in this action by submitting a declaration in support of Synergy's motion for protection. Ganjaei also communicated by email and telephone with McCain and Synergy's counsel in Texas regarding his legal work for Synergy on, among other things, the Broker Agreement and the relationships between Synergy, HBI, and HGSI Principals, including Ganjaei himself. Counsel for Synergy and McCain have communicated while in Texas about efforts to avoid discovery in this action of connections of Ganjaei and other HGSI Principals with Synergy and Texas with Ganjaei and his counsel.

**Count I**
**(Breach of Fiduciary Duty—Ganjaei)**

26. HGSI realleges each of the preceding allegations.

27. A fiduciary relationship existed between HGSI and Ganjaei.

28. Ganjaei breached his fiduciary duties to HGSI as HGSI's general counsel and a member of its board by, among other things, advising and causing HGSI to enter into the Broker Agreement; causing himself or other HGSI Principals to acquire a controlling interest in Synergy through ownership of HBI, HBI affiliates, or another entity; and diverting to himself and other HGSI Principals the benefits of payments by HGSI under the Broker Agreement.

29.     The breaches of fiduciary duty injured HGSI and benefited Ganjaei and other HGSI Principals.

30.     HGSI is entitled to recover from Ganjaei the damages proximately caused by the breaches of fiduciary duties and to require Ganjaei to disgorge any benefits he received as a result of the breaches, including payments under the Broker Agreement, and to take other corrective measures.

31.     The statute of limitations has not expired on this claim because the injury suffered by HGSI by virtue of Ganjaei's breach of fiduciary duty was inherently undiscoverable and was objectively unverifiable, and HGSI neither knew nor in the exercise of reasonable diligence should have known of the injury more than three years or four years prior to the filing of its counterclaims in this action. HGSI first learned of the injury no earlier than September 2019.

32.     The statute of limitations has not expired on this claim because Ganjaei had actual knowledge of the wrongs alleged herein with respect to the breaches of fiduciary duties and the wrongs were purposefully concealed by Ganjaei by making a misrepresentation and/or remaining silent when he had a duty to speak. Due to the Gajnaei's purposeful concealment of the wrongs alleged herein, HGSI did not and could not become aware thereof until less than three years or four years prior to the filing of its counterclaims in this action. HGSI reasonably relied on those misrepresentations and silence by not immediately pursuing its claim for breach of fiduciary duty.

33.     The statute of limitations has not expired on this claim because Ganjaei and other wrongdoers involved in the breaches of fiduciary duties to HGSI were in control of HGSI until September 2019. *See Allen v. Wilkerson*, 396 S.W.2d 493, 502 (Tex. Civ. App.—Austin 1965, writ ref'd n.r.e.).

## Count II
### (Knowing Participation in Breach of Fiduciary Duty--Synergy)

34.     HGSI realleges each of the preceding allegations.

35.     A fiduciary relationship existed between HGSI and HGSI Principals.

36.     Synergy knew of the fiduciary relationship between HGSI and HGSI Principals.

37.     HGSI Principals breached their fiduciary duty to HGSI by, among other things, causing HGSI to enter into the Broker Agreement; acquiring a controlling interest in Synergy through ownership of HBI, HBI affiliates, or another entity; and diverting to themselves and otherwise receiving the benefits of payments by HGSI under the Broker Agreement.

38.     The breaches of fiduciary duty injured HGSI and benefited HGSI Principals and Synergy.

39.     HGSI is entitled to recover from Synergy the damages proximately caused by the breaches of fiduciary duty and to require Synergy to disgorge any benefits it received as a result of the breaches, including payments under the Broker Agreement, and to take other corrective measures.

40.     Because Synergy acted with malice and gross negligence, HGSI is also entitled to recover exemplary damages in an amount to be determined by the trier of fact under article 41 of the Texas Civil Practice and Remedies Code.

41.     The statute of limitations has not expired on this claim for any or all of the following reasons:

42.     The injury suffered by HGSI by virtue of Synergy's knowing participation in a breach of fiduciary duty was inherently undiscoverable and was objectively unverifiable, and HGSI neither knew nor in the exercise of reasonable diligence should have known of the injury

**Supp. R. 017**

more than three years or four years prior to the filing of its counterclaims in this action. HGSI first learned of the injury no earlier than September 2019.

43. Synergy had actual knowledge of the wrongs alleged herein with respect to the breach of fiduciary duty and the wrongs were purposefully concealed by Synergy by making a misrepresentation and/or remaining silent when they had a duty to speak. Due to Synergy's purposeful concealment of the wrongs alleged herein with respect to the breach of fiduciary duty, HGSI did not and could not become aware thereof until less than three years or four years prior to the filing of its counterclaims in this action. HGSI reasonably relied on those misrepresentations and silence by not immediately pursuing its claims for knowing participation in breach of fiduciary duty.

44. HGSI Principals and other wrongdoers involved in the breach of fiduciary duty to HGSI were in control of HGSI until September 2019. *See Allen v. Wilkerson*, 396 S.W.2d 493, 502 (Tex. Civ. App.—Austin 1965, writ ref'd n.r.e.).

**Count III**
**(Civil Conspiracy to Cause Breach of Fiduciary Duty--All Counter-Defendants)**

45. HGSI realleges each of the preceding allegations.

46. A fiduciary relationship existed between HGSI and HGSI Principals, including Ganjaei.

47. Synergy knew of the fiduciary relationship between HGSI and HGSI Principals.

48. Synergy, Ganjaei, and other HGSI Principals conspired to breach HGSI Principals' fiduciary duty to HGSI.

49. Synergy, Ganjaei, and HGSI Principals agreed to breach fiduciary duties and cause breaches of fiduciary duties by, among other things, inducing HGSI to enter into the Broker Agreement; advising and causing transfer of a controlling interest in Synergy to HBI, HBI

**Supp. R. 018**

affiliates, or other entities under HGSI Principals' control; and diverting to HGSI Principals the benefits of payments by HGSI under the Broker Agreement.

50. The breaches of fiduciary duty injured HGSI and benefited Synergy, Ganjaei, and other HGSI Principals.

51. HGSI is entitled to recover from Synergy and Ganjaei the damages proximately caused by the breaches of fiduciary duties and to require Synergy and Ganjaei to disgorge any benefits either of them received as a result of the breaches, including payments under the Broker Agreement, and to take other corrective measures.

52. Because Synergy and Ganjaei acted with malice and gross negligence, HGSI is also entitled to recover exemplary damages in an amount to be determined by the trier of fact under article 41 of the Texas Civil Practice and Remedies Code.

53. The statute of limitations has not expired on this claim for any or all of the following reasons:

54. The injury suffered by HGSI by virtue of the civil conspiracy to breach fiduciary duties to HGSI was inherently undiscoverable and was objectively unverifiable, and HGSI neither knew nor in the exercise of reasonable diligence should have known of the injury more than three years or four years prior to the filing of its counterclaims in this action. HGSI first learned of the injury no earlier than September 2019.

55. The Counter-Defendants had actual knowledge of the wrongs alleged herein with respect to the breach of fiduciary duty and the wrongs were purposefully concealed by the Counter-Defendants by making a misrepresentation and/or remaining silent when they had a duty to speak. Due to the Counter-Defendants' purposeful concealment of the wrongs alleged herein with respect to the breach of fiduciary duty, HGSI did not and could not become aware thereof until less than

three years or four years prior to the filing of its counterclaims in this action. HGSI reasonably relied on those misrepresentations and silence by not immediately pursuing its claims for civil conspiracy to cause a breach of fiduciary duties.

56. HGSI Principals and other wrongdoers involved in the breach of fiduciary duty to HGSI were in control of HGSI until September 2019. *See Allen v. Wilkerson*, 396 S.W.2d 493, 502 (Tex. Civ. App.—Austin 1965, writ ref'd n.r.e.).

## Count IV
### (False Advertising--Synergy)

57. HGSI realleges each of the preceding allegations.

58. Synergy made false statements of fact about its services and commercial services in commercial advertisements, in violation of 15 U.S.C. § 1125(a).

59. The statements actually deceived or have a tendency to deceive a substantial segment of their audience.

60. The deception is likely to influence a purchasing decision.

61. Synergy caused the false statements to enter interstate commerce.

62. HGSI has been or is likely to be injured as a result.

63. HGSI is entitled to recover, under 15 U.S.C. § 1117(a), Synergy's profits, HGSI's damages, and the costs of the action.

## Count V
### (Injunctive Relief—All Counter-Defendants)

64. HGSI realleges each of the preceding allegations.

65. Counter-Defendants' wrongful conduct has caused and, unless the Court restrains them, will continue to cause HGSI irreparable injury, including through loss of goodwill and reputation. HGSI accordingly requests the Court to enter temporary and permanent injunctions (a)

Supp. R. 020

prohibiting Counter-Defendants from continuing to engage in wrongful conduct alleged above and (b) correcting effects of the wrongful conduct.

## Count VI
### (Wrongful Injunction and Enforcement Order—Synergy)

66.     HGSI realleges each of the preceding allegations.

67.     Synergy wrongfully obtained the TRO and the order enforcing it. Synergy's wrongful conduct injured HGSI. HGSI seeks return of its payment resulting from the wrongful injunction and enforcement order and all other available damages and relief.

## Count VII
### (Declaratory Judgment—All Counter-Defendants)

68.     HGSI realleges each of the preceding allegations.

69.     The involvement of HGSI Principals in ownership, control, and legal representation of Synergy and its affiliates, in direct or indirect receipt of payments and other benefits in connection with the Broker Agreement and otherwise, and in connections to HBI, HBI affiliates, and HGSI's publicly-traded parent, raises substantial questions regarding the legality of the Broker Agreement and payments under it and otherwise in light of applicable law. Counter-Defendants deny that the involvement of HGSI Principals presents any issues of legality, and as a result a substantial and actual controversy exists between HGSI and Counter-Defendants regarding those questions. The subject matter of the Office of Foreign Asset Control investigation raises additional legality concerns. HGSI seeks a judgment declaring whether the circumstances alleged above render the Broker Agreement or payments under it illegal under applicable law.

Supp. R. 021

**Prayer**

HGSI requests that the Court award HGSI all appropriate relief, including actual and exemplary damages, disgorgement, profits, temporary and permanent injunctions, declaratory relief, and costs.

Respectfully submitted,

SUSMAN GODFREY L.L.P.

*/s/ Barry Barnett*
Barry Barnett
State Bar No. 01778700
8115 Preston Road, Suite 575
Dallas, Texas 75225
Phone: 866-754-1900
Fax:    713-654-6666
bbarnett@susmangodfrey.com

Ophelia Camina
State Bar No. 03681500
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Phone: 713-653-7803
Fax:    713-654-6666
ocamina@susmangodfrey.com

*Counsel for Hinduja Global Solutions, Inc.*

## CERTIFICATE OF SERVICE

This certifies that on the 2nd day of July, 2020, my office properly forwarded true and correct copy of Defendant Hinduja Global Solutions Inc.'s Amended Answer and Second Amended Counterclaims to counsel of record in accordance with Rule 21 of the Texas Rules of Civil Procedure via electronic filing.

*/s/ Barry Barnett* _____
Barry Barnett

**Supp. R. 023**

FILED
6/11/2021 3:19 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Eduardo Suarez DEPUTY

**Cause No. DC-19-20539**

| | | |
|---|---|---|
| SYNERGY GLOBAL OUTSOURCING, LLC | § § § | IN THE DISTRICT COURT |
| PLAINTIFF, | § § | |
| V. | § § | 191ST JUDICIAL DISTRICT |
| HINDUJA GLOBAL SOLUTIONS, INC. and HGS HEALTHCARE, LLC, | § § § | |
| DEFENDANTS. | § § | DALLAS COUNTY, TEXAS |

### PLAINTIFF'S SECOND AMENDED PETITION

Plaintiff Synergy Global Outsourcing, LLC ("Synergy") files this Second Amended Petition and as follows:

### INTRODUCTION

This is an extremely simple dispute with extremely severe consequences. In the fall of 2019, after nearly 20 years of profitable partnership, Hinduja Global Solutions, Inc. ("HGSI") decided to stop paying Synergy's approximately 5% commission under a contract known as the Broker Agreement. Exactly why HGSI has decided to do so is unclear because it keeps changing its theory of the case. Some of HGSI's more absurd theories have long fallen by the wayside, only to be replaced by ostensibly valid, yet legally and factually frivolous theories. The end result, however, is the same: HGSI and its principals, including A.P. Hinduja, Partha De Sarkar, and Srinivas Palakodeti are stealing millions of dollars from Synergy because they think they can get away with it.

### I.     DISCOVERY PLAN

1.     Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, Synergy intends to conduct discovery under Level 3.

PLAINTIFF'S SECOND AMENDED PETITION

1

**Supp. R. 024**

## II.  STATEMENT OF RELIEF

2.      Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Synergy seeks monetary relief over $1,000,000 and non-monetary relief.

## III.  PARTIES

3.      Plaintiff Synergy is a Nevada limited liability company with operations in Texas.

4.      Defendant HGSI is a Delaware corporation. It has appeared in this case.

5.      Defendant HGS Healthcare, LLC is a limited liability company doing business in the State of Texas and can be served with process by serving its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## V.  VENUE

6.      Venue is proper in Dallas County, Texas under Section 15.002 of the Texas Civil Practice and Remedies Code because Dallas County is the county in which all or a substantial part of the events or omissions giving rise to this lawsuit occurred.

## VI.  BACKGROUND

7.      In 2003, Wilkes McCain contacted healthcare behemoth Humana, Inc. to promote the services of Hinduja TMT, Ltd., later renamed Hinduja Global Solutions, Ltd. ("HGS, Ltd."), an Indian company providing call center and other back-office services. Mr. McCain's efforts resulted in a Master Agreement for Services between HGS, Ltd. and Humana in December 2003 ("MSA").

8.      As early as 2003 and continuing through the present day, the MSA has been amended nearly 200 times to expand and grow the scope of work performed for Humana. In return, McCain and his company, Synergy, have been paid commissions ranging from 2.5% to 5% on existing and new lines of business - depending on where the services are performed (*e.g.,* in the United States, Jamaica, the Philippines, India, etc.).

**PLAINTIFF'S SECOND AMENDED PETITION**                                                              **2**

9. Humana paid these commissions to a billing agent, Universal Vision Corporation ("UVC") who would receive the revenue from Humana, distribute to Synergy its portion of revenue for its commissions, and then pay the rest to HGS, Ltd.

10. Throughout the years, HGS, Ltd. has praised Mr. McCain for his continued role in growing the fledgling relationship into a multi-million-dollar venture. As recently as June 20, 2019, Ramesh Gopalan, the President of Global Healthcare for HGS, Ltd. sent an email extending "special congratulations and thanks to the team which front-ended" a new line of business "comprising of Wilkes, Siby and Shawne." Gopalan recognized that Mr. McCain "built a great relationship and gave confidence that we can deliver [services] better than our competition…."

11. In November 2009, UVC and HGS, Ltd. agreed that UVC would cease acting as the billing agent, and UVC novated its rights and obligations to HGSI, a subsidiary of HGS, Ltd. As a result, HGSI undertook UVC's obligations as the billing agent to pay Synergy its commissions for services provided by HGS, Ltd. under the MSA for the Humana relationship.

12. In December 2010, HGS, Ltd. and Humana agreed to novate the MSA by substituting HGSI in as Humana's contractual counterparty. In doing so, HGSI undertook HGS. Ltd.'s concurrent obligation to pay Synergy its commissions for services provided under the MSA for the Humana relationship.

13. Throughout this time, Synergy continued to receive its commissions, now from HGSI, on existing and new lines of business with Humana.

14. In January 2010, HGS, Ltd. (again, HGSI's parent company), emailed Mr. McCain to request "a copy of any agreement in place" for the purpose of paying commissions "on the collections received…from Humana revenue." There was, however, no written agreement, so Mr. McCain created a draft Broker Agreement and sent it to his counterparts at HGS, Ltd., including HGSI's president, Narasimha Murthy. Notably, the terms of the Broker Agreement, including the appendices indicated

commission rates to be paid by region, reflected the terms under which the parties had been performing for years.

15.     HGSI did not sign the draft Broker Agreement for another year. In fact, when HGS, Ltd. asked Mr. McCain for a written agreement in 2011, Mr. McCain reminded HGS, Ltd. that he had previously sent an agreement for HGSI's review and signature. After prompting from HGS, Ltd. Murthy signed the Broker Agreement, dated January 1, 2010, on April 25, 2011.

16.     Between November 2009 – the date HGSI assumed the obligations to pay Synergy as HGS, Ltd.'s billing agent for the Humana relationship – through December 2010 – the date HGSI assumed the obligations of the MSA and the concurrent obligation to pay Synergy's commissions – and through April 25, 2011 – the execution date of the Broker Agreement, HGSI never missed a monthly commission payment to Synergy for existing and new lines of business. Nor did it miss a payment for existing or new lines of business after it signed the Broker Agreement. That is until September 2019 when HGSI unilaterally decided to "suspend" payments until Synergy disclosed "shareholding and ownership" for each of its owners.

17.     Initially, HGSI blamed its breach on concerns over potential violations of regulations promulgated by the U.S. Department of Treasury's Office of Foreign Asset Control. Later it claimed that it needed the requested information so HGS, Ltd. could comply with Indian securities laws. Then, at a hearing in this case, HGSI claimed that Synergy was involved in money laundering. Months later, HGSI changed its theory again, arguing that the Broker Agreement is the illegal product of a conspiracy between Synergy and one of HGSI's former directors. Now, HGSI's live pleadings complain that its breach is excused because the profits to HBI Group are not being passed along to the proper members of the Hinduja family.

18.     What HGSI's latest allegations have to do with Synergy, no one can say (certainly not HGSI). But somehow HGSI has decided it nevertheless is excused from paying Synergy.

19. During discovery, Synergy noticed that payments under the Broker Agreement began being paid from a new entity with operations in Texas called HGS Healthcare, LLC. On information and belief, the entire relationship between HGSI and Humana, as well as the commission obligations under the Broker Agreement and the Billing Agent Novation Agreement, have been assigned to HGS Healthcare, LLC.

## VII.  CAUSES OF ACTION

### COUNT 1 – BREACH OF CONTRACT (THE WRITTEN BROKER AGREEMENT)

20. Synergy incorporates by reference the allegations above as if fully set forth herein.

21. The Broker Agreement is a valid, enforceable contract.

22. Synergy performed, tendered performance of, or was excused from performing its contractual obligations to HGSI and HGS Healthcare.

23. Until September 2019, HGSI and/or HGS Healthcare ratified and affirmed the Broker Agreement through its payment of Synergy under the Broker Agreement.

24. HGSI and/or HGS Healthcare breached the Broker Agreement by refusing to pay Synergy its contractually owed compensation since September 2019. This includes with respect to the commissions for services provided by HGSI to Humana under the MSA, including, but not limited to, because the Broker Agreement includes customers introduced by Synergy to HGSI and HGS, Ltd., prior to the effective date of the Broker Agreement under Synergy's long standing relationship with HGSI and HGS, Ltd., as reflected in the appendices to the Broker Agreement and the parties' course of performance.

25. HGSI's and/or HGS Healthcare's breach has damaged Synergy. It is impossible to determine the amount of damage at this stage because HGSI refuses to disclose the information through which the monthly commission payments are assessed. The damages continue to accrue.

26.     Accordingly, Synergy is seeking to recover its actual damages, prejudgment and post-judgment interest in the maximum amount allowed by law, costs of court, and attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

<u>**COUNT 2 – BREACH OF CONTRACT (THE ORAL BROKER AGREEMENT)**</u>

27.     Synergy incorporates by reference the allegations above as if fully set forth herein.

28.     To the extent that HGSI and/or HGS Healthcare argues, and the Court finds, that the written Broker Agreement dated January 1, 2010 does not include compensation for customers introduced to HGSI prior to the written Broker Agreement and that Humana is such a customer, then Synergy pleads in the alternative that HGSI breached its ongoing obligation to pay commission agreements under the Oral Broker Agreement (the terms under which the parties had been operating between 2003 and 2019 to compensate Synergy for the services provided to Humana under the MSA).

29.     The Oral Broker Agreement is a valid contract.

30.     The Oral Broker Agreement does not fall within the statute of frauds because it could have been performed in less than one year. Specifically, under the terms of the MSA, it could have been terminated by Humana or HGS, Ltd. (and later HGSI) for cause or by Humana without cause on six months-notice. Upon this termination of the MSA, which could have occurred within one year of the execution of the Oral Broker Agreement, HGS, Ltd.'s (and later HGSI's) obligations to pay Synergy would have been complete, and the Oral Broker Agreement would have been fully performed.

31.     The Oral Broker Agreement also does not fall within the statute of frauds because of HGS, Ltd.'s (and later HGSI's) partial performance, ratification, and affirmation of the agreement. HGS, Ltd. (and later HGSI) consistently paid Synergy the broker commissions owned under the Oral Broker Agreement until the breach in September 2019. These payments are unequivocally referable to the services provided by Synergy under the Oral Broker Agreement because the amounts and payments to Synergy are linked directly to the revenue generated by HGS, Ltd. (and later HGSI) for

the specific services to Humana that Synergy brokered to HGS, Ltd. (and later HGSI). Those payments could have been made for no other purpose other than compensating Synergy for its services under the Oral Broker Agreement.

32. In light of this strong evidence establishing the existence of the Oral Broker Agreement, refusing to enforce this agreement would amount to a virtual fraud on Synergy because it acted in reliance on the Oral Broker Agreement to undertake the cost and expense of providing services to HGS, Ltd. (and later HGSI) and then suffered substantial detriment as a result of its nonpayment for which there is no other adequate remedy at law. At the same time, HGSI and HGS Healthcare will now continue to reap the unearned benefit of their access to Humana as a customer if the Oral Broker Agreement is not enforced.

33. Synergy performed, tendered performance of, or was excused from performing its contractual obligations to HGSI and HGS Healthcare.

34. HGSI and/or HGS Healthcare breached the Agreement by refusing to pay Synergy its contractually owed compensation since September 2019.

35. HGSI's and/or HGS Healthcare's breach has damaged Synergy. It is impossible to determine the amount of damage at this stage because HGSI refuses to disclose the information through which the monthly commission payments are assessed. The damages continue to accrue.

36. Accordingly, Synergy is seeking to recover its actual damages, prejudgment and post-judgment interest in the maximum amount allowed by law, costs of court, and attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

### COUNT 3 – QUANTUM MERUIT

37. Synergy incorporates by reference the allegations above as if fully set forth herein.

38. Synergy provided valuable services to HGSI and/or HGS Healthcare.

39. HGSI and/or HGS Healthcare accepted the services Synergy provided.

40. HGSI and/or HGS Healthcare understands that Synergy expects to be compensated for its services.

41. Accordingly, Synergy is seeking to recover the value of the Written Broker Agreement (or, in the alternative, Oral Broker Agreement) in the event it is determined that the Broker Agreement is unenforceable.

## ACTUAL, CONSEQUENTIAL, AND EXEMPLARY DAMAGES

42. As a consequence of HGSI's and/or HGS Healthcare's wrongful conduct described above, Synergy has suffered actual and consequential damages exceeding the minimum jurisdictional limits of this Court. Synergy pleads both actual and consequential damages on all causes of action. Moreover, Synergy pleads exemplary damages on its causes of action against HGSI and/or HGS Healthcare.

## CONDITIONS PRECEDENT

43. All conditions precedent to the maintenance of the causes of action and Synergy's recovery thereon, including attorneys' fees, have occurred or been performed.

## XII. PRAYER FOR RELIEF

Synergy respectfully requests the Court to cite HGSI and HGS Healthcare to appear and answer herein, and to grant Synergy the following relief:

a. Actual and consequential damages as determined at trial on the merits;

b. Judgment against HGSI and/or HGS Healthcare for exemplary damages as determined at trial on the merits;

c. Costs of suit, including costs of Court and reasonable legal expenses and Attorneys' Fees;

d. Pre and post-judgment interest at the maximum rate provided by agreement of the parties or permitted by law; and

**PLAINTIFF'S SECOND AMENDED PETITION** 8

e.    Any such other and further relief, at law or in equity, to which Synergy may be justly

entitled.

Date: June 11, 2021                    Respectfully submitted,


                              /s/ Gregory A. Brassfield
                              Michael K. Hurst
                              State Bar No. 10316310
                              Mhurst@lynnllp.com
                              Gregory A. Brassfield
                              State Bar No. 24079900
                              gbrassfield@lynnllp.com
                              **LYNN PINKER HURST & SCHWEGMANN, LLP**
                              2100 Ross Avenue, Suite 2700
                              Dallas, Texas 75201
                              (214) 981-3800 Telephone
                              (214) 981-3838 Facsimile


## CERTIFICATE OF SERVICE


The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served *via electronic e-service* on all parties of record on June 11, 2021.


                              /s/Gregory Brassfield
                              Gregory Brassfield


**PLAINTIFF'S SECOND AMENDED PETITION**                              **10**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tonia Ashworth on behalf of Gregory Brassfield
Bar No. 24079900
tashworth@lynnllp.com
Envelope ID: 54347023
Status as of 6/15/2021 8:26 AM CST

Associated Case Party: SYNERGY GLOBAL OUTSOURCING, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael K.Hurst | | mhurst@lynnllp.com | 6/11/2021 3:19:12 PM | SENT |

Associated Case Party: HINDUJA GLOBAL SOLUTIONS, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barry Barnett | | bbarnett@susmangodfrey.com | 6/11/2021 3:19:12 PM | SENT |
| Ophelia Camina | | ocamina@susmangodfrey.com | 6/11/2021 3:19:12 PM | SENT |
| Tyson Garcia | | tgarcia@susmangodfrey.com | 6/11/2021 3:19:12 PM | SENT |
| Jeff McLaren | | jmclaren@susmangodfrey.com | 6/11/2021 3:19:12 PM | SENT |
| Eliza Finley | | efinley@susmangodfrey.com | 6/11/2021 3:19:12 PM | SENT |
| Zach Savage | | zsavage@susmangodfrey.com | 6/11/2021 3:19:12 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| April Sandefur | | asandefur@lynnllp.com | 6/11/2021 3:19:12 PM | SENT |
| Margie Slusser | | mslusser@lynnllp.com | 6/11/2021 3:19:12 PM | SENT |
| Tonia Ashworth | | tashworth@lynnllp.com | 6/11/2021 3:19:12 PM | SENT |
| Simone Blair | | sblair@lynnllp.com | 6/11/2021 3:19:12 PM | SENT |
| Greg Brassfield | | gbrassfield@lynnllp.com | 6/11/2021 3:19:12 PM | SENT |
| Leo Park | | lpark@lynnllp.com | 6/11/2021 3:19:12 PM | SENT |

FILED
9/15/2021 12:52 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Debra Clark DEPUTY

No. DC-19-20539

| | | |
|---|---|---|
| SYNERGY GLOBAL OUTSOURCING, LLC, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| v. | § § | DALLAS COUNTY, T E X A S |
| HINDUJA GLOBAL SOLUTIONS, INC. and HGS HEALTHCARE, LLC, | § § § § | |
| Defendants/Counter-Plaintiffs, | § § | |
| v. | § § | |
| ALI GANJAEI, | § § | |
| Counter-Defendant. | § § | 191ST JUDICIAL DISTRICT |

## DEFENDANTS' FIFTH AMENDED ANSWER AND SIXTH AMENDED COUNTERCLAIMS

Under Rules 92 and 97 of the Texas Rules of Civil Procedure, Defendants and Counter-Plaintiff Hinduja Global Solutions Inc. ("HGSI") and HGS Healthcare, LLC ("HGS Healthcare" and, together with HGSI, "Defendants") answer Plaintiff's Second Amended Petition and counterclaim against Plaintiff Synergy Global Outsourcing, LLC ("Synergy") and third-party Counter-Defendant Ali Ganjaei ("Ganjaei,") and, together with Synergy, the "Counter-Defendants") as follows:

\*

---

\* HGS Healthcare joins this pleading subject to, and without waiver of, all objections and defenses, including its right to seek an order striking Synergy's attempt to add HGS as a defendant. See HGSI's Motion to Strike Synergy's Attempt to Add HGS Healthcare as a Defendnat, July 19, 2021.

**Supp. R. 035**

## General Denial

1.    Defendants generally deny the material allegations in the Petition and demand strict proof of each of them.

## Affirmative Defenses

2.    Plaintiff Synergy has unclean hands.

3.    The doctrines of fraud, illegality, unconscionability, and undue influence bar Synergy's claims in whole or in part. Synergy's claims are barred in whole or in part by its knowing participation and active complicity in breaches of fiduciary duty and conspiracy to breach fiduciary duty, including breaches of fiduciary duty before, during, and after execution of the Broker Agreement.

4.    Synergy's claims are barred by Synergy's failure to perform conditions precedent. Specifically, Section 3 of the Broker Agreement states that Synergy would not be entitled to compensation unless "as a result of [Synergy's] contacts made with the CUSTOMER, [HGSI] and the CUSTOMER enter into a written agreement for the providing of Services at any time within the later of (i) twenty four (24) months from the date the potential Customer was last contacted by BROKER; or (ii) twenty-four (24) months following the date of termination or expiration of this Agreement, provided that BROKER made an initial contact with the potential CUSTOMER and a meeting has taken place between CUSTOMER and CLIENT prior to termination or expiration of this Agreement[.]" Further, Section 1 states that the "Agreement shall be effective on the date of its full execution," which was on April 25, 2011. Defendants deny that they have entered into any written agreements with potential customers after the execution of the Broker Agreement that might  involve compensation to Synergy.

5.    Synergy's claims are barred in whole or in part by the doctrine of payment. Defendants paid Synergy millions of dollars since the Broker Agreement was executed in April 2011, which exceeds whatever Defendants might owe Synergy under the express terms of the Broker Agreement because Synergy has not shown which, if any, contracts entered into with potential customers after April 2011 involve compensation to Synergy.

6.    Synergy's claims for payments under the Broker Agreement based on customer agreements entered into prior to the execution of the Broker Agreement are barred by the doctrine of lack of consideration.

7.    Synergy's claim for breach of the Oral Broker Agreement is barred by the statute of frauds. *See* Tex. Bus. & Com. Code Ann. § 26.01(a).

8.    Defendants may set off or recoup any liability they may have to Synergy with Synergy's liability to Defendants for its wrongful conduct towards Defendants.

8.    Defendants reserve the right to plead additional matters in defense.

## DEFENDANTS' SIXTH AMENDED COUNTERCLAIMS

### Parties

1.    HGSI is a Delaware corporation with its principal place of business in Lisle, Illinois.

2.    HGS Healthcare is an Illinois limited liability company doing business in Texas.

3.    Synergy is a Nevada limited liability company with its headquarters in Texas. It was formed in 2004.

4.    Ali Ganjaei ("Ganjaei") is a citizen of the State of New Jersey. He has been licensed to practice law continuously since 1986, has served as HGSI's HGS Healthcare's, and Synergy's General Counsel, and at all relevant times until October 2019 was a member of HGSI's Board of

Directors. Ganjaei also served on HGS Healthcare's Board of Managers from June 12, 2019 through October 2019. Ganjaei is also the manager of Mesilla Office Solutions, LLC ("Mesilla"), Managing Director of HBI Incorporated N.V., and the CEO of NV Transition Inc. and HBI Group, Inc.

## Jurisdiction

5. The subject matter in controversy is within the jurisdictional limits of this court. Counter-Plaintiff seeks monetary relief over $1,000,000 and all other relief to which it is entitled.

6. The Court has personal jurisdiction over Synergy because it has submitted to the Court's jurisdiction by filing this cause and appearing before the Court.

7. The Court has personal jurisdiction over Ganjaei pursuant to Tex. Civ. Prac. & Rem. Code § 17.042 because, as more specifically alleged below, Ganjaei established minimum contacts with Texas by purposefully conducting activities directed to Texas, including those described below for Ganjaei's benefit, thereby obtaining the benefits and protections of Texas's laws and doing business in Texas, and HGSI's and HGS Healthcare's counterclaims against Ganjaei relate to and arise out of Ganjaei's contacts with Texas. The exercise of personal jurisdiction over Ganjaei in this case comports with the requirements of due process under the Fourteenth Amendment.

## Venue

8. Venue in Dallas County is proper because it is the venue in which the Plaintiff and Counter-Defendant Synergy intitially brought this action.

## Facts

9. The Hinduja Group is a multinational conglomerate founded in 1914 by Paramanand Deepchan Hinduja.

10. Parmanand Hinduja's four sons took over the Hinduja Group in 1971 upon their father's death. Since then, ownership of the conglomerate has been based on the oft-quoted rule that all Hinduja Group assets belong to the family: "Everything belongs to everyone, and nothing belongs to anyone."

11. Although different Hinduja family members lead the various Hinduja Group entities, the assets and revenues of those entities are to be shared among the Hinduja family.

12. The Hinduja Group includes Hinduja Global Solutions, Limited ("HGSL"), a global business process management organization headquarted in Bangalore, India. It is a public limited company listed on Indian stock exchanges, but the majority of shares are held by Hinduja Group entities that are ultimately held by the Hinduja family trust.

13. HGSI was incorporated in Delaware on June 30, 2000. It is wholly-owned by HGS International, which is in turn wholly-owned by HGSL.

14. HGS Healthcare is a wholly-owned subsidiary of HGSI.

15. Ramkrishan ("Remi") Hinduja, a grandson of Parmanand Hinduja, served as the chairman of HGSL's board of directors from at least 2008 until approximately October 2019. He also served as director, and later chairman, of HGSI's board of directors from at least 2007 until October 2019. He was afforded near complete control of HGSL, HGSI, and HGS Healthcare given his status as a Hinduja family member.

16. In the two decades since its formation, HGSI, with its subsidiary HGS Healthcare, has provided business process management services in the United States, Canada, Jamaica, and elsewhere. Today, its operations principally involve furnishing other companies with back office, contact center, and human resource services.

17.     HGSI, through its subsidiary, HGS Healthcare operates call centers located in El Paso, Texas.

18.     In 2003, the heathcare company Humana Inc. ("Humana") hired HGSI, and HGSI began providing claims processing and other services to segments of Humana. Some of the founders or executives of Synergy helped introduce HGSI to Humana and received compensation for their assistance.

19.     In his capacity as legal counsel to HGSI, Ganjaei communicated frequently with Wilkes McCain ("McCain"), president of Synergy and a Texas resident, to negotiate and draft the master services agreement between HGSI and Humana.

20.     Years after Humana became an HGSI client, Synergy's principals asked fiduciaries of HGSI and HGS Healthcare to redocument the compensation arrangement based on Synergy's introduction of HGSI to Humana as if it had just begun. The purpose was to institute a potentially perpetual stream of large monthly payments, from HGSI to Synergy, that could continue regardless of whether Synergy provided anything of value to HGSI or HGS Healthcare.

21.     The Broker Agreement that resulted from these discussions thus purported to contemplate, in paragraph 2, that Synergy, as "BROKER", would "make contacts" with Humana "for selling programs" of HGSI to Humana but that Synergy "shall not be obligated to assist [HGSI] in the process of selling its Services to [Humana], or to coordinate or attend meetings" between HGSI and Humana.

22.     Although Humana had already long been a client of HGSI at the time the Broker Agreement was drafted, paragraph 3 now remarkably provided that Synergy would receive a "Brokerage Fee" based on HGSI's "Gross Services Revenue" from Humana. Given the volume of

business between HGSI and Humana, the Brokerage Fee was expected to involve several million dollars in payments by HGSI to Synergy every year.

23. HBI Incorporated N.V. is a Curacao limited liability company. Entities related to and at all relevant times under common control with HBI Incorporated N.V. include NV Transition Inc., a New York corporation, and HBI Group, Inc., a New York corporation (together with HBI Incorporated N.V., "HBI").

24. HBI was initially formed as a Hinduja Group entity, and its assets were initially held collectively by the Hinduja family. However, upon information and belief, with the assistance of Ganjaei, HBI's assets were surreptitiously transferred to a trust or other holding entity for the benefit of Remi Hinduja and his two cousins, Vinoo Hinduja and Shanu Hinduja, and HBI's revenues have been misappropriated for the benefit of those family members and individuals such as Ganjaei who aided them in this scheme.

25. Ganjaei received substantial financial benefits from engaging in his various leadership positions with HBI and from supporting Remi's interests.

26. Ganjaei, as general counsel for HGSI and a member of HGSI's board of directors, was instrumental in reviewing and advising HGSI regarding the terms of the Broker Agreement with Synergy's principals and in inducing HGSI to sign the Broker Agreement.

27. A written agreement between Ganjaei and HGSI provided the terms and conditions under which Ganjaei provided professional legal services to, for the benefit of, or on behalf of HGSI and its subsidiaries, including HGS Healthcare, including legal work that he knew concerned and was directed at operations, activities, benefits, relationships, and persons in Texas. As just one example, Ganjaei assisted HGSI in forming a settlement and litigation strategy for employment

disputes arising from its El Paso, Texas call centers and secured outside counsel in El Paso, Texas to handle such disputes.

28.     Before HGSI signed the Broker Agreement in 2011, one or more former fiduciaries of HGSI and HGS Healthcare ("HGSI Fiduciaries"), including Ganjaei and Remi, caused a controlling equity interest in Synergy to be conveyed to HBI, HBI affiliates, or other entities under HGSI Fiduciaries' control. Ganjaei himself signed the agreement under which HBI acquired a majority interest in Synergy. As HGSI Fiduciaries contemplated when they induced HGSI to enter into the Broker Agreement and arranged to make the acquisition of Synergy, securing a controlling interest in Synergy would now give HGSI Fiduciaries control of both sides of the Broker Agreement and consequently control of the lucrative stream of payments. It also enabled HGSI Fiduciaries to now divert millions of dollars in payments under the Broker Agreement to themselves through HBI, HBI affiliates, or other entities under HGSI Fiduciaries' control.

29.     HBI is the majority owner and a Manager of Synergy. Ganjaei is the individual who acts on behalf of HBI with respect to controlling Synergy. Ganjaei sits on Synergy's board of directors and attends Synergy's board meetings.

30.     The Broker Agreement was not fair to HGSI. For example, it called for excessive payments to Synergy, purportedly indefinite in time, based on revenues from Humana regardless of whether Synergy provided any services or other consideration to HGSI. The Broker Agreement was also unconscionable because when it was entered into in 2011, Humana was already a client. The Broker Agreement was also unreasonable because HGSI had already compensated Synergy for its role in introducing Humana.

31.     In truth and in fact, the Broker Agreement was merely a vehicle for HGSI Fiduciaries to siphon money from HGSI for their own personal benefit. Even if the Broker

Agreement were nominally approved by HGSI's Board of Directors, such approval would have been improper and ineffective because, among other things, the directors either were themselves financially interested in the Broker Agreement or were unaware of HGSI Fiduciaries' financial interest in the Broker Agreement, HBI's ownership of Synergy, or the misappropriation of HBI's assets, or were so beholden to Ganjaei, Remi, and other interested HGSI Fiduciaries that they could not (and did not) exercise independent corporate scrutiny of the Broker Agreement.

32. Moreover, Ganjaei and other HGSI Fiduciaries never disclosed—and continue to actively conceal—HBI's ownership structure and changes that have been made over the years to the same. This information is material to HGSI's and HGS Healthcare's directors and officers who owe fiduciary duties to HGSL and in turn, HGSL's Hinduja family shareholders who would have strenuously objected to transactions with HBI and HBI-owned entities whereby HGSI funds would accrue to Remi, Vinoo Hinduja and Shanu Hinduja rather than to the Hinduja family trust.

33. On information and belief, a written agreement between Ganjaei and Synergy provided the terms and conditions under which Ganjaei provided professional legal services to, for the benefit of, or on behalf of Synergy, which received the benefit of Ganjaei's services in Texas and compensated Ganjaei for his services from Synergy's offices in Texas.

34. The Broker Agreement was to be performed in large part in Texas by Synergy, a company with offices in Dallas, Texas. The Broker Agreement contains a Texas choice-of-law provision and requires HGSI to wire Synergy's brokerage fees to State Bank & Trust in Carrollton, Texas and to provide notices to Synergy at its Dallas offices. McCain, Synergy's president and a Texas resident, signed the Broker Agreement and performs substantially all of Synergy's services under the Broker Agreement.

35. After HGSI Fiduciaries acquired a controlling interest in Synergy, Synergy began holding itself out publicly as a "member" of the "Hinduja Group" when it knew it was not. It also made representations that it had licenses or certifications that it did not have but that HGSI does have. It also appears to have asserted that it had one or more of the same offices and officers as HGSI. Synergy did these things in interstate commerce, on the internet and otherwise, for the purpose of deceiving its audience into making purchasing decisions.

36. In 2014, Ganjaei prepared and filed with the Texas Secretary of State's office on behalf of HGSI an application for registration as a foreign for-profit corporation in Texas. The application listed Ganjaei as a member of HGSI's board of directors.

37. In 2015, Ganjaei attended an HGSI board meeting held in El Paso, Texas and toured HGSI's El Paso call centers. HGSI's El Paso call centers provide services to Humana.

38. In 2018, the United States Department of Treasury's Office of Foreign Asset Control sent to an affiliate of HGSI a letter questioning a $1.7 million payment by the affiliate to an entity that was apparently affiliated with Synergy and HBI or their principals. Ganjaei responded to the letter but did so without approval of HGSI's president. These events raised concern that doing business with Synergy may expose it to potential prosecution under United States law.

39. Ganjaei has long been HBI's point of contact and representative for Synergy and spoke with McCain over the telephone regarding Synergy matters regularly and several times a year. Ganjaei also attended Synergy's board meetings as HBI's representative.

40. Ganjaei sent several emails as Synergy's counsel to HGSI and HGSI's parent company, Hinduja Global Solutions, Ltd., demanding that payments under the Broker Agreement be made to Synergy.

**Supp. R. 044**

41.     At the direction of Synergy's officers and Ganjaei, who were aware of the unscrupulous origins of the Broker Agreement, Synergy brought this action in Texas on December 30, 2019, and on the same day it obtained a temporary restraining order ("TRO") that purported to require HGSI to make the "contractual" payments now under review. Synergy's application and the TRO itself suffered from glaring defects, including a complete absence of admissible evidence supporting it (both declarations submitted by Synergy lacked a jurat), the unavailability of a mandatory injunction or one granting an award of monetary damages under these circumstances, and the absence of an expiration date in the TRO. Also missing was disclosure of the Broker Agreement's origins and the plain language that was in conflict with the requested relief. Despite a motion by HGSI to dissolve the TRO on these and other grounds, and again at the knowing direction of Ganjaei, Synergy pursued a motion to enforce the TRO and induced an Associate Judge to grant the motion on January 8, 2020, forcing HGSI to pay Synergy more than $650,000 pursuant to the TRO and enforcement order. Synergy's conduct was wrongful, and as a result the TRO was later dissolved.

42.     In March 2020, Ganjaei participated in this action by submitting a declaration in support of Synergy's motion for protection. Ganjaei also communicated by email and telephone with McCain and Synergy's counsel in Texas regarding Synergy's strategy in pursuing this case and his legal work for Synergy on, among other things, the Broker Agreement and the relationships between Synergy, HBI, and the HGSI Fiduciaries, including Ganjaei himself. Counsel for Synergy and Ganjaei have communicated while in Texas about efforts to avoid discovery in this action concerning HBI's ownership structure and the connections between Ganjaei and other HGSI Fiduciaries with Synergy. Ganjaei has also shared HGSI's confidential information with Synergy and Synergy's counsel in the course of this litigation, including documents which were submitted

in support of Synergy's motion for summary judgment filed on February 7, 2021. Ganjaei, through his counsel, has also directed demands to Texas that HGSI indemnify and advance Ganjaei's legal fees as incurred in Texas.

43. The Broker Agreement is not the only unfair and commercially unreasonable HGSI contract where Ganjaei and other HGSI Fiduciaries stand on both sides of. In addition to serving as CEO of HBI, Ganjaei is also the Manager of Mesilla, a Texas LLC. HBI, in turn, is the sole managing member of Mesilla. On July 30, 2017, HGSI's board of directors approved a lease agreement between Mesilla and HGS Healthcare ("Lease Agreement"). Under this Lease Agreement, Mesilla agreed to lease used office furniture and equipment to HGS Healthcare on an as-is basis for HGS Healthcare's operations in El Paso, Texas. At the time the Lease Agreement was approved and signed, Ganjaei was a member of HGSI's board of directors, as well as legal counsel to HGSI and its various subsidiaries, including HGS Healthcare. The Lease Agreement was executed between Mesilla and HGS Healthcare on November 27, 2018.

44. A few months after the Lease Agreement was signed, Ganjaei also became a manager of HGS Healthcare.

45. An independent valuation of the equipment in May 2017 concluded that the fair value of Mesilla's equipment was only $113,500. The Lease Agreement however required HGS Healthcare to pay Mesilla a whopping $360,000 over the course of just one year—roughly three times the fair market value of the equipment.

46. Ganjaei and other HGSI Fiduciaries who stood to gain from the Lease Agreement exerted their significant influence over the leadership of both HGSI and HGS Healthcare to force HGSI to approve the Lease Agreement and HGS Healthcare to sign the Lease Agreement. Each

**Supp. R. 046**

director of HGSI and the President of HGS Healthcare understood and believed that anyone who refused to approve the Lease Agreement would have been demoted or fired.

47.     By forcing HGS Healthcare to pay an inflated, unreasonable fee for used office equipment provided on an as-is basis, Ganjaei successfully diverted hundreds of thousands of dollars in payments under the Lease Agreement to himself and other HGSI Fiduciaries.

48.     Further, Ganjaei and Remi traveled to Texas on behalf of Synergy in 2011 to negotiate, with Walter J. Frank Jr., a citizen and resident of Texas, the purchase of a call center covering an entire city block in Barranquilla, Colombia, for millions of dollars from Media Commerce Partners, LLC, a company that was registered and authorized to do business in Texas and had its principal place of business in the same location as Synergy, 17250 Dallas Parkway, Suite 200, Dallas, Texas 75248. HBI ultimately purchased the call center in Colombia for the purpose of entering into agreements with HGSI whereby HGSI would subcontract its call center work to the HBI-controlled call centers. This arrangement demonstrates yet another mechanism by which Ganjaei, who at the time was serving as legal counsel to Synergy, HBI, and HGSI, and other HGSI Fiduciaries used their positions, insider knowledge, and influence to funnel money from HGSI to themselves.

49.     In October 2019, Ganjaei and other HGSI Fiduciaries affiliated with HBI were asked to resign from HGSI's Board of Directors after information came to light suggesting that HBI's ownership structure and funds had been misappropriated for the benefit of Remi, his cousins, Ganjaei, and the other HGSI Fiduciaries.

**Count I**
**(Breach of Fiduciary Duty—Ganjaei)**

50.     HGSI and HGS Healthcare reallege each of the preceding allegations.

51.     Fiduciary relationships existed at all relevant times between HGSI and Ganjaei, and between HGS Healthcare and Ganjaei, who as former legal counsel to HGSI and HGS Healthcare has ongoing duties and obligations to HGSI and HGS Healthcare.

52.     Ganjaei breached his fiduciary duties to HGSI and HGS Healthcare as their general counsel and a member of their boards by, among other things, advising and causing HGSI to enter into the Broker Agreement; causing himself or other HGSI Fiduciaries to acquire a controlling interest in Synergy through ownership of HBI, HBI affiliates, or another entity; failing to disclose to HGSI that HBI owned Synergy and that Ganjaei and other HGSI Fiduciaries stood to personally gain from HGSI's payments to Synergy under the Broker Agreement; failing to disclose to HGSI that ownership of HBI had been structured such that its assets and revenues would not accrue to the benefit of the Hinduja family trust but rather only to certain Hinduja family members, including Remi; and diverting to himself and other HGSI Fiduciaries the benefits accrued from payments by HGSI under the Broker Agreement.

53.     Ganjaei continued to breach his fiduciary duties by supervising and controlling Synergy's business activities through his role as HBI's representative to Synergy. HGSI was injured each time Synergy was involved in HGSI's acquisition of new lines of business covered by the Broker Agreement as it required HGSI to make further payments to Synergy which were then diverted to Ganjaei and other HGSI Fiduciaries through HBI. As Ganjaei knew and intended, hundreds of thousands of dollars in the ill-gotten gains benefitted and were paid to Synergy and McCain in Texas.

54.     Ganjaei further breached his fiduciary duties to HGSI in his capacity as HGSI's legal counsel and/or as a member of its board of directors, by advising and causing HGSI and its affiliates to enter into subsequent broker agreements with Synergy, thus allowing Ganjaei and

other HGSI Fiduciaries to divert to themselves the benefit of payments by HGSI under those agreements. Ganjaei also breached his fiduciary duties by directing Synergy to seek unfair commission rates when negotiating these broker agreements.

55. Ganjaei further breached his fiduciary duties to HGSI and HGS Healthcare in his capacity as HGSI's and HGS Healthcare's legal counsel and/or as a member of their boards by, among other things, advising and causing HGSI and its wholly-owned subsidiary, HGS Healthcare, to enter into the Lease Agreement with Mesilla and thereafter diverting to himself and other HGSI Fiduciaries the benefits of the payments made by HGS Healthcare under the Lease Agreement.

56. Ganjaei further breached his fiduciary duties to HGSI and HGS Healthcare in his capacity as HGSI's legal counsel and/or as a member of its board of directors by, among other things, advising and causing HGSI and its subsidiaries to enter into subcontracting agreements with HBI-controlled call centers in Colombia and diverting to himself and other HGSI Fiduciaries the benefits of payments by HGSI and its subsidiaries under those agreements.

57. Ganjaei commited, and continues to commit, breaches of his ongoing duty of disclosure to HGSI and HGS Healthcare by failing to provide full disclosure of all material facts regarding the nature of his own interests and the interests of other HGSI Fiduciaries in HBI, the Broker Agreement, subsequent broker agreements, the Lease Agreement, and the Colombian call centers.

58. Ganjaei has also committed new breaches of his fiduciary duties and ethical obligations to HGSI and HGS Healthcare as their former legal counsel by representing Synergy and Mesilla in their efforts to collect payments under the Broker Agreement from HGSI and under the Lease Agreement from HGS Healthcare, by using information he obtained from HGSI while

serving as its legal counsel to the detriment of HGSI and for his own benefit and the benefit of others, and by engaging Texas counsel for Synergy to bring and prosecute this lawsuit against HGSI in this Court and developing and executing with Synergy and Texas counsel a strategy of disclosing to them and encouraging them to use in this lawsuit HGSI's privileged and confidential documents and information against HGSI in this litigation while withholding it from HGSI, and by otherwise assisting and supervising Synergy in its prosecution of the instant case.

59.     These breaches of fiduciary duty injured, and ongoing and future breaches will injure, HGSI and HGS Healthcare and benefited, and will benefit, Ganjaei and the other HGSI Fiduciaries.

60.     HGSI and HGS Healthcare are entitled to recover from Ganjaei the damages proximately caused by the various breaches of fiduciary duties and to require Ganjaei to disgorge any benefits he received as a result of the breaches, including payments under the Broker Agreement, any subsequent broker agreements, and the Lease Agreement and to take other corrective measures, including production to HGSI's Texas counsel in this case of, and a full accounting for, all files relating to HGSI and HGS Healthcare in Ganjaei's possession, custody, or control.

## Count II
### (Knowing Participation in Breach of Fiduciary Duty--Synergy)

61.     HGSI and HGS Healthcare reallege each of the preceding allegations.

62.     A fiduciary relationship existed between HGSI and HGSI Fiduciaries, and between HGS Healthcare and the HGSI Fiduciaries.

63.     Synergy knew of the fiduciary relationships between HGSI and HGSI Fiduciaries and between HGS Healthcare and the HGSI Fiduciaries.

64. HGSI Fiduciaries breached their fiduciary duties to HGSI and HGS Healthcare by, among other things, causing HGSI to enter into the Broker Agreement; acquiring a controlling interest in Synergy through ownership of HBI, HBI affiliates, or another entity; failing to disclose to HGSI that HBI owned Synergy and that HGSI Fiduciaries stood to personally gain from HGSI's payments to Synergy under the Broker Agreement; failing to disclose to HGSI that ownership of HBI had been structured such that its assets and revenues would not accrue to the benefit of the Hinduja family trust but rather to certain Hinduja family members, including Remi; and diverting to themselves the benefits accrued from payments by HGSI under the Broker Agreement.

65. The breaches of fiduciary duty injured HGSI and HGS Healthcare and benefited the HGSI Fiduciaries and Synergy.

66. HGSI and HGS Healthcare are entitled to recover from Synergy the damages proximately caused by the breaches of fiduciary duty and to require Synergy to disgorge any benefits it received as a result of the breaches, including payments under the Broker Agreement, and to take other corrective measures.

**Count III**
**(Civil Conspiracy to Cause Breach of Fiduciary Duty--All Counter-Defendants)**

67. HGSI and HGS Healthcare reallege each of the preceding allegations.

68. A fiduciary relationship existed between HGSI and HGSI Fiduciaries, including Ganjaei, and between HGS Healthcare and the HGSI Fiduciaries, including Ganjaei.

69. Synergy knew of the fiduciary relationships between HGSI and HGSI Fiduciaries and between HGS Healthcare and the HGSI Fiduciaries.

70. Synergy, Ganjaei, and other HGSI Fiduciaries conspired to breach HGSI Fiduciaries' fiduciary duties to HGSI and HGS Healthcare.

71. Synergy, Ganjaei, and HGSI Fiduciaries agreed to breach fiduciary duties and cause breaches of fiduciary duties by, among other things, inducing HGSI to enter into the Broker Agreement; advising and causing transfer of a controlling interest in Synergy to HBI, HBI affiliates, or other entities under HGSI Fiduciaries' control; failing to disclose to HGSI that HBI owned Synergy and that HGSI Fiduciaries stood to personally gain from HGSI's payments to Synergy under the Broker Agreement; failing to disclose to HGSI that ownership of HBI had been structured such that its assets and revenues would not accrue to the benefit of the Hinduja family trust but rather to certain Hinduja family members, including Remi; and diverting to themselves the benefits accrued from payments by HGSI under the Broker Agreement.

72. The breaches of fiduciary duty injured HGSI and HGS Healthcare and benefited Synergy, Ganjaei, and the other HGSI Fiduciaries.

73. HGSI and HGS Healthcare are entitled to recover from Synergy and Ganjaei the damages proximately caused by the breaches of fiduciary duties and to require Synergy and Ganjaei to disgorge any benefits either of them received as a result of the breaches, including payments under the Broker Agreement, and to take other corrective measures.

## Count IV
### (False Advertising--Synergy)

74. HGSI and HGS Healthcare reallege each of the preceding allegations.

75. Synergy made false statements of fact about its services and commercial services in commercial advertisements, in violation of 15 U.S.C. § 1125(a).

76. The statements actually deceived or have a tendency to deceive a substantial segment of their audience.

77. The deception is likely to influence a purchasing decision.

78. Synergy caused the false statements to enter interstate commerce.

**Supp. R. 052**

79.     HGSI and HGS Healthcare have been or are likely to be injured as a result.

80.     HGSI and HGS Healthcare are entitled to recover, under 15 U.S.C. § 1117(a), Synergy's profits, HGSI and HGS Healthcare's damages, and the costs of the action.

## Count V
### (Injunctive Relief—All Counter-Defendants)

81.     HGSI and HGS Healthcare reallege each of the preceding allegations.

82.     Counter-Defendants' wrongful conduct has caused and, unless the Court restrains them, will continue to cause HGSI and HGS Healthcare irreparable injury, including through loss of goodwill and reputation. HGSI and HGS Healthcare accordingly request the Court to enter temporary and permanent injunctions (a) prohibiting  Counter-Defendants from continuing to engage in wrongful conduct alleged above and (b) correcting effects of the wrongful conduct.

## Count VI
### (Wrongful Injunction and Enforcement Order—All Counter-Defendants)

83.     HGSI realleges each of the preceding allegations.

84.     Synergy and Ganjaei wrongfully obtained the TRO and the order enforcing it. Synergy's and Ganjaei's wrongful conduct injured HGSI. HGSI seeks return of its payment resulting from the wrongful injunction and enforcement order and all other available damages and relief.

## Count VII
### (Declaratory Judgment—All Counter-Defendants)

85.     HGSI and HGS Healthcare reallege each of the preceding allegations.

86.     The involvement of the HGSI Fiduciaries in ownership, control, and legal representation of Synergy and its affiliates, in direct or indirect receipt of payments and other benefits in connection with the Broker Agreement and otherwise, and in connections to HBI, HBI affiliates, and HGSI's publicly-traded parent, raises substantial questions regarding the legality of

the Broker Agreement and payments under it and otherwise in light of applicable law. Counter-Defendants deny that the involvement of HGSI Fiduciaries presents any issues of legality or enforceability, and as a result a substantial and actual controversy exists between HGSI and Counter-Defendants regarding those questions. The subject matter of the Office of Foreign Asset Control investigation raises additional legality concerns. HGSI and HGS Healthcare seek a judgment declaring whether the circumstances alleged above render the Broker Agreement or payments under it unenforceable or illegal under applicable law and awarding it such reasonable and necessary attorney's fees as are just and all other appropriate relief under chapter 37 of the Texas Civil Practice and Remedies Code.

### Statement Concerning Statute of Limitations

87.     HGSI's claims did not accrue until at the earliest September 2019. The injury suffered by HGSI by virtue of the various breaches of fiduciary duty was inherently undiscoverable and was objectively unverifiable before September 2019 at the earliest, and HGSI neither knew nor in the exercise of reasonable diligence should have known of the injury any earlier.

88.     Additionally, Ganjaei and Synergy had actual knowledge of the wrongs alleged herein with respect to the breaches of fiduciary duties and the wrongs were purposefully concealed by Ganjaei and Synegy by making a misrepresentation and/or remaining silent when they had a duty to speak. HGSI reasonably relied on those misrepresentations and silence by not pursuing its claim for breach of fiduciary duty at an earlier date.

89.     Additionally,  Ganjaei and other wrongdoers involved in the breaches of fiduciary duties to HGSI and civil conspiracy were in control of HGSI until September 2019.

**Supp. R. 054**

90. Further, breaches of fiduciary duty and civil conspiracy to engage in breaches of fiduciary duty have occurred within the two years preceding the filing of this lawsuit and within two years of joining Ganjaei as a counter-defendant and will occur in the future.

91. Because HGS Healthcare's counterclaims were not filed later than the 30th day after its answer was required, HGS Healthcare's counterclaims are not subject to any statute-of-limitations defense. *See* Tex. Civ. Prac. & Rem. § 16.069

### Exemplary Damages

92. Because Synergy and Ganjaei acted with fraud, malice, and gross negligence, HGSI and HGS Healthcare are also entitled to recover exemplary damages in an amount to be determined by the trier of fact under article 41 of the Texas Civil Practice and Remedies Code.

### Prayer

HGSI and HGS Healthcare requests that the Court award all appropriate relief, including actual and exemplary damages, disgorgement, profits, temporary and permanent injunctions, declaratory relief, reasonable and necessary attorney's fees, and costs.

Respectfully submitted,

SUSMAN GODFREY L.L.P.

 */s/ Barry Barnett*
Barry Barnett
State Bar No. 01778700
5956 Sherry Lane, Suite 2000
Dallas, Texas 75225
Phone: 866-754-1900
Fax:   713-654-6666
bbarnett@susmangodfrey.com

Ophelia Camina
State Bar No. 03681500
1000 Louisiana Street, Suite 5100

Houston, Texas 77002
Phone: 713-653-7803
Fax:     713-654-6666
ocamina@susmangodfrey.com

*Counsel for Hinduja Global Solutions, Inc.
and HGS Healthcare, LLC*

## CERTIFICATE OF SERVICE

This certifies that on the 15th day of September 2021, my office properly forwarded true and correct copy of Defendants' Fifth Amended Answer and HGSI's Sixth Amended Counterclaims to counsel of record in accordance with Rule 21 of the Texas Rules of Civil Procedure via electronic filing.

*/s/ Barry Barnett*
Barry Barnett

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tyson Garcia on behalf of Barry Barnett
Bar No. 1778700
tgarcia@susmangodfrey.com
Envelope ID: 57270764
Status as of 9/16/2021 10:09 AM CST

Associated Case Party: HINDUJA GLOBAL SOLUTIONS, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barry Barnett | | bbarnett@susmangodfrey.com | 9/15/2021 12:52:35 PM | SENT |
| Ophelia Camina | | ocamina@susmangodfrey.com | 9/15/2021 12:52:35 PM | SENT |
| Tyson Garcia | | tgarcia@susmangodfrey.com | 9/15/2021 12:52:35 PM | SENT |
| Jeff McLaren | | jmclaren@susmangodfrey.com | 9/15/2021 12:52:35 PM | SENT |
| Eliza Finley | | efinley@susmangodfrey.com | 9/15/2021 12:52:35 PM | SENT |
| Zach Savage | | zsavage@susmangodfrey.com | 9/15/2021 12:52:35 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| April Sandefur | | asandefur@lynnllp.com | 9/15/2021 12:52:35 PM | SENT |
| Tonia Ashworth | | tashworth@lynnllp.com | 9/15/2021 12:52:35 PM | SENT |
| Simone Blair | | sblair@lynnllp.com | 9/15/2021 12:52:35 PM | SENT |
| Greg Brassfield | | gbrassfield@lynnllp.com | 9/15/2021 12:52:35 PM | SENT |
| Leo Park | | lpark@lynnllp.com | 9/15/2021 12:52:35 PM | SENT |
| Gina Flores | | gflores@lynnllp.com | 9/15/2021 12:52:35 PM | SENT |

Associated Case Party: SYNERGY GLOBAL OUTSOURCING, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael K.Hurst | | mhurst@lynnllp.com | 9/15/2021 12:52:35 PM | SENT |

**Supp. R. 057**

E-filed in the Office of the Clerk
for the Business Court of Texas
10/2/2024 8:51 AM
Accepted by: Beverly Crumley
Case Number: 24-BC01B-0007



The Business Court of Texas,
1st Division

| | | |
|---|---|---|
| SYNGERGY GLOBAL OUTSOURCING, LLC, *Plaintiff* | § § § | |
| v. | § | Cause No. 24-BC01B-0007 |
| HINDUJA GLOBAL SOLUTIONS, INC. and HGS HEALTHCARE, LLC, *Defendants* | § § § § § § § § § § § § | |

## ORDER

The court requests briefing by all parties regarding what effect, if any,

Acts 2023, 88th Leg., ch. 380 (H.B. 19), § 8, eff. Sept. 1, 2023 (HB 19, § 8),

has on this court's authority to hear this case.  The court requests initial briefs

by no later than October 15, 2024, and any responses no later than October

22, 2024.  The court will advise the parties whether the court requests any

further briefing on that topic.

**Supp. R. 058**

Copy from re:SearchTX

SO ORDERED.

_____
BILL WHITEHILL
Judge, Texas Business Court
First Division


DATED:  October 2, 2024

-2-

**Supp. R. 059**

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 92684367
Filing Code Description: No Fee Documents
Filing Description: Order
Status as of 10/2/2024 9:00 AM CST

Associated Case Party: SYNERGY GLOBAL OUTSOURCING, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David S.Coale | | dcoale@lynnllp.com | 10/2/2024 8:51:56 AM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 10/2/2024 8:51:56 AM | SENT |
| Kay Ridenour | | kridenour@lynnllp.com | 10/2/2024 8:51:56 AM | SENT |
| Tonia Ashworth | | tashworth@lynnllp.com | 10/2/2024 8:51:56 AM | SENT |
| Maria Gonzalez | | mgonzalez@lynnllp.com | 10/2/2024 8:51:56 AM | SENT |
| Greg Brassfield | | gbrassfield@lynnllp.com | 10/2/2024 8:51:56 AM | SENT |
| Leo Park | | lpark@lynnllp.com | 10/2/2024 8:51:56 AM | SENT |
| Gina Flores | | gflores@lynnllp.com | 10/2/2024 8:51:56 AM | SENT |
| Ronni Bracken | | rbracken@lynnllp.com | 10/2/2024 8:51:56 AM | SENT |
| Daniela VeraHolmes | | dholmes@lynnllp.com | 10/2/2024 8:51:56 AM | SENT |

Associated Case Party: HINDUJA GLOBAL SOLUTIONS, INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barry Barnett | 1778700 | bbarnett@susmangodfrey.com | 10/2/2024 8:51:56 AM | SENT |
| Ophelia Camina | 3681500 | ocamina@susmangodfrey.com | 10/2/2024 8:51:56 AM | SENT |
| Ravi Bhalia | | rbhalla@susmangodfrey.com | 10/2/2024 8:51:56 AM | SENT |
| Joyce Ingram | | jingram@susmangodfrey.com | 10/2/2024 8:51:56 AM | SENT |
| Ophelia Camina | | ocamina@susmangodfrey.com | 10/2/2024 8:51:56 AM | SENT |

**Supp. R. 060**

Copy from re:SearchTX

E-filed in the Office of the Clerk
for the Business Court of Texas
11/12/2024 10:24 AM
Accepted by: Beverly Crumley
Case Number: 24-BC01B-0007

ACCEPTED
15-24-00127-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/15/2024 4:41 PM
CHRISTOPHER A. PRINE
CLERK

**CAUSE NO. 24-BC01B-0007**

| | | |
|---|---|---|
| **SYNERGY GLOBAL OUTSOURCING, LLC,** | § § § § § | **IN THE BUSINESS COURT** |
| *Plaintiff,* | § § | |
| v. | § § | |
| **HINDUJA GLOBAL SOLUTIONS, INC. AND HGS HEALTHCARE, LLC** | § § § § | **FIRST BUSINESS COURT DIVISION** |
| *Defendants.* | § § § § § § | |
| | § | **DALLAS COUNTY, TEXAS** |

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/15/2024 4:41:46 PM
CHRISTOPHER A. PRINE
Clerk

**NOTICE OF APPEAL**

Plaintiff, Synergy Global Outsourcing, LLC gives notice of its intent to appeal the Opinion and Order entered in this matter on October 30, 2024 (along with all orders and rulings incident thereto) ("Order"), to the Fifteenth Court of Appeals in Austin, Texas. The Court's Order remands the above captioned case to Cause No. DC-19-20539, pending in the 191st District Court, Dallas County, Texas. The cause from which the appeal is taken is *Synergy Global Outsourcing, LLC v. Hinduja Global Solutions, Inc., and HGS Healthcare, LLC*, Cause No. 24-BC01B-0007, pending in the First Division of the Business Court, Dallas County, Texas.

DATED: November 12, 2024

Respectfully submitted,

*/s/ Michael Hurst*
Michael K. Hurst
State Bar No. 10316310
mhurst@lynnllp.com

**Supp. R. 061**

Gregory A. Brassfield
  State Bar No. 240799900
  gbrassfield@lynnllp.com
Daniela Vera Holmes
  State Bar No. 24124113
  dholmes@lynnllp.com
Leo Park
  State Bar No. 24122983
  lpark@lynnllp.com
**LYNN PINKER HURST &
SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839


**ATTORNEYS FOR PLAINTIFF SYNERGY
GLOBAL OUTSOURCING**



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record on November 12, 2024, via E-File.


*/s/ Michael Hurst*
Michael K. Hurst

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ronni Bracken on behalf of Michael K. Hurst
Bar No. 10316310
rbracken@lynnllp.com
Envelope ID: 94176728
Filing Code Description: Notice of Appeal
Filing Description: NOTICE OF APPEAL
Status as of 11/12/2024 12:53 PM CST

Associated Case Party: SYNERGY GLOBAL OUTSOURCING, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David S.Coale | | dcoale@lynnllp.com | 11/12/2024 10:24:13 AM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 11/12/2024 10:24:13 AM | SENT |
| Kay Ridenour | | kridenour@lynnllp.com | 11/12/2024 10:24:13 AM | SENT |
| Tonia Ashworth | | tashworth@lynnllp.com | 11/12/2024 10:24:13 AM | SENT |
| Greg Brassfield | | gbrassfield@lynnllp.com | 11/12/2024 10:24:13 AM | SENT |
| Leo Park | | lpark@lynnllp.com | 11/12/2024 10:24:13 AM | SENT |
| Gina Flores | | gflores@lynnllp.com | 11/12/2024 10:24:13 AM | SENT |
| Ronni Bracken | | rbracken@lynnllp.com | 11/12/2024 10:24:13 AM | SENT |
| Daniela VeraHolmes | | dholmes@lynnllp.com | 11/12/2024 10:24:13 AM | SENT |
| Maria Gonzalez | | mgonzalez@lynnllp.com | 11/12/2024 10:24:13 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Business Court 1B | | BCDivision1B@txcourts.gov | 11/12/2024 10:24:13 AM | SENT |

Associated Case Party: HINDUJA GLOBAL SOLUTIONS, INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barry Barnett | 1778700 | bbarnett@susmangodfrey.com | 11/12/2024 10:24:13 AM | SENT |
| Ophelia Camina | 3681500 | ocamina@susmangodfrey.com | 11/12/2024 10:24:13 AM | SENT |
| Ravi Bhalia | | rbhalla@susmangodfrey.com | 11/12/2024 10:24:13 AM | SENT |
| Joyce Ingram | | jingram@susmangodfrey.com | 11/12/2024 10:24:13 AM | SENT |

**Supp. R. 063**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ronni Bracken on behalf of Michael K. Hurst
Bar No. 10316310
rbracken@lynnllp.com
Envelope ID: 94176728
Filing Code Description: Notice of Appeal
Filing Description: NOTICE OF APPEAL
Status as of 11/12/2024 12:53 PM CST

Associated Case Party: HINDUJA GLOBAL SOLUTIONS, INC

| Joyce Ingram | | jingram@susmangodfrey.com | 11/12/2024 10:24:13 AM | SENT |
|---|---|---|---|---|
| Ophelia Camina | | ocamina@susmangodfrey.com | 11/12/2024 10:24:13 AM | SENT |

**Supp. R. 064**

ACCEPTED
15-24-00127-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/11/2024 4:14 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/11/2024 4:14:00 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FIFTEENTH DISTRICT OF TEXAS

**SYNERGY GLOBAL OUTSOURCING, LLC,**

**Appellant,**

**v.**

**HINDUJA GLOBAL SOLUTIONS, INC., and HGS HEALTHCARE, LLC,**

**Appellees.**

**On Appeal from the First Business Court Division,
Dallas County, Texas, Cause No. 24-BC01B-0007**

**APPELLEES' MOTION TO DISMISS APPEAL
FOR LACK OF JURISDICTION**

Hinduja Global Solutions, Inc. ("HGSI") and HGS Healthcare, LLC ("HGS Healthcare") (together, the "HGS Parties"), pursuant to Rule 10 of the Texas Rules of Appellate Procedure, move to dismiss the above captioned appeal for lack of jurisdiction.

**INTRODUCTION**

This Court lacks jurisdiction over this appeal because the order that Synergy Global Outsourcing, LLC ("Synergy") challenges is a non-appealable interlocutory order. Synergy filed this appeal after it removed the underlying proceedings from

1

the 191st Civil District Court of Dallas County to the newly created Business Court and the Business Court remanded the case. But in its Docketing Statement—in which Synergy oscillates between identifying this proceeding as an appeal of a final judgment and an appeal of an interlocutory order—Synergy fails to identify a cognizable basis for this Court's jurisdiction. That's because there is none. The Business Court order at issue is not a final judgment, it is an interlocutory order. And no statute or court order permits Synergy to appeal that interlocutory order. As such, this Court lacks jurisdiction and the appeal should be dismissed.

The Court should address this threshold issue now, before the parties expend substantial resources briefing the merits of Synergy's appeal. Granting the HGS Parties' motion will obviate the need for merits briefing, promote the efficient use of judicial resources, and expedite the resolution of this appeal.

## BACKGROUND

Synergy filed its original petition against HGSI in the 191st Civil District Court of Dallas County on December 30, 2019 and amended its petition to assert claims against HGS Healthcare on June 11, 2021. Both HGSI and HGS Healthcare have asserted counterclaims against Synergy and counterclaims against Counter-Defendant Ali Ganjaei.

On October 1, 2024, Synergy filed a notice of removal to the Business Court. The case was assigned to Judge Bill Whitehill, who promptly requested briefing

2

from the parties regarding the Business Court's authority to hear this action under H.B. 19, which created the Business Court and the procedures that Synergy purported to follow in removing this case. Judge Whitehill specifically cited Section 8 of H.B. 19, which states, "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024." Section 8, Chapter 380 (H.B. 19), Acts of the 88th Legislature, Regular Session, 2023.

Briefing concluded on October 23, and on October 31, Judge Whitehill granted the HGS Parties' motion to remand the action to the 191st Civil District Court. Judge Whitehill agreed with the HGS Parties that Section 8 precludes removal of civil actions that were commenced prior to September 1, 2024. *See* Ex. 1 at 8, 11 (the "Remand Order").

Synergy filed a notice of appeal of the Remand Order on November 12, 2024. On November 22, Synergy filed its Docketing Statement, purporting to establish the basis on which the Remand Order may be appealed. *See* Ex. 2 at 3 (Docketing Statement). Synergy never petitioned the Business Court or this Court for permission to appeal the Remand Order.

**ARGUMENT**

This Court generally has jurisdiction over two types of appeals: (1) appeals from a final judgment and (2) statutorily authorized appeals of interlocutory orders. *See CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011) ("Unless a statute

3

authorizes an interlocutory appeal, appellate courts generally only have jurisdiction over final judgments."); *Matter of Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021) (same); *Int. of S.B.*, No. 02-22-00287-CV, 2022 WL 4545564, at *1 (Tex. App.—Dallas Sept. 29, 2022, no pet.) (dismissing appeal because the "presiding judge's order is not a final judgment or appealable interlocutory order").[1]

The Remand Order is not a final judgment, nor is there any statutory authorization for an appeal of the Remand Order. Resolving this threshold jurisdictional issue prior to reaching the merits will promote the expediency that the new Business Court system was designed to provide and make efficient use of the parties' and judicial resources. *See, e.g.*, *Dickson v. Am. Gen. Life Ins. Co.*, No. 22-0730, 2024 WL 4094301, at *1 (Tex. Sept. 6, 2024) (Young, J., concurring in denial of petition for review) ("The order of operations is not optional. Resolving the merits and then addressing a justiciability challenge is no better than planning to cook a plate of spaghetti only after eating it."). This appeal should therefore be dismissed.

## 1. The Remand Order is Not a Final Judgment.

"There are two paths for an order to become a final judgment without a trial: the order can (1) dispose of all remaining parties and claims then before the court,

---

[1] A party may also petition the trial court and the Court of Appeals to permit an appeal of an otherwise non-appealable order. *See* Tex. R. Civ. P. 168 ("Permission to Appeal"); Tex. R. App. P. 28.3 ("Permissive Appeals in Civil Cases"). Synergy never did so here, and the 15-day deadline to do so before this Court expired on November 15. *See* Tex. R. App. P. 28.3(c).

Supp. R. 068

regardless of its language; or (2) include unequivocal finality language that expressly disposes of all claims and parties." *Sealy Emergency Room, L.L.C. v. Free Standing Emergency Room Managers of Am., L.L.C.*, 685 S.W.3d 816, 820 (Tex. 2024). Neither path applies here.

Far from "dispos[ing] of all remaining parties and claims then before the court," *id.*, Judge Whitehill "remand[ed] this case to the 191st District Court of Dallas County, Texas." Ex. 1 at 11. That is, the Remand Order does not dispose of *any* claims or *any* parties, it simply changes the forum in which those claims will be resolved. That is not a final judgment.

Though there are no Texas appellate decisions directly establishing that remand orders are interlocutory, it is well established in the federal context that remand orders are interlocutory orders, not final judgments. *See C.D.W. Servs., L.L.C. v. Upper Room Bible Church, Inc.*, No. 24-30203, 2024 WL 4482515, at *1 (5th Cir. May 22, 2024) ("It is well settled that a district court's grant of a motion to remand is interlocutory . . . .")*; Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x 228, 230 (5th Cir. 2014) ("Generally, an order granting a motion to remand is an interlocutory order not usually subject to immediate appeal." (cleaned up)). And where, as here, the Texas rule at issue is modeled on a federal rule, *compare* Tex. R. Civ. P. 355 *with* 28 U.S.C. § 1446(a), Texas courts will look to "federal decisions

5

and authorities interpreting [the federal rule]" as "persuasive authority," *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000).

It is also well established, under Texas law, that an order transferring venue—which, like a remand order, shifts the forum in which claims will be resolved—is interlocutory. *See Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) (describing appeal of a transfer-of-venue order as an "interlocutory appeal[]"); *Ryan Marine Servs., Inc. v. Hoffman*, 668 S.W.3d 171, 178 (Tex. App.—Houston 2023, no pet.) (discussing "jurisdiction to review a trial court's *interlocutory ruling* on a motion to transfer venue" (emphasis added)); *Dorite v. Elliott Elec. Supply, Inc.*, No. 12-00-00311-CV, 2001 WL 1526856, at *1 (Tex. App.—Tyler Nov. 28, 2001, no pet.) ("Since the trial court's order denying Appellants' venue motion did not dispose of Elliot's claim against Appellants, it is interlocutory in nature."). Just as the venue order in *Dorite* failed to dispose of the claims against Appellants, so too did the Remand Order here. That makes it "interlocutory in nature" and not a final judgment. *Id.*

The second path for an order to become a final judgment—by reciting "unequivocal finality language that expressly disposes of all claims and parties"—also does not apply here. *Sealy Emergency Room*, 685 S.W.3d at 820. As above, the Remand Order only states that the action was remanded to the 191st Civil District Court. It contains no language disposing of any claims or parties.

6

Synergy appears to concede that the Remand Order is not a final judgment in its Docketing Statement, but its Docketing Statement is not internally consistent. In Section V of the Docketing Statement, Synergy identifies the "Type of Judgment" as an "Interlocutory Order"—indicating the Remand Order is an interlocutory order, not a final judgment—but then selects "No" when prompted as to whether this is an "[i]nterlocutory appeal of [an] appealable order."

| V. Perfection of Appeal, Judgment and Sentencing |
| --- |
| Nature of Case (Subject matter or type of case): Contract |
| Date Order or Judgment signed: 10/31/2024        Type of Judgment: Interlocutory Order |
| Date Notice of Appeal filed in Trial Court: 11/12/2024 |
|     If mailed to the Trial Court clerk, also give the date mailed: |
| Interlocutory appeal of appealable order:     ☐Yes  ☒No |

Ex. 2 at 3. Further down on that same page, Synergy contradicts itself again. In response to the question, "Judgement or Order disposes of all parties and issues?", Synergy checks the "Yes" box, indicating that the Remand Order *is* a final judgment. But then, in answering the next question, "Appeal from final judgment?", Synergy says "No."

| Judgment or Order disposes of all parties and issues? | ☒ Yes ☐No |
| --- | --- |
| Appeal from final judgment? | ☐ Yes ☒No |

*Id.* Regardless of how Synergy views this appeal, the Remand Order does not satisfy the requirements of a final judgment.

7

## 2. No Statute Authorizes Synergy's Appeal of the Remand Order.

Because the Remand Order is not a final judgment, Synergy must identify a statute authorizing this interlocutory appeal. There is no such statute.

No provision in H.B. 19 authorizes an interlocutory appeal of an order remanding a case from the Business Court. Similarly, Section 51.014 of the Texas Civil Practice and Remedies Code—which provides a long list of interlocutory orders that may be immediately appealed—does not authorize an appeal of the Remand Order.

Nor does Synergy identify any statute authorizing this appeal in its Docketing Statement. After identifying the Remand Order as an "Interlocutory Order," Synergy reverses course and answers "No" in response to whether this is an "Interlocutory appeal of appealable order." Ex. 2 at 3. Answering "Yes" to that question on the form would have required Synergy to "specify [the] statutory or other basis on which [the] interlocutory order is appealable." *Id.*

| V. Perfection of Appeal, Judgment and Sentencing |
| --- |
| Nature of Case (Subject matter or type of case): Contract |
| Date Order or Judgment signed: 10/31/2024        Type of Judgment: Interlocutory Order |
| Date Notice of Appeal filed in Trial Court: 11/12/2024 |
|     If mailed to the Trial Court clerk, also give the date mailed: |
| Interlocutory appeal of appealable order:    ☐ Yes   ☒ No |
|     If yes, please specify statutory or other basis on which interlocutory order is appealable (See TRAP 28): |

Synergy's silence in response to this question is fatal to its appeal.

8

To be sure, had the Texas Legislature wished to make remand orders from the Business Court appealable, it knew how to do so. In the legislative session prior to the one in which H.B. 19 was passed, the 87th Texas Legislature considered (but did not pass) H.B. 1875, a predecessor to H.B. 19. H.B. 1875 contained the following language: "A party may appeal an interlocutory order of the business court that grants or refuses a remand under this subsection to the court of business appeals." Section 1, H.B. 1875, 87th Legislature, Regular Session, 2021, *available at* https://capitol.texas.gov/tlodocs/87R/billtext/pdf/HB01875I.pdf#navpanes=0. No such language is present in H.B. 19.

When the Legislature explicitly considers, and then rejects, statutory language, courts will consider that as evidence of legislative intent. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("[E]very word excluded from a statute must also be presumed to have been excluded for a purpose."). Here, the Texas Legislature's actions manifest a clear intent for interlocutory orders like the Remand Order to be unappealable.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this appeal for lack of jurisdiction.

9

Date: December 11, 2024

Respectfully submitted,

SUSMAN GODFREY L.L.P.

*/s/ Barry Barnett*
Barry Barnett
State Bar No. 01778700
5956 Sherry Lane, Suite 2000
Dallas, Texas 75225
Phone: 214-415-9675
Fax: 713-654-6666
bbarnett@susmangodfrey.com

Ophelia Camiña
State Bar No. 03681500
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Phone: 713-653-7803
Fax: 713-654-6666
ocamina@susmangodfrey.com

Ravi Bhalla (*pro hac vice*)
New York State Bar No. 5748223
One Manhattan West, 50th Floor
New York, NY 10001
Phone: 212-336-8330
Fax: 212-336-8340
rbhalla@susmangodfrey.com

*Counsel for Hinduja Global Solution, Inc. and HGS Healthcare, LLC*

10

## CERTIFICATE OF CONFERENCE

On December 10, 2024, counsel for Appellees conferred with counsel for Appellant regarding the relief sought in this motion, and counsel for Appellant stated that Appellant is opposed to the relief sought.

*/s/ Barry Barnett*
Barry Barnett

## CERTIFICATE OF COMPLIANCE

I certify that this response complies with the typeface requirements and word-count limitations of Rule 9 of the Texas Rules of Appellate Procedure because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes and it contains 1,953 words, including images, in the relevant sections.

*/s/ Barry Barnett*
Barry Barnett

## CERTIFICATE OF SERVICE

I certify that, on December 11, 2024, a true and correct copy of this document was filed with the Court of Appeals and served via electronic service on counsel of record in accordance with the Texas Rules of Appellate Procedure.

*/s/ Barry Barnett*
Barry Barnett

11

# EXHIBIT 1



The Business Court of Texas,
1st Division

SYNERGY GLOBAL
OUTSOURCING, LLC, *Plaintiff*

v.

HINDUJA GLOBAL SOLUTIONS,
INC. and HGS HEALTHCARE, LLC,
*Defendants*

§
§
§
§
§
§
§
§
§

Cause No. 24-BC01B-0007

## OPINION AND ORDER

Before the court is defendants' motion to remand this case.[1] The court grants that motion because plaintiff filed this suit on December 30, 2019, but this court does not have authority over cases filed before September 1, 2024. Act of May 25, 2023, 88th Leg., R.S., ch. 380, §§ 8, 2023 Tex. Sess. Law Serv. 919, 929 (H.B. 19).

---

[1] Although defendants' October 15, 2024, filing is captioned, "HSG Parties' Response to the Court's October 2, 2024[ Order," their conclusion and prayer asks the court to find that the case is not removable and remand it to the district court. Because that response is in substance a motion to remand, the court treats it as such. *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997) (treat pleading's substance over form).

**Supp. R. 077**

## Background

On December 30, 2019, Synergy Global Outsourcing, LLC sued Hinduja Global Solutions, Inc. (HGSI) in the 191st District Court of Dallas County, Texas. Synergy later sued Ali Ganjaei and HGS Healthcare, LLC. All parties were joined before September 1, 2024. This dispute centers on a business development contract dispute. The district court's docket sheet shows seventy-six pages of district and appellate court activity from December 30, 2019, until August 31, 2024.[2]

Plaintiff removed the case to this court on October 1, 2024. Its removal appendix filed two days later contains twenty-five volumes.

On October 3rd, this court requested briefs regarding what effect H.B. 19, § 8 has on this court's authority to hear this case. H.B. 19, § 1's operative sections are codified as Government Code §§ 25A.001-25A.020. GOV'T CODE §§ 25A.001-25A.020.

Twelve days later, defendants moved for remand arguing based on statutory plain text that the removal procedures applicable to business court cases do not apply here because chapter 25A is restricted to actions

---

[2]The district court granted Ganjaei's special appearance, and the court of appeals affirmed.

**Supp. R. 078**

commenced on or after September 1, 2024, thus precluding application to this 2019 case. They also cited two non-party memoranda on the judicial branch's website stating that only actions filed after September 1, 2024, are removable. Finally, they referred to prior instances where the legislature limited statutory amendments to only cases filed after the statute's effective date.

Plaintiff responded with these basic arguments:

> *First,* a plain language reading of H.B. 19, § 8 reveals no prohibition to the removal of cases, only an affirmation of this Court's ability to start adjudicating cases filed on or after September 1, 2024.

> *Second,* in instances where the Legislature seeks to prevent the application of a Statute to actions commenced before the effective date, it has utilized specific language that does not appear in H.B. 19, § 8.

> *Third,* H.B. 19 (including § 8) is a procedural not substantive statute; accordingly, the removal process outlined therein applies to ongoing, pre-September 1, 2024 [sic] cases.

Plaintiff expanded those arguments and urged textual points and referenced nine examples of the legislature including specific language limiting a statute's application to cases filed after the statute's effective date as evidence that § 8, which omits such explicit language, does not prevent removal in this case. According to plaintiff, § 8's purpose is to signal when the court is open and ready to adjudicate cases as opposed to § 9's September

-3-

1, 2023, date for when the court can begin the administrative process of preparing to open for business in 2024.

The court gave the parties an opportunity to respond, which they did.

Defendants reiterated their plain text arguments and addressed plaintiff's argument that § 8 exists to signal when the court may begin accepting cases by arguing it is H.B. 19, §5's statement that the court was created September 1, 2023, that says when the court may begin accepting cases and so, § 8 must mean something different.

Defendants also invoked the Negative Implication Canon (*inclusio unius est exclusio alterius*) to argue that H.B. 19's application to cases filed on or after September 1, 2024, means that the statute including its removal provisions do not apply to earlier filed cases.

Finally, defendants addressed plaintiff's examples of statutes expressly limiting their application to post-effective date cases by referring to two examples where the legislature included language stating that the legislative changes apply to existing cases as negating plaintiff's argument about needing express language to limit a change in law to new cases.

Plaintiff's response reiterated that § 8's plain text omitted words needed to give it the meaning defendants argued for and identified four cases

-4-

defendants cited that, according to plaintiff, support its premise that § 8 needed to include limiting language to limit the court's authority to cases filed on or after September 1, 2024.

Finally, plaintiff urged the court to reject extrinsic materials regarding legislative intent and defendants' policy argument that limiting the court's authority to newly-filed cases makes good sense.

Neither side contends that there are disputed fact issues, and the court does not find any. Nor do the parties contend that H.B. 19 is ambiguous on this issue, and the court does not discern any such ambiguity. Finally, no party requested oral argument.

## Analysis

### A.    Overview

The issue is whether H.B. 19, § 8 restricts the court's authority to act to cases commenced on or after September 1, 2024, as defendants contend, or whether § 8 marks the date when the court can begin accepting cases, as plaintiff contends. For the following reasons, the court concludes that § 8 serves both purposes. Thus, the court lacks authority to hear this 2019 case.

-5-

**B.     Applicable Law**

This is a statutory construction issue, which is a legal question. *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020) (orig. proceeding). The applicable principles are:

> When a statute's language is unambiguous, "we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." "We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." We construe statutes and related provisions as a whole, not in isolation, . . ., and as a general proposition, we are hesitant to conclude that a trial court's jurisdiction is curtailed absent manifestation of legislative intent to that effect, . . ..

*Id.* (citations omitted).

On June 9, 2023, Governor Abbott signed H.B. 19. H.B. 19, § 1 states:

> SECTION 1. Subtitle A, Title 2, Government Code, is amended by adding Chapter 25A to read as follows: . . ..

H.B. 19, § 1. Thereafter, H.B. 19, § 1 adds twenty sections regarding the business court's operation, including §§ 25A.004 and 25A.006 concerning the court's jurisdiction, removal, and remand rules.

Under § 25A.006(f)(1), a party may file an unagreed to removal notice within thirty days after it discovered, or reasonably should have discovered, facts establishing the business court's jurisdiction over the case. Gov't Code, § 25A.006(f)(1). Based on this section, plaintiff contends that its

-6-

removal is timely because it filed its notice within thirty days after September 1, 2024, when the court's jurisdiction became effective.

But H.B. 19 has seven other enabling provisions, including §§ 8 and 9:

SECTION 8.  The changes in the law made by this Act Apply to civil actions commenced on or after September 1, 2024.

SECTION 9.  This Act takes effect September 1, 2023.

Because plaintiff's first and second arguments are related, the court addresses them together.

## C.    H.B.19's plain text is dispositive.

### 1. The Statute's Plain Text

Section 25A.006 permits removal of cases to the business court if the case meets business court jurisdictional requirements. *Id.* § 25A.006((d)-(h). But § 25A.006 does not address whether cases, like this one, filed before September 1, 2024, are removable.  Nor does any other part of chapter 25A. Rather, one must consider H.B. 19 as a whole to resolve that issue.  Sections 8 and 9 provide that resolution.

Section 9 establishes that the statute became effective on September 1, 2023.  That is, § 9 was the start date for ramping up this brand-new court to begin hearing cases.  Based on § 9 alone, Government Code § 25A.006 would appear to allow parties to remove pending cases to this court beginning on

-7-

September 1, 2023. But removals were not practical then because on that date this court had no court space, judges, staff, equipment, supplies, systems, rules, and other things needed to function. So, the legislature provided one-year for the court to become ready to begin accepting cases. H.B. 19, § 8 is that authorizing statute.

However, § 8 does more than set the court's first operational date. If that were all that § 8 does, it would read, "The court may begin accepting cases beginning on September 1, 2024." But that is not what § 8 says.

Rather, § 8 also limits H.B. 19's changes to the law to cases commenced on or after September 1, 2024—a full year after the statute's effective date and the court was created. Section 8's "this Act" in this context means entire H.B. 19, which begins with "An ACT relating to the creation of a specialty trial court to hear certain cases; authorizing fees." *See* H.B. 19, preface. Section 1 thereafter amends the Government Code by "adding" chapter 25A and its twenty sections. *Id.* Since chapter 25A in its entirety is a change in Texas law, it follows that § 25A.006's removal provisions also change Texas law.

This court presumes the legislature wrote § 8 the way it did for a reason and cannot ignore its plain language. *In re Panchakarla*, 602 S.W.3d at 540.

-8-

Nor may it judicially amend the statute. *Id.* Indeed, H.B. 19's plain "text is the alpha and omega of the interpretative process." *Id.* at 540-41 (*quoting BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017)).

Accordingly, this court must construe § 8 as limiting § 25A.006's removal provisions to cases filed on or after September 1, 2024.

### 2. Plaintiff's Arguments

Nonetheless, plaintiff argues that § 8 does not contain the word "only" and shows no affirmative prohibition to removing pre-effective date cases and merely affirms the court's ability to start accepting cases on September 1, 2024. This argument has several deficits.

To begin, that § 8 restricts the court's entire chapter 25A authority to act to cases filed on or after September 1st necessarily restricts all chapter 25A provisions to cases filed on or after that date. So, no specific reference to removals is necessary to preclude removing cases filed before September 1, 2024.

Next, plaintiff cites nine examples of legislative enactments saying that the subject Act applies "only to" cases filed on or after the Act's effective date and stating that a case filed before the Act's effective date is governed by the

-9-

law existing before that date. From there, it argues that (i) those words in those other statutes have meaning and (ii) their absence here means H.B. 19 does not so restrict its procedural application to post-September 1, 2024, filed cases. However, on at least one occasion the legislature included specific language expressly applying a change in law to pending actions:

> SECTION 10. (a) Except as provided in Subsection (b) of this section, the changes in law made by this Act apply to a pending suit affecting the parent-child relationship regardless of whether the suit was filed before, on, or after the effective date of this Act.

Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 10, 2001 Tex. Gen. Laws 2395, 2398 (H.B. 2249). Thus, by plaintiff's reasoning, language of this sort would be necessary for chapter 25A to have retroactive application here. But no such language exists here either.

Finally, stating that the statute's changes in the law apply to cases filed on or after September 1, 2024, implies that the changes in the law—including the removal provisions—do not apply to cases filed before that date. *See City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011) (*inclusio unius est exclusio alterius* applies absent a valid alternative construction); Justice Antonin Scalia and James A. Garner, Reading Law 107-11 (2012) (Negative Implication Canon). Here there is no other valid construction. The legislature

could have written the court "may begin accepting cases on or after September 1, 2024" had that been its intent. But they did not say that, and we cannot rewrite the statute to expand the scope of cases removable to this court. *In re Panchakarla*, 602 S.W.3d at 540.

### 3. Remaining Arguments

Because H.B. 19's plain text is dispositive, the court does not address the parties' remaining arguments.

### Conclusion

Accordingly, the court concludes that H.B. 19's plain text precludes plaintiff's removal and remands this case to the 191st District Court of Dallas County, Texas.

It is so Ordered.

/s/ Bill Whitehill

BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED: October 31, 2024

-11-

# EXHIBIT 2

**Supp. R. 088**

ACCEPTED
15-24-00127-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/22/2024 3:18 PM
CHRISTOPHER A. PRINE
CLERK

| | |
|---|---|
| **Appellate Docket Number:** 15-24-00127-CV | |
| **Appellate Case Style:** Synergy Global Outsourcing, LLC | |
| **Vs.** Hinduja Global Solutions, Inc. and HGS Healthcare, LLC | |
| **Companion Case(s):** DC-19-20539; 24-BC01B-0007 | |

Amended/Corrected Statement ☐

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/22/2024 3:18:06 PM
CHRISTOPHER A. PRINE
Clerk

# DOCKETING STATEMENT (Civil)

Appellate Court:     Select

(to be filed in the court of appeals upon perfection of appeal under TRAP 32)

*NOTE: Because space for additional parties / attorneys is limited on this form, you can include the information on a separate document. As per TRAP 32.1 and 9.4, please include party's name and the name, address, email address, telephone number, fax number, if any, and State Bar Number of the party's lead counsel. If the party is not represented by an attorney, that party's name, address, telephone number, fax number should be provided.*

## I. Appellant

☐ Person  ☒ Organization

Name: Synergy Global Outsourcing, LLC

☐ Pro Se

***If Pro Se Party, enter the following information:***

Address:

City/State/Zip:

Tel.          Ext.          Fax:

Email:

## II. Appellant Attorney(s)

☐ Lead Attorney          Retained Attorney

Name: Michael K. Hurst

Bar No. 10316310

Firm/Agency: Lynn Pinker Hurst & Schwegmann

Address 1: 2100 Ross Avenue, STE 2700

Address 2:

City/State/Zip: Dallas, Texas 75201

Tel. (214) 981-3800   Ext.        Fax: (214) 981-3839

Email: mhurst@lynnllp.com

☐ Lead Attorney          Retained Attorney

Name: Gregory Brassfield

Bar No. 24079900

Firm/Agency: Lynn Pinker Hurst & Schwegmann

Address 1: 2100 Ross Ave, ste 2700

Address 2:

City/State/Zip: Dallas, Texas 75201

Tel. (214) 981-3800   Ext.        Fax: (214) 981-3839

Email: gbrassfield@lynnllp.com

## II. Appellant Attorney(s) - Continued

☐ Lead Attorney          Retained Attorney

Name: Daniela Vera Holmes

Bar No. 24124113

Firm/Agency: Lynn Pinker Hurst & Schwegmann

Address 1: 2100 Ross Ave, ste 2700

Address 2:

City/State/Zip: Dallas, Texas 75201

Tel. (214) 981-3800   Ext.        Fax: (214) 981-3839

Email: dholmes@lynnllp.com

☐ Lead Attorney          Select

Name: Leo Park

Bar No. 24122983

Firm/Agency: Lynn Pinker Hurst & Schwegmann

Address 1: 2100 Ross Avenue, STE 2700

Address 2:

City/State/Zip: Dallas, Texas 75201

Tel. (214) 981-3800   Ext.        Fax: (214) 981-3839

Email: lpark@lynnllp.com

☒ Lead Attorney          Retained Attorney

Name: David S. Coale

Bar No. 00787255

Firm/Agency: Lynn Pinker Hurst & Schwegmann

Address 1: 2100 Ross Ave, ste 2700

Address 2:

City/State/Zip: Dallas, Texas 75201

Tel. (214) 981-3800   Ext.        Fax: (214) 981-3839

Email: dcoale@lynnllp.com

**Supp. R. 089**

| III. Appellee | IV. Appellee Attorney(s) - Continued |
|---|---|
| ☐Person ☒Organization | ☐ Lead Attorney    Retained Attorney |
| Name: Hinduja Global Solutions, Inc. | Name: |
| ☐ Pro Se | Bar No. |
| *If Pro Se Party, enter the following information:* | Firm/Agency:  . |
| Address: | Address 1: |
| City/State/Zip: | Address 2: |
| Tel.        Ext.        Fax: | City/State/Zip: |
| Email: | Tel.        Ext.        Fax: |
| | Email: |

**IV. Appellee Attorney(s)**

**☒ Lead Attorney**    Retained Attorney

Name: Barry Barnett

Bar No. 01778700

Firm/Agency: SUSMAN GODFREY L.L.P.

Address 1: 5956 Sherry Lane, Suite 2000

Address 2:

City/State/Zip: Dallas, Texas 75225

Tel. (866) 754-1900    Ext.        Fax: (713) 654-6666

Email: bbarnett@susmangodfrey.com

**☐ Lead Attorney**    Retained Attorney

Name: Ophelia Camina

Bar No. 03681500

Firm/Agency: SUSMAN GODFREY L.L.P.

Address 1: 1000 Louisiana Street, Suite 5100

Address 2:

City/State/Zip: Houston, Texas 77002

Tel. (713) 653-7803    Ext.        Fax: (713) 654-6666

Email: ocamina@susmangodfrey.com

**☐ Lead Attorney**    Select

Name:

Bar No.

Firm/Agency:

Address 1:

Address 2:

City/State/Zip:

Tel.        Ext.        Fax:

Email:

**☐ Lead Attorney**    Select

Name:

Bar No.

Firm/Agency:

Address 1:

Address 2:

City/State/Zip:

Tel.        Ext.        Fax:

Email:

**Supp. R. 090**

## V. Perfection of Appeal, Judgment and Sentencing

Nature of Case (Subject matter or type of case):  Contract

Date Order or Judgment signed: 10/31/2024          Type of Judgment: Interlocutory Order

Date Notice of Appeal filed in Trial Court: 11/12/2024

    If mailed to the Trial Court clerk, also give the date mailed:

Interlocutory appeal of appealable order:     ☐ Yes     ☒ No

    If yes, please specify statutory or other basis on which interlocutory order is appealable (See TRAP 28):

---

Accelerated Appeal (See TRAP 28):     ☐ Yes     ☒ No

    If yes, please specify statutory or other basis on which appeal is accelerated:

---

Parental Termination or Child Protection? (See TRAP 28.4):     ☐ Yes     ☒ No

Permissive? (See TRAP 28.3):     ☐ Yes     ☒ No

    If yes, please specify statutory or other basis for such status:

---

Agreed? (See TRAP 28.2):     ☐ Yes     ☒ No

    If yes, please specify statutory or other basis for such status:

---

Appeal should receive precedence, preference, or priority under statute or rule?     ☐ Yes     ☒ No

    If yes, please specify statutory or other basis for such status:

---

Does this case involve an amount under $100,000?                                     ☐ Yes     ☒ No

Judgment or Order disposes of all parties and issues?                               ☒ Yes     ☐ No

Appeal from final judgment?                                                         ☐ Yes     ☒ No

Does the appeal involve the constitutionality or the validity of a statute, rule, or ordinance?     ☐ Yes     ☒ No

If yes, you must also complete and file the Challenge to Constitutionality of a State Statute form.

Is the Attorney General a party?                                                    ☐ Yes     ☑ No

## VI. Actions Extending Time to Perfect Appeal

Motion for New Trial:     ☐ Yes     ☒ No     If yes, date filed:

Motion to Modify Judgment:     ☐ Yes     ☒ No     If yes, date filed:

Request for Findings of Fact and Conclusions of Law:

    ☐ Yes     ☒ No     If yes, date filed:

Motion to Reinstate:     ☐ Yes     ☒ No     If yes, date filed:

Motion under TRCP 306a:     ☐ Yes     ☒ No     If yes, date filed:

Other:     ☐ Yes     ☒ No

If Other, please specify:

**Supp. R. 091**

## VII. Indigency of Party (Attach file stamped copy of Statement and copy of the trial court order.)

Was Statement of Inability to Pay Court Costs filed in the trial court? ☐ Yes ☒ No

    If yes, date filed:

Was a Motion Challenging the Statement filed in the trial court? ☐ Yes ☒ No

    If yes, date filed:

Was there any hearing on appellant's ability to afford court costs? ☐ Yes ☒ No

    Hearing Date:

Did trial court sign an order under Texas Rule of Civil Procedure 145? ☐ Yes ☒ No

    Date of Order:

    If yes, trial court finding: ☐ Challenge Sustained ☐ Overruled

## VIII. Bankruptcy

Has any party to the court's judgment filed for protection in bankruptcy which might affect this appeal?

    ☐ Yes ☒ No

    If yes, please attach a copy of the petition.

    Date bankruptcy filed:

    Bankruptcy Case Number:

## IX. Trial Court and Record

| | |
|---|---|
| Court: Business Court Division 1B | **Clerk's Record** x TX Business Court, 1st Division |
| County: Dallas County | Trial Court Clerk: ☐ District ☐ County |
| Trial Court Docket No. (Cause No.): 24-BC01B-0007 | Was Clerk's record requested? ☑ Yes ☐ No |
| Trial Court Judge (who tried or disposed of the case): |   If yes, date requested: 11/12/2024 |
|   Name: Judge Bill Whitehill |   If no, date it will be requested: |
|   Address 1: 205 West 14th Street STE 600 | Were payment arrangements made with clerk? |
|   Address 2: |   ☐ Yes ☑ No ☐ Indigent |
|   City/State/Zip: Austin, Texas 78701 | **(Note: No request required under TRAP 34.5(a),(b).)** |
|   Tel. (512) 463-1625 Ext. Fax: | |
|   Email: BCDivision1B@txcourts.gov | |

**Supp. R. 092**

## IX.  Trial Court and Record - Continued

**Reporter's or Recorder's Record**

Is there a Reporter's Record?   ☐ Yes  ☒ No

Was Reporter's Record requested?   ☐ Yes  ☒ No

     If yes, date requested:

     If no, date it will be requested:

Was the Reporter's Record electronically recorded?  ☐ Yes  ☒ No

Were payment arrangements made with the court reporter/court recorder?  ☐ Yes  ☒ No  ☐ Indigent

| | |
|---|---|
| ☐ Court Reporter    ☐ Court Recorder<br>☐ Official    ☐ Substitute | ☐ Court Reporter    ☐ Court Recorder<br>☐ Official    ☐ Substitute |
| Name: | Name: |
| Address 1: | Address 1: |
| Address 2: | Address 2: |
| City/State/Zip: | City/State/Zip: |
| Tel.          Ext.          Fax: | Tel.          Ext.          Fax: |
| Email: | Email: |

## X. Supersedeas Bond

Supersedeas bond filed?  ☐ Yes  ☒ No

     If yes, date filed:

     If no, will file?  ☐ Yes  ☒ No

## XI.  Extraordinary Relief

Will you request extraordinary relief (e.g., temporary or ancillary relief) from this Court?  ☐ Yes  ☒ No

     If yes, briefly state the basis for your request:

**Supp. R. 093**

**XII. Alternative Dispute Resolution/Mediation**
   **(Complete section if filing in the 1st, 2nd, 4th, 5th, 6th, 8th, 10th, 11th, 13th, or 14th Court of Appeals.)**

Should this appeal be referred to mediation? ☐ Yes ☐ No

    If no, please specify:

Has this case been through an ADR procedure? ☐ Yes ☐ No

    If yes, who was the mediator?

    What type of ADR procedure?

    At what stage did the case go through ADR? ☐ Pre-Trial ☐ Post-Trial ☐ Other

      If other, please specify:

Type of Case? Contract

    Give a brief description of the issue to be raised on appeal, the relief sought, and the applicable standard for review, if known (without prejudice to the right to raise additional issues or request additional relief):

How was the case disposed of?

Summary of relief granted, including amount of money judgment, and if any, damages awarded.

    If money judgment, what was the amount? Actual damages:

    Punitive (or similar) damages:

    Attorney's fees (trial):

    Attorney's fees (appellate):

    Other:

      If other, please specify:

Will you challenge this Court's jurisdiction? ☐ Yes ☐ No

Does judgment have language that one or more parties "take nothing"? ☐ Yes ☐ No

Does judgment have a Mother Hubbard clause? ☐ Yes ☐ No

Other basis for finality:

**Supp. R. 094**

## XII. Alternative Dispute Resolution/Mediation - Continued
### (Complete section if filing in the 1st, 2nd, 4th, 5th, 6th, 8th, 10th, 11th, 13th, or 14th Court of Appeals.)

Rate the complexity of the case (use 1 for least and 5 for most complex): ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5

Please make my answer to the preceding questions known to other parties in this case? ☐ Yes ☐ No

Can the parties agree on an appellate mediator? ☐ Yes ☐ No

If yes, please give the name, address, telephone, fax, and email address:

Name:

Address:

Telephone: Ext.

Fax:

Email:

Languages other than English in which the mediator should be proficient:

Name of the person filling out mediation section of docketing statement:

## XIII. Related Matters

List any pending or past related appeals before this, or any other Texas Appellate Court, by Court, Docket, and Style.

Court: Select Appellate Court          Docket:

Style:

  Vs.

Court: Select Appellate Court          Docket:

Style:

  Vs.

Court: Select Appellate Court          Docket:

Style:

  Vs.

Court: Select Appellate Court          Docket:

Style:

  Vs.

Court: Select Appellate Court          Docket:

Style:

  Vs.

Court: Select Appellate Court          Docket:

Style:

  Vs.

**Supp. R. 095**

| XIV. Pro Bono Program: |
| :--- |
| **(Complete section if filing in the 1st, 2nd, 3rd, 5th, 7th, 13th or 14th Court of Appeals.)** |

The Courts of Appeals listed above, in conjunction with the State Bar of Texas Appellate Section Pro Bono Committee and local Bar Associations, are conducting a program to place a limited number of civil appeals with appellate counsel who will represent the appellant in the appeal before this Court.

The Pro Bono Committee is solely responsible for screening and selecting the civil cases for inclusion in the Program based upon a number of discretionary criteria, including the financial means of the appellant or appellee. If a case is selected by the Committee, and can be matched with appellate counsel, that counsel will take over representation of the appellant or appellee without charging legal fees. More information regarding this program can be found in the Pro Bono Program Pamphlet available in paper form at the Clerk's Office or on the Internet at http://www.tex-app.org. If your case is selected and matched with a volunteer lawyer, you will receive a letter from the Pro Bono Committee within thirty (30) to forty-five (45) days after submitting this Docketing Statement.

Note: there is no guarantee that if you submit your case for possible inclusion in the Pro Bono Program, the Pro Bono Committee will select your case and that pro bono counsel can be found to represent you. Accordingly, you should not forego seeking other counsel to represent you in this proceeding. By signing your name below, you are authorizing the Pro Bono committee to transmit publicly available facts and information about your case, including parties and background, through selected Internet sites and Listserv to its pool of volunteer appellate attorneys.

Do you want this case to be considered for inclusion in the Pro Bono Program? ☐ Yes ☐ No

Do you authorize the Pro Bono Committee to contact your trial counsel of record in this matter to answer questions the committee may have regarding the appeal? ☐ Yes ☐ No

Please note that any such conversations would be maintained as confidential by the Pro Bono Committee and the information used solely for the purposes of considering the case for inclusion in the Pro Bono Program.

If you have not previously filed a Statement of Inability to Pay Court Costs and attached a file-stamped copy of that Statement, does your income exceed 200% of the U.S. Department of Health and Human Services Federal Poverty Guidelines? ☐ Yes ☐ No

These guidelines can be found in the Pro Bono Program Pamphlet as well as on the internet at http://aspe.hhs.gov/poverty/06poverty.shtml.

Are you willing to disclose your financial circumstances to the Pro Bono Committee? ☐ Yes ☐ No

If yes, please attach a Statement of Inability to Pay Court Costs completed and executed by the appellant or appellee. Sample forms may be found in the Clerk's Office or on the internet at http://www.tex-app.org. Your participation in the Pro Bono Program may be conditioned upon your execution of a Statement under oath as to your financial circumstances.

Give a brief description of the issues to be raised on appeal, the relief sought, and the applicable standard of review, if known (without prejudice to the right to raise additional issues or request additional relief; use a separate attachment, if necessary).

**Supp. R. 096**

## XV. Fifteenth Court of Appeals Jurisdiction

Effective September 1, 2024, certain cases filed with this court must be transferred to the new Fifteenth Court of Appeals (See SB 1045, 88th Legislature, Regular Session). To assist the court in the orderly transfer of cases, please complete the following information.

Does this appeal involve a matter brought by or against the state or a board, commission, department, office, or other agency in the executive branch of the state government, including a university system or institution of higher education as defined by Section 61.003, Education Code, or by or against an officer or employee of the state or a board, commission, department, office, or other agency in the executive branch of the state government arising out of that officer's or employee's official conduct? ☐ Yes ☑ No

If the answer is yes, does this appeal involve:

☐ a proceeding brought under the Family Code and any related motion or proceeding;

☐ a proceeding brought under Chapter 7B or Article 17.292, Code of Criminal Procedure;

☐ a proceeding against a district attorney, criminal district attorney, or county attorney with criminal jurisdiction;

☐ a proceeding relating to a mental health commitment;

☐ a proceeding relating to civil asset forfeiture;

☐ a condemnation proceeding for the acquisition of land or a proceeding related to eminent domain;

☐ a proceeding brought under Chapter 101, Civil Practice and Remedies Code;

☐ a claim of personal injury or wrongful death;

☐ a proceeding brought under Chapter 125, Civil Practice and Remedies Code, to enjoin a common nuisance;

☐ a proceeding brought under Chapter 55, Code of Criminal Procedure;

☐ a proceeding under Chapter 22A, Government Code;

☐ a proceeding brought under Subchapter E-1, Chapter 411, Government Code;

☐ a removal action under Chapter 87, Local Government Code; or

☐ a proceeding brought under Chapter 841, Health and Safety Code.

**Supp. R. 097**

## XVI. Signature

| | |
|---|---|
| *Michael K. Hurst* | 11/22/2024 |
| Signature of counsel (or Pro Se Party) | Date |
| Michael K. Hurst | 10316310 |
| Printed Name | State Bar No. |
| /s/ Michael K. Hurst | Michael Hurst |
| Electronic Signature (Optional) | Name |

## XVII  Certificate of Service

The undersigned counsel certifies that this Docketing Statement has been served on the following lead counsel for all parties to the Trial Court's Order or Judgment as follows on:

| | |
|---|---|
| *Michael K. Hurst* | /s/ Michael K. Hurst |
| Signature of counsel (or Pro Se Party) | Electronic Signature (Optional) |
| 10316310 | |
| State Bar No. | |

Certificate of Service Requirements (TRAP 9.5(e)): A certificate of service must be signed by the person who made the service and must state:

      (1)  the date and manner of service;

      (2)  the name and address of each person served, and

      (3)  if the person served is a party's attorney, the name of the party represented by the attorney.

**Supp. R. 098**

| **Please enter the following for each person served:** | |
|---|---|
| Date Served: 11/22/2024 | Date Served: |
| Manner Served: eServe | Manner Served: Select |
| Name: Barry Barnett | Name: |
| Bar No. 01778700 | Bar No. |
| Firm/Agency: SUSMAN GODFREY L.L.P. | Firm/Agency: |
| Address 1: 5956 Sherry Lane, Suite 2000 | Address 1: |
| Address 2: | Address 2: |
| City/State/Zip: Dallas, Texas 75201 | City/State/Zip: |
| Tel. (866) 754-1900   Ext.      Fax: (713) 654-6666 | Tel.      Ext.      Fax: |
| Email: bbarnett@susmangodfrey.com | Email: |
| Party: Defendant | Party: |
| Date Served: 11/22/2024 | Date Served: |
| Manner Served: eServe | Manner Served: Select |
| Name: Ophelia Camina | Name: |
| Bar No. 03681500 | Bar No. |
| Firm/Agency: SUSMAN GODFREY L.L.P. | Firm/Agency: |
| Address 1: 1000 Louisiana Street, Suite 5100 | Address 1: |
| Address 2: | Address 2: |
| City/State/Zip: Houston, Texas 77002 | City/State/Zip: |
| Tel. (713) 653-7803   Ext.      Fax: (713) 654-6666 | Tel.      Ext.      Fax: |
| Email: ocamina@susmangodfrey.com | Email: |
| Party: Defendant | Party: |
| Date Served: | |
| Manner Served: Select | |
| Name: | |
| Bar No. | |
| Firm/Agency: | |
| Address 1: | |
| Address 2: | |
| City/State/Zip: | |
| Tel.      Ext.      Fax: | |
| Email: | |
| Party: | |

**Supp. R. 099**

| **Please enter the following for each person served that is not an attorney for a party:** | |
|---|---|
| Date Served: | Date Served: |
| Manner Served: Select | Manner Served: Select |
| Name: | Name: |
| Address 1: | Address 1: |
| Address 2: | Address 2: |
| City/State/Zip: | City/State/Zip: |
| Tel.                    Ext. | Tel.                    Ext. |
| Fax: | Fax: |
| Email: | Email: |
| Date Served: | Date Served: |
| Manner Served: Select | Manner Served: Select |
| Name: | Name: |
| Address 1: | Address 1: |
| Address 2: | Address 2: |
| City/State/Zip: | City/State/Zip: |
| Tel.                    Ext. | Tel.                    Ext. |
| Fax: | Fax: |
| Email: | Email: |
| Date Served: | Date Served: |
| Manner Served: Select | Manner Served: Select |
| Name: | Name: |
| Address 1: | Address 1: |
| Address 2: | Address 2: |
| City/State/Zip: | City/State/Zip: |
| Tel.                    Ext. | Tel.                    Ext. |
| Fax: | Fax: |
| Email: | Email: |

**Supp. R. 100**

**Docketing Statement Addendum**
**Party / Attorney**

*To add additional parties / attorneys, copy and paste sections below as needed. For those fields listing multiple options, select one and delete the rest.*

| Appellate Case No. | 15-24-00127-CV |
|---|---|
| **Appellate Case Style**: | *Synergy Global Outsourcing, LLC v. Hinduja Global Solutions, Inc. and HGS Healthcare, LLC, et al.* |

<u>*Party –*</u> *This is Appellee, not an additional party. There was not enough room on the first page of the docketing statement for the full name.*

Party is: [Appellant, **Appellee**, Other, etc.]
　　　　[ **Y**/N ] Organization　　[ Y/**N** ] Person]
Name: HGS Healthcare, LLC
*If Party is Pro Se, enter the following information:*
Address:
Telephone:
Fax Number:
Email:

| <u>*Additional Attorney for Appellee HGS Healthcare, LLC*</u> | |
|---|---|
| Lead Attorney: **YES** / <u>NO</u> | |
| Name:　　　　Barry Barnett | Ophelia Camina |
| Bar No.　　　01778700 | 03681500 |
| Firm/Agency:　Susman Godfrey.L.P. | Susman Godfrey, LLP |
| Address:　　956 Sherry Lane, Suite | 1000 Louisiana Street, |
| 2000City/State/Zip: Dallas, Texas 75225 | Houston, Texas 77002 |
| Telephone:　　866-754-1900 | 713-653-7803 |
| Fax:　　　　713-654-6666 | 713-654-6666 |
| Email:　　　bbarnett@susmangodfrey.com | <u>ocamina@susmangodfrey.com</u> |
| Party:　　　Appellee | Appellee |

**Supp. R. 101**

**ADDITIONAL ATTORNEY SERVED FOR**
**APPELLEE HGS HEALTHCARE, LLC**

| | | |
|---|---|---|
| Date Served: | November 22, 2024 | November 22, 2024 |
| Manner: | eService | eService |
| Name: | Barry Barnett | Ophelia Camina |
| Bar No. | 01778700 | 03681500 |
| Firm/Agency: | Susman Godfrey LLP. | Susman Godfrey, LLP |
| Address: | 5956 Sherry Lane, ste 2000 | 1000 Louisiana Street, |
| City/State/Zip: | Dallas, Texas 75225 | Houston, Texas 77002 |
| Telephone: | 713-221-3760 | 713-653-7803 |
| Fax: | 713-654-6666 | 713-654-6666 |
| Email: | bbarnett@susmangodfrey.com | ocamina@susmangodfrey.com |
| Party: | Appellee | Appellee |

**Supp. R. 102**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ronni Bracken on behalf of Michael K. Hurst
Bar No. 10316310
rbracken@lynnllp.com
Envelope ID: 94628721
Filing Code Description: Docketing Statement
Filing Description: Docketing Statement - Synergy
Status as of 11/22/2024 3:27 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David S.Coale | | dcoale@lynnllp.com | 11/22/2024 3:18:06 PM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 11/22/2024 3:18:06 PM | SENT |
| Kay Ridenour | | kridenour@lynnllp.com | 11/22/2024 3:18:06 PM | SENT |
| Tonia Ashworth | | tashworth@lynnllp.com | 11/22/2024 3:18:06 PM | SENT |
| Barry Barnett | 1778700 | bbarnett@susmangodfrey.com | 11/22/2024 3:18:06 PM | SENT |
| Leo Park | 24122983 | LPark@lynnllp.com | 11/22/2024 3:18:06 PM | SENT |
| Ophelia Camina | 3681500 | ocamina@susmangodfrey.com | 11/22/2024 3:18:06 PM | SENT |
| Maria Gonzalez | | mgonzalez@lynnllp.com | 11/22/2024 3:18:06 PM | SENT |
| Greg Brassfield | | gbrassfield@lynnllp.com | 11/22/2024 3:18:06 PM | SENT |
| Gina Flores | | gflores@lynnllp.com | 11/22/2024 3:18:06 PM | SENT |
| Ronni Bracken | | rbracken@lynnllp.com | 11/22/2024 3:18:06 PM | SENT |
| Daniela VeraHolmes | | dholmes@lynnllp.com | 11/22/2024 3:18:06 PM | SENT |

**Supp. R. 103**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Joyce Ingram on behalf of Barry Barnett
Bar No. 1778700
jingram@susmangodfrey.com
Envelope ID: 95217061
Filing Code Description: Motion
Filing Description: Appellees' Motion to Dismiss Appeal for Lack of Jurisdiction
Status as of 12/11/2024 4:54 PM CST

Associated Case Party: Synergy Global Outsourcing, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David S.Coale | | dcoale@lynnllp.com | 12/11/2024 4:14:00 PM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 12/11/2024 4:14:00 PM | SENT |
| Kay Ridenour | | kridenour@lynnllp.com | 12/11/2024 4:14:00 PM | SENT |
| Tonia Ashworth | | tashworth@lynnllp.com | 12/11/2024 4:14:00 PM | SENT |
| Leo Park | 24122983 | LPark@lynnllp.com | 12/11/2024 4:14:00 PM | SENT |
| Maria Gonzalez | | mgonzalez@lynnllp.com | 12/11/2024 4:14:00 PM | SENT |
| Greg Brassfield | | gbrassfield@lynnllp.com | 12/11/2024 4:14:00 PM | SENT |
| Gina Flores | | gflores@lynnllp.com | 12/11/2024 4:14:00 PM | SENT |
| Ronni Bracken | | rbracken@lynnllp.com | 12/11/2024 4:14:00 PM | SENT |
| Daniela VeraHolmes | | dholmes@lynnllp.com | 12/11/2024 4:14:00 PM | SENT |

Associated Case Party: Hinduja Global Solutions, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barry Barnett | 1778700 | bbarnett@susmangodfrey.com | 12/11/2024 4:14:00 PM | SENT |
| Ophelia Camina | 3681500 | ocamina@susmangodfrey.com | 12/11/2024 4:14:00 PM | SENT |

Associated Case Party: HGS Healthcare, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barry Barnett | 1778700 | bbarnett@susmangodfrey.com | 12/11/2024 4:14:00 PM | SENT |
| Ophelia Camina | 3681500 | ocamina@susmangodfrey.com | 12/11/2024 4:14:00 PM | SENT |

**Supp. R. 104**

ACCEPTED
15-24-00127-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/6/2025 12:00 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00127-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/4/2025 4:26:01 AM
CHRISTOPHER A. PRINE
Clerk

In the Court of Appeals
for the Fifteenth District of Texas

**Synergy Global Outsourcing, LLC,**

Appellant,

**v.**

**Hinduja Global Solutions, Inc. and HGS Healthcare, LLC,**

Appellees.

On Appeal from the First Business Court Division,
Dallas County, Texas, No. 24-BC01B-0007

**Appellant's Response to
Appellees' Motion to Dismiss**

Michael K. Hurst
  mhurst@lynnllp.com
  State Bar No. 10316310
David S. Coale
  dcoale@lynnllp.com
  State Bar No. 00787255
Greg Brassfield
  gbrassfield@lynnllp.com
  State Bar No. 24079900

**Lynn Pinker Hurst &
  Schwegmann, LLP**
2100 Ross Avenue
Suite 2700
Dallas, TX 75201
Telephone - (214) 981-3800
Facsimile - (214) 981-3839

*Attorneys for Appellant*

**Supp. R. 105**

# Table of Contents

Table of Contents ............................................................... 2

Introduction.................................................................3

Argument.................................................................3

    1.    Federal appellate review of remand orders is not relevant to this Court's jurisdiction over the order in this case. ............... 4

    2.    Statutes and rules about venue transfers are not relevant to this Court's jurisdiction over the order in this case. ....................5

    3.    The remand order is appealable because it is a final resolution of business court jurisdiction. .................................... 6

    4.    The issue of appellate jurisdiction is moot, in light of Appellants' filing of a mandamus petition about the remand order. .........................................................................7

Certificate of Compliance ......................................................... 9

Certificate of Service............................................................. 9

**Supp. R. 106**

**Introduction**

This case is an appeal from an order that remanded a case from business court to district court. This kind of remand order was unknown to Texas law before September 2024. Appellees rely entirely on authority about other forum-related orders, governed by their own specialized statutes that determine whether those orders are appealable.

This appeal brings none of that baggage. The remand order ended the proceeding before the business court with a finding that the business court lacked jurisdiction over it. It was a final resolution of that jurisdiction issue as to all parties and claims. As such, the order is appealable.

Also, with this response, Appellant has filed a petition for a writ of mandamus that should eliminate any doubt that this Court has the jurisdiction to review this remand order.

Appellees' motion should be denied.

**Argument**

For three related reasons, the motion to dismiss lacks merit: (1) federal remand orders are irrelevant to this issue of Texas procedure; (1) statutes and rules about venue transfers do not apply to the wholly new topic of a business-court remand order; (3) while no precedent addresses the issue, general principles show that a business-court remand order is final for purposes of appellate review; and (3) this entire issue is moot because Appellant has filed a mandamus petition that seeks review of the remand

3

order, and between that petition and this direct appeal, all conceivable objections to appellate jurisdiction have been removed.

**1. Federal appellate review of remand orders is not relevant to this Court's jurisdiction over the order in this case.**

If a federal district court remands on a ground listed in 28 U.S.C. § 1447(c), then by statute, that remand order is not reviewable "by appeal or otherwise."[1] Texas has no similar statute that limits appellate review of a business-court remand order. Therefore, this body of federal law is unhelpful in determining this Court's jurisdiction over such an order.

Beyond the scope of that statutory bar, the U.S. Supreme Court and U.S. Court of Appeals for the Fifth Circuit readily exercise appellate review of remand orders—by mandamus, in the case of a ground not listed in section 1447(c),[2] and by direct appeal, if the remand resulted from the exercise of abstention.[3] To the extent federal law has anything to offer about this Court's jurisdiction, it is the general principle that remand orders are reviewable when the statutory bar does not apply.

---

[1] *See* 28 U.S.C.A. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.").

[2] *See Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 346 (1976).

[3] *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711–12 (1996); *Firefighters' Ret. Sys. v. Citco Group Ltd.,* 796 F.3d 520 (5th Cir. 2015).

4

**2.**     **Statutes and rules about venue transfers are not relevant to this Court's jurisdiction over the order in this case.**

Texas has an intricate set of statutes[4] and court rules[5] that address the topic of venue transfers—the transfer of an action among courts that have jurisdiction over the subject matter. Those include statutory provisions and a procedural rule about venue transfers involving the business courts.[6]

The statute creating the business court also introduces a wholly new concept into Texas law—the idea of a removal to, and a remand from, the business courts and traditional district/county courts.[7] Unlike venue transfers, which involve the movement of a case among sister courts that all have subject-matter jurisdiction, removal and remand are defined by the business court's exclusive jurisdiction.

That distinction is shown in several places in Government Code Chapter 25A. The right of removal accrues to a party in an action "within the jurisdiction of the business court ...."[8] The corresponding power to remand is also defined in terms of jurisdiction: "If the business court does not have jurisdiction of the action, the business court shall remand the

---

[4] *See* Tex. Civ. Prac. & Rem. Code § 15.001 *et seq.*
[5] *See* Tex. R. Civ. P. 86 *et seq.*
[6] Tex. Gov't Code § 25A.006(b)(1), (c)(1), (k); Tex. R. Civ. P. 356 ("Action Transferred to the Business Court").
[7] Tex. Gov't Code § 25A.006(d); Tex. R. Civ. P. 355 ("Action Removed to Business Court").
[8] Tex. Gov't Code § 25A.006((d), first sentence.

5

action to the court in which it was originally filed."[9] Like any other subject-matter jurisdiction concept, the statute expressly exempts removal from Texas's "due order of pleading" rule[10]—specifically including venue: "Removal of a case does not waive a defect in venue ...."[11]

In this regard, Appellees make much of Appellant's selection, in preparing the Docketing Statement for this matter, of "interlocutory order" from a drop-down menu rather than "dismissal" (the option immediately above it.) That was a mistake, and Appellant has corrected it in an amended docketing statement.

The Legislature could have treated the interaction between business courts and traditional district/county courts by adding yet another cog to the machinery of the Texas venue laws. It didn't, choosing instead to define that interaction as a question of jurisdiction. As a result, statutes about the appealability of venue-transfer orders simply don't apply.

### 3. The remand order is appealable because it is a final resolution of business court jurisdiction.

What does apply, then? The longstanding rule that "if the court grants [a] plea to the jurisdiction ..., the plaintiff may take an appeal once that judgment becomes final."[12] The remand order, like a case-dispositive plea to

---

[9] Tex. Gov't Code § 25A.006((d), second sentence.
[10] Tex. Gov't Code § 25A.006(i).
[11] Tex. Gov't Code § 25A.006(j).
[12] *E.g.*, *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

6

the jurisdiction, ruled that all parties and claims in this dispute are outside of business-court jurisdiction.

The Legislature is conclusively presumed to know the consequences of its actions.[13] When the Legislature chose to treat the interaction between business courts and traditional district/county courts as a jurisdictional matter, it necessarily consented to the application of that general rule about appealability. Had the Legislature meant to do otherwise, it would have expressly limited this Court's appellate jurisdiction in the same way that it has done for venue rulings. It did not do so.

**4.     The issue of appellate jurisdiction is moot, in light of Appellants' filing of a mandamus petition about the remand order.**

In any event, all of Appellees' arguments for dismissal are reasons why a direct appeal is not available. The Texas Supreme Court has repeatedly reviewed issues about the proper forum for a case via mandamus proceedings.[14] This case is certainly suitable for such review if the Court

---

[13] *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it." (citing *McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125, 128 (Tex. Comm'n App. 1942, opinion adopted)).

[14] *See, e.g.*, *In re AIU Ins. Co.*, 148 S.W.3d 109, 115 (Tex. 2004) (enforcing a forum selection clause through mandamus to prevent parties from being forced to litigate in a forum other than the one they contractually agreed upon, which could result in significant time and expense that cannot be remedied on appeal); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding) (recognizing that mandamus relief is appropriate to enforce a contractual jury-trial waiver, as improperly making a party have a jury trial would waste of resources and time that cannot be adequately remedied on appeal).

7

concludes that direct appeal is improper. In light of this filing, the Court may deny the motion as moot at the present time, and consolidate it for resolution along with the appeal and related mandamus proceeding.

## Conclusion

Appellees' Motion to Dismiss should be denied.

Respectfully submitted,

/s/ David S. Coale
Michael K. Hurst
  mhurst@lynnllp.com
  State Bar No. 10316310
David S. Coale
  dcoale@lynnllp.com
  State Bar No. 00787255
Greg Brassfield
  gbrassfield@lynnllp.com
  State Bar No. 24079900
**Lynn Pinker Hurst & Schwegmann LLP**
2100 Ross Suite 2700
Dallas, TX 75201
214-292-3601

*Attorneys for Appellant*

8

**Certificate of Compliance**

I certify that this response complies with the typeface requirements of Tex. R. App. P. 9 because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9 because it contains 1,323 words in the relevant sections.

January 3, 2025

*/s/ David Coale*

**Certificate of Service**

I certify that on January 3, 2025, a true and correct copy of the foregoing response has been delivered to all counsel of record via this Court's electronic system for filing and service.

*/s/ David Coale*

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Coale on behalf of David Coale
Bar No. 787255
dcoale@lynnllp.com
Envelope ID: 95856245
Filing Code Description: Response
Filing Description: Appellant's Response to Appellees' Motion to Dismiss
Status as of 1/6/2025 7:23 AM CST

Associated Case Party: Synergy Global Outsourcing, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David S.Coale | | dcoale@lynnllp.com | 1/4/2025 4:26:01 AM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 1/4/2025 4:26:01 AM | SENT |
| Kay Ridenour | | kridenour@lynnllp.com | 1/4/2025 4:26:01 AM | SENT |
| Tonia Ashworth | | tashworth@lynnllp.com | 1/4/2025 4:26:01 AM | SENT |
| Greg Brassfield | | gbrassfield@lynnllp.com | 1/4/2025 4:26:01 AM | SENT |
| Leo Park | 24122983 | LPark@lynnllp.com | 1/4/2025 4:26:01 AM | SENT |
| Gina Flores | | gflores@lynnllp.com | 1/4/2025 4:26:01 AM | SENT |
| Ronni Bracken | | rbracken@lynnllp.com | 1/4/2025 4:26:01 AM | SENT |
| Daniela VeraHolmes | | dholmes@lynnllp.com | 1/4/2025 4:26:01 AM | SENT |
| Maria Gonzalez | | mgonzalez@lynnllp.com | 1/4/2025 4:26:01 AM | SENT |

Associated Case Party: Hinduja Global Solutions, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ophelia Camina | 3681500 | ocamina@susmangodfrey.com | 1/4/2025 4:26:01 AM | SENT |
| Barry Barnett | 1778700 | bbarnett@susmangodfrey.com | 1/4/2025 4:26:01 AM | SENT |

Associated Case Party: HGS Healthcare, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barry Barnett | 1778700 | bbarnett@susmangodfrey.com | 1/4/2025 4:26:01 AM | SENT |
| Ophelia Camina | 3681500 | ocamina@susmangodfrey.com | 1/4/2025 4:26:01 AM | SENT |

AN ACT

relating to the creation of a specialty trial court to hear certain cases; authorizing fees.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subtitle A, Title 2, Government Code, is amended by adding Chapter 25A to read as follows:

CHAPTER 25A. BUSINESS COURT

Sec. 25A.001. DEFINITIONS. In this chapter:

(1) "Controlling person" means a person who directly or indirectly controls a governing person, officer, or organization.

(2) "Derivative proceeding" means a civil action brought in the right of a domestic or foreign corporation, a domestic or foreign limited liability company, or a domestic or foreign limited partnership, to the extent provided by the Business Organizations Code.

(3) "Governing documents" means the instruments, documents, or agreements adopted under an organization's governing law to govern the organization's formation and internal affairs. The term includes:

(A) a certificate of formation, articles of incorporation, and articles of organization;

(B) bylaws;

(C) a partnership agreement;

1

Copy from re:SearchTX

(D) a company agreement or operating agreement;

(E) a shareholder agreement;

(F) a voting agreement or voting trust agreement; and

(G) an agreement among owners restricting the transfer of ownership interests.

(4) "Governing law" means the law governing the formation and internal affairs of an organization.

(5) "Governing person" means a person who is entitled, alone or as part of a group, to manage and direct an organization's affairs under the organization's governing documents and governing law. The term includes:

(A) a member of the board of directors of a corporation or other organization;

(B) a general partner of a general or limited partnership;

(C) a manager of a limited liability company that is managed by its managers;

(D) a member of a limited liability company that is managed by its members;

(E) a trust manager of a real estate investment trust; and

(F) a trustee of a business trust.

(6) "Governmental entity" means:

(A) this state; or

(B) a political subdivision of this state, including a municipality, a county, or any kind of district.

2

Copy from re:SearchTX

(7)  "Internal affairs" means:

(A) the rights, powers, and duties of an organization's governing persons, officers, owners, and members; and

(B) matters relating to the organization's membership or ownership interests.

(8)  "Managerial official" means a governing person or officer.

(9)  "Officer" means a person elected, appointed, or designated as an officer of an organization by the organization's governing persons or governing documents.

(10)  "Organization" means a foreign or domestic entity or association, regardless of whether the organization is for profit or nonprofit.  The term includes:

(A)  a corporation;

(B)  a limited partnership;

(C)  a general partnership;

(D)  a limited liability partnership;

(E)  a limited liability company;

(F)  a business trust;

(G)  a real estate investment trust;

(H)  a joint venture;

(I)  a joint stock company;

(J)  a cooperative;

(K)  a bank;

(L)  a credit union;

(M)  a savings and loan association;

3

Copy from re:SearchTX

(N) an insurance company; and

(O) a series of a limited liability company or of another entity.

(11) "Owner" means an owner of an organization. The term includes:

(A) a shareholder or stockholder of a corporation or other organization;

(B) a general or limited partner of a partnership or an assignee of a partnership interest in a partnership;

(C) a member of, or an assignee of a membership interest in, a limited liability company; and

(D) a member of a nonprofit organization.

(12) "Ownership interest" means an owner's interest in an organization, including an owner's economic, voting, and management rights.

(13) "Publicly traded company" means an entity whose voting equity securities are listed on a national securities exchange registered with the United States Securities and Exchange Commission under Section 6, Securities Exchange Act of 1934 (15 U.S.C. Section 78f) and any entity that is majority owned or controlled by such an entity.

(14) "Qualified transaction" means a transaction, other than a transaction involving a loan or an advance of money or credit by a bank, credit union, or savings and loan institution, under which a party:

(A) pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at

4

Copy from re:SearchTX

least $10 million; or

(B) lends, advances, borrows, receives, is obligated to lend or advance, or is entitled to borrow or receive money or credit with an aggregate value of at least $10 million.

Sec. 25A.002. CREATION. The business court is a statutory court created under Section 1, Article V, Texas Constitution.

Sec. 25A.003. BUSINESS COURT JUDICIAL DISTRICT; DIVISIONS. (a) The judicial district of the business court is composed of all counties in this state.

(b) The business court is composed of divisions as provided by this section.

(c) The First Business Court Division is composed of the counties composing the First Administrative Judicial Region under Section 74.042(b).

(d) The Second Business Court Division is composed of the counties composing the Second Administrative Judicial Region under Section 74.042(c), subject to funding through legislative appropriations. The division is abolished September 1, 2026, unless reauthorized by the legislature and funded through additional legislative appropriations.

(e) The Third Business Court Division is composed of the counties composing the Third Administrative Judicial Region under Section 74.042(d).

(f) The Fourth Business Court Division is composed of the counties composing the Fourth Administrative Judicial Region under Section 74.042(e).

(g) The Fifth Business Court Division is composed of the

5

Copy from re:SearchTX

counties composing the Fifth Administrative Judicial Region under Section 74.042(f), subject to funding through legislative appropriations. The division is abolished on September 1, 2026, unless reauthorized by the legislature and funded through additional legislative appropriations.

(h) The Sixth Business Court Division is composed of the counties composing the Sixth Administrative Judicial Region under Section 74.042(g), subject to funding through legislative appropriations. The division is abolished on September 1, 2026, unless reauthorized by the legislature and funded through additional legislative appropriations.

(i) The Seventh Business Court Division is composed of the counties composing the Seventh Administrative Judicial Region under Section 74.042(h), subject to funding through legislative appropriations. The division is abolished on September 1, 2026, unless reauthorized by the legislature and funded through additional legislative appropriations.

(j) The Eighth Business Court Division is composed of the counties composing the Eighth Administrative Judicial Region under Section 74.042(i).

(k) The Ninth Business Court Division is composed of the counties composing the Ninth Administrative Judicial Region under Section 74.042(j), subject to funding through legislative appropriations. The division is abolished on September 1, 2026, unless reauthorized by the legislature and funded through additional legislative appropriations.

(l) The Tenth Business Court Division is composed of the

6

Copy from re:SearchTX

counties composing the Tenth Administrative Judicial Region under Section 74.042(k), subject to funding through legislative appropriations. The division is abolished on September 1, 2026, unless reauthorized by the legislature and funded through additional legislative appropriations.

(m) The Eleventh Business Court Division is composed of the counties composing the Eleventh Administrative Judicial Region under Section 74.042(l).

(n) This subsection and Subsections (d), (g), (h), (i), (k), and (l) expire September 1, 2026.

Sec. 25A.004. JURISDICTION AND POWERS. (a) Subject to Subsections (b), (c), (d), (e), and (f), the business court has the powers provided to district courts by Chapter 24, including the power to:

(1) issue writs of injunction, mandamus, sequestration, attachment, garnishment, and supersedeas; and

(2) grant any relief that may be granted by a district court.

(b) Subject to Subsection (c), the business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs:

(1) a derivative proceeding;

(2) an action regarding the governance, governing documents, or internal affairs of an organization;

(3) an action in which a claim under a state or federal

7

Copy from re:SearchTX

securities or trade regulation law is asserted against:

(A)   an organization;

(B)   a controlling person or managerial official of an organization for an act or omission by the organization or by the person in the person's capacity as a controlling person or managerial official;

(C)   an underwriter of securities issued by the organization; or

(D)   the auditor of an organization;

(4)   an action by an organization, or an owner of an organization, if the action:

(A)   is brought against an owner, controlling person, or managerial official of the organization; and

(B)   alleges an act or omission by the person in the person's capacity as an owner, controlling person, or managerial official of the organization;

(5)   an action alleging that an owner, controlling person, or managerial official breached a duty owed to an organization or an owner of an organization by reason of the person's status as an owner, controlling person, or managerial official, including the breach of a duty of loyalty or good faith;

(6)   an action seeking to hold an owner or governing person of an organization liable for an obligation of the organization, other than on account of a written contract signed by the person to be held liable in a capacity other than as an owner or governing person; and

(7)   an action arising out of the Business

Copy from re:SearchTX

Organizations Code.

(c) The business court has civil jurisdiction concurrent with district courts in an action described by Subsection (b) regardless of the amount in controversy if a party to the action is a publicly traded company.

(d) The business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $10 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs:

(1) an action arising out of a qualified transaction;

(2) an action that arises out of a contract or commercial transaction in which the parties to the contract or transaction agreed in the contract or a subsequent agreement that the business court has jurisdiction of the action, except an action that arises out of an insurance contract; and

(3) subject to Subsection (g), an action that arises out of a violation of the Finance Code or Business & Commerce Code by an organization or an officer or governing person acting on behalf of an organization other than a bank, credit union, or savings and loan association.

(e) The business court has civil jurisdiction concurrent with district courts in an action seeking injunctive relief or a declaratory judgment under Chapter 37, Civil Practice and Remedies Code, involving a dispute based on a claim within the court's jurisdiction under Subsection (b), (c), or (d).

(f) Except as provided by Subsection (h), the business court

9

Copy from re:SearchTX

has supplemental jurisdiction over any other claim related to a case or controversy within the court's jurisdiction that forms part of the same case or controversy. A claim within the business court's supplemental jurisdiction may proceed in the business court only on the agreement of all parties to the claim and a judge of the division of the court before which the action is pending. If the parties involved in a claim within the business court's supplemental jurisdiction do not agree on the claim proceeding in the business court, the claim may proceed in a court of original jurisdiction concurrently with any related claims proceeding in the business court.

(g) Unless the claim falls within the business court's supplemental jurisdiction, the business court does not have jurisdiction of:

(1) a civil action:

(A) brought by or against a governmental entity; or

(B) to foreclose on a lien on real or personal property;

(2) a claim arising out of:

(A) Subchapter E, Chapter 15, and Chapter 17, Business & Commerce Code;

(B) the Estates Code;

(C) the Family Code;

(D) the Insurance Code; or

(E) Chapter 53 and Title 9, Property Code;

(3) a claim arising out of the production or sale of a

10

Copy from re:SearchTX

farm product, as that term is defined by Section 9.102, Business & Commerce Code;

(4) a claim related to a consumer transaction, as that term is defined by Section 601.001, Business & Commerce Code, to which a consumer in this state is a party, arising out of a violation of federal or state law; or

(5) a claim related to the duties and obligations under an insurance policy.

(h) The business court does not have jurisdiction of the following claims regardless of whether the claim is otherwise within the court's supplemental jurisdiction under Subsection (f):

(1) a claim arising under Chapter 74, Civil Practice and Remedies Code;

(2) a claim in which a party seeks recovery of monetary damages for bodily injury or death; or

(3) a claim of legal malpractice.

Sec. 25A.005. JUDICIAL AUTHORITY. A business court judge has all powers, duties, immunities, and privileges of a district judge.

Sec. 25A.006. INITIAL FILING; REMOVAL AND REMAND. (a) An action within the jurisdiction of the business court may be filed in the business court. The party filing the action must plead facts to establish venue in a county in a division of the business court, and the business court shall assign the action to that division. Venue may be established as provided by law or, if a written contract specifies a county as venue for the action, as provided by the contract.

11

Copy from re:SearchTX

(b) If the business court does not have jurisdiction of the action, the court shall, at the option of the party filing the action:

(1) transfer the action to a district court or county court at law in a county of proper venue; or

(2) dismiss the action without prejudice to the party's rights.

(c) If, after an action is assigned to a division of the business court, the court determines that the division's geographic territory does not include a county of proper venue for the action, the court shall:

(1) if an operating division of the court includes a county of proper venue, transfer the action to that division; or

(2) if there is not an operating division of the court that includes a county of proper venue, at the option of the party filing the action, transfer the action to a district court or county court at law in a county of proper venue.

(d) A party to an action filed in a district court or county court at law that is within the jurisdiction of the business court may remove the action to the business court. If the business court does not have jurisdiction of the action, the business court shall remand the action to the court in which the action was originally filed.

(e) A party to an action filed in a district court or county court at law in a county of proper venue that is not within an operating division of the business court or the judge of the court in which the action is filed may not remove or transfer the action

12

Copy from re:SearchTX

to the business court.

(f) A party may file an agreed notice of removal at any time during the pendency of the action. If all parties to the action have not agreed to remove the action, the notice of removal must be filed:

(1) not later than the 30th day after the date the party requesting removal of the action discovered, or reasonably should have discovered, facts establishing the business court's jurisdiction over the action; or

(2) if an application for temporary injunction is pending on the date the party requesting removal of the action discovered, or reasonably should have discovered, facts establishing the business court's jurisdiction over the action, not later than the 30th day after the date the application is granted, denied, or denied as a matter of law.

(g) The notice of removal must be filed with the business court and the court in which the action was originally filed. On receipt of the notice, the clerk of the court in which the action was originally filed shall immediately transfer the action to the business court in accordance with rules adopted by the supreme court, and the business court clerk shall assign the action to the appropriate division of the business court.

(h) The filing of an action or a notice of removal in the business court is subject to Section 10.001, Civil Practice and Remedies Code.

(i) Removal of a case to the business court is not subject to the statutes or rules governing the due order of pleading.

13

Copy from re:SearchTX

(j) Removal of a case does not waive a defect in venue or constitute an appearance to determine personal jurisdiction.

(k) The judge of a court in which an action is filed may request the presiding judge for the court's administrative region to transfer the action to the business court if the action is within the business court's jurisdiction. The judge shall notify all parties of the transfer request and request a hearing on the transfer request. After a hearing on the request, the presiding judge may transfer the action to the business court if the presiding judge finds the transfer will facilitate the fair and efficient administration of justice. The business court clerk shall assign an action transferred under this subsection to the appropriate division of the business court.

(l) The business court judge on establishment of jurisdiction and venue over an action shall by order declare the county in which any jury trial for the action will be held as determined under Section 25A.015.

Sec. 25A.007. APPEALS. (a) Notwithstanding any other law and except as provided by Subsection (b) and in instances when the supreme court has concurrent or exclusive jurisdiction, the Fifteenth Court of Appeals has exclusive jurisdiction over an appeal from an order or judgment of the business court or an original proceeding related to an action or order of the business court.

(b) If the Fifteenth Court of Appeals is not created, an appeal from an order or judgment of the business court or an original proceeding related to an action or order of the business

14

Copy from re:SearchTX

court shall be filed in the court of appeals with appellate jurisdiction of civil cases for the county declared in an order under Section 25A.006(1).

(c) The procedure governing an appeal or original proceeding from the business court is the same as the procedure for an appeal or original proceeding from a district court.

Sec. 25A.008. QUALIFICATIONS OF JUDGE. (a) A business court judge must:

(1) be at least 35 years of age;

(2) be a United States citizen;

(3) have been a resident of a county within the division of the business court to which the judge is appointed for at least five years before appointment; and

(4) be a licensed attorney in this state who has 10 or more years of experience in:

(A) practicing complex civil business litigation;

(B) practicing business transaction law;

(C) serving as a judge of a court in this state with civil jurisdiction; or

(D) any combination of experience described by Paragraphs (A)-(C).

(b) A business court judge may not have had the judge's license to practice law revoked, suspended, or subject to a probated suspension.

Sec. 25A.009. APPOINTMENT OF JUDGES; TERM; PRESIDING JUDGE; EXCHANGE OF BENCHES. (a) The governor, with the advice and consent

15

Copy from re:SearchTX

of the senate, shall appoint:

> (1) two judges to each of the First, Third, Fourth, Eighth, and Eleventh Divisions of the business court; and

> (2) one judge to each of the Second, Fifth, Sixth, Seventh, Ninth, and Tenth Divisions of the business court.

(b) A business court judge shall serve for a term of two years, beginning on September 1 of every even-numbered year.

(c) A business court judge may be reappointed.

(d) Not later than the seventh day after the first day of a term, the business court judges by majority vote shall select a judge of the court to serve as administrative presiding judge for the duration of the term. If a vacancy occurs in the position of administrative presiding judge, the remaining business court judges shall select a judge of the court to serve as administrative presiding judge for the remainder of the unexpired term as soon as practicable.

(e) A business court judge shall take the constitutional oath of office required of appointed officers of this state and file the oath with the secretary of state.

(f) To promote the orderly and efficient administration of justice, the business court judges may exchange benches and sit and act for each other in any matter pending before the court.

Sec. 25A.010. VACANCY. If a vacancy occurs in an office of a business court judge, the governor, with the advice and consent of the senate, shall appoint, in the same manner as the original appointment, another person to serve for the remainder of the unexpired term.

16

Copy from re:SearchTX

Sec. 25A.011. JUDGE'S SALARY. The salary of a business court judge is the amount provided by Section 659.012 and shall be paid in equal monthly installments.

Sec. 25A.012. REMOVAL; DISQUALIFICATION AND RECUSAL. (a) A business court judge may be removed from office in the same manner and for the same reasons as a district judge.

(b) A business court judge is disqualified and subject to mandatory recusal for the same reasons a district judge is subject to disqualification or recusal in a pending case. Disqualification or recusal of a business court judge shall be governed by the same procedure as disqualification or recusal of a district judge.

Sec. 25A.013. PRIVATE PRACTICE OF LAW. A business court judge shall diligently discharge the duties of the office on a full-time basis and may not engage in the private practice of law.

Sec. 25A.014. VISITING JUDGE. (a) A retired or former judge or justice who has the qualifications prescribed by Section 25A.008 may be assigned as a visiting judge of a division of the business court by the chief justice of the supreme court. A visiting judge of a division of the business court is subject to objection, disqualification, or recusal in the same manner as a retired or former judge or justice is subject to objection, disqualification, or recusal if appointed as a visiting district judge.

(b) Before accepting an assignment as a visiting judge of a division of the business court, a retired or former judge or justice shall take the constitutional oath of office required of appointed officers of this state and file the oath with the secretary of

17

Copy from re:SearchTX

state.

Sec. 25A.015. JURY PRACTICE AND PROCEDURE; VENUE FOR JURY TRIAL. (a) A party in an action pending in the business court has the right to a trial by jury when required by the constitution.

(b) Subject to Subsection (d), a jury trial in a case filed initially in the business court shall be held in any county in which the case could have been filed under Section 15.002, Civil Practice and Remedies Code, as chosen by the plaintiff.

(c) Subject to Subsections (b) and (d), a jury trial in a case removed to the business court shall be held in the county in which the action was originally filed.

(d) A jury trial for a case in which a written contract specifies a county as venue for suits shall be held in that county.

(e) The parties and the business court judge may agree to hold the jury trial in any other county. A party may not be required to agree to hold the jury trial in a different county.

(f) The drawing of jury panels, selection of jurors, and other jury-related practice and procedure in the business court shall be the same as for the district court in the county in which the trial is held.

(g) Practice, procedure, rules of evidence, issuance of process and writs, and all other matters pertaining to the conduct of trials, hearings, and other business in the business court are governed by the laws and rules prescribed for district courts, unless otherwise provided by this chapter.

Sec. 25A.016. WRITTEN OPINIONS. The supreme court shall adopt rules for the issuance of written opinions by the business

18

Copy from re:SearchTX

court.

Sec. 25A.017. COURT LOCATION; STAFFING. (a) In this section, "remote proceeding" means a proceeding before the business court in which one or more of the participants, including a judge, party, attorney, witness, court reporter, or other individual attends the proceeding remotely through the use of technology.

(b) The administrative presiding judge of the business court shall manage administrative and personnel matters on behalf of the court. The administrative presiding judge of the business court shall appoint a clerk, whose office shall be located in Travis County in facilities provided by this state. The clerk shall:

(1) accept all filings in the business court; and

(2) fulfill the legal and administrative functions of a district clerk.

(c) Each business court judge shall maintain chambers in the county the judge selects within the geographic boundaries of the division to which the judge is appointed in facilities provided by this state. For purposes of this section, the Office of Court Administration of the Texas Judicial System may contract for the use of facilities with a county.

(d) Subject to Section 25A.015, a business court judge may hold court at any courtroom within the geographic boundaries of the division to which the judge is appointed as the court determines necessary or convenient for a particular civil action. To the extent practicable, a county using existing courtrooms and facilities shall accommodate the business court in the conduct of the court's hearings and other proceedings.

19

Copy from re:SearchTX

(e) The business court may conduct a proceeding other than a jury trial as a remote proceeding to facilitate the resolution of a matter before the court. The business court may not require a party or attorney to remotely attend a court proceeding in which oral testimony is heard, absent the agreement of the parties.

(f) The business court shall conduct a remote proceeding from a courtroom or the facilities provided to a business court judge by this state.

(g) The business court shall provide reasonable notice to the public that a proceeding will be conducted remotely and an opportunity for the public to observe the remote proceeding.

(h) In a county in which a division of the business court sits, the sheriff shall in person or by deputy attend the business court as required by the court. The sheriff or deputy is entitled to reimbursement from this state for the cost of attending the business court.

(i) The business court may appoint personnel necessary for the operation of the court, including:

(1) personnel to assist the clerk of the court;

(2) staff attorneys for the court;

(3) staff attorneys for each judge of the business court;

(4) court coordinators; and

(5) administrative assistants.

(j) Subject to Subsection (k), the court officials shall perform the duties and responsibilities of their offices and are entitled to the compensation, fees, and allowances prescribed by

Copy from re:SearchTX

law for the offices.

(k) All personnel, including the business court clerk, appointed under this section are employees of the Office of Court Administration of the Texas Judicial System and are state employees for all purposes, including accrual of leave time, insurance benefits, retirement benefits, and travel regulations.

Sec. 25A.0171. ADMINISTRATIVE ATTACHMENT TO OFFICE OF COURT ADMINISTRATION; REPORT. (a) The business court is administratively attached to the Office of Court Administration of the Texas Judicial System.

(b) The Office of Court Administration of the Texas Judicial System shall provide administrative support to the business court as necessary to enable the business court to carry out its duties under this chapter.

(c) The Office of Court Administration of the Texas Judicial System may employ personnel necessary to provide administrative support to the business court under this chapter.

(d) Only the business court may exercise the duties of the business court under this chapter. Except as otherwise provided by this chapter, the Office of Court Administration of the Texas Judicial System does not have any authority or responsibility related to the duties of the business court under this chapter.

(e) Not later than December 1 of each year, the Office of Court Administration of the Texas Judicial System shall submit to the legislature a report on the number and types of cases heard by the business court in the preceding year.

Sec. 25A.018. FEES. The supreme court shall set fees for

21

Copy from re:SearchTX

filings and actions in the business court in amounts sufficient to cover the costs of administering this chapter, taking into account fee waivers necessary for the interest of justice.

Sec. 25A.019. SEAL. The seal of the business court is the same as that provided by law for a district court except that the seal must contain the name "The Business Court of Texas."

Sec. 25A.020. RULES. (a) The supreme court shall adopt rules of civil procedure as the court determines necessary, including rules providing for:

(1) the timely and efficient removal and remand of cases to and from the business court; and

(2) the assignment of cases to judges of the business court.

(b) The business court may adopt rules of practice and procedure consistent with the Texas Rules of Civil Procedure and the Texas Rules of Evidence.

SECTION 2. Sections 659.012(a) and (e), Government Code, are amended to read as follows:

(a) Notwithstanding Section 659.011 and subject to Subsections (b) and (b-1):

(1) a judge of a district court or a division of the business court is entitled to an annual base salary from the state as set by the General Appropriations Act in an amount equal to at least $140,000, except that the combined base salary of a district judge or judge of a division of the business court from all state and county sources, including compensation for any extrajudicial services performed on behalf of the county, may not exceed the

22

Copy from re:SearchTX

amount that is $5,000 less than the maximum combined base salary from all state and county sources for a justice of a court of appeals other than a chief justice as determined under this subsection;

(2) a justice of a court of appeals other than the chief justice is entitled to an annual base salary from the state in the amount equal to 110 percent of the state base salary of a district judge as set by the General Appropriations Act, except that the combined base salary of a justice of the court of appeals other than the chief justice from all state and county sources, including compensation for any extrajudicial services performed on behalf of the county, may not exceed the amount that is $5,000 less than the base salary for a justice of the supreme court as determined under this subsection;

(3) a justice of the supreme court other than the chief justice or a judge of the court of criminal appeals other than the presiding judge is entitled to an annual base salary from the state in the amount equal to 120 percent of the state base salary of a district judge as set by the General Appropriations Act; and

(4) the chief justice or presiding judge of an appellate court is entitled to an annual base salary from the state in the amount equal to $2,500 more than the state base salary provided for the other justices or judges of the court, except that the combined base salary of the chief justice of a court of appeals from all state and county sources may not exceed the amount equal to $2,500 less than the base salary for a justice of the supreme court as determined under this subsection.

23

Copy from re:SearchTX

(e) For the purpose of salary payments by the state, the comptroller shall determine from sworn statements filed by the justices of the courts of appeals, [and] district judges, and business court judges that the required salary limitations provided by Subsection (a) are maintained. If the state base salary for a judge or justice prescribed by Subsection (a) combined with additional compensation from a county would exceed the limitations provided by Subsection (a), the comptroller shall reduce the salary payment made by the state by the amount of the excess.

SECTION 3. Section 837.001(a), Government Code, is amended to read as follows:

(a) Membership [Except as provided by Subsection (b), membership] in the retirement system is limited to persons who have never been eligible for membership in the Judicial Retirement System of Texas or the Judicial Retirement System of Texas Plan One and who at any time on or after the effective date of this Act are judges, justices, or commissioners of:

(1) the supreme court;

(2) the court of criminal appeals;

(3) a court of appeals;

(4) the business court;

(5) a district court; or

(6) [(5)] a commission to a court specified in this subsection.

SECTION 4. (a) The Texas Supreme Court has exclusive and original jurisdiction over a challenge to the constitutionality of this Act or any part of this Act and may issue injunctive or

24

Copy from re:SearchTX

declaratory relief in connection with the challenge.

(b) If the appointment of judges by the governor to the divisions of the business court under Section 25A.009, Government Code, as added by this Act, is held by the Texas Supreme Court as unconstitutional, the business court shall be staffed by retired or former judges or justices who are appointed to the court as provided by Section 25A.014, Government Code, as added by this Act.

SECTION 5. Except as otherwise provided by this Act, the business court is created September 1, 2024.

SECTION 6. (a) As soon as practicable after the effective date of this Act, the governor shall appoint judges to the First, Third, Fourth, Eighth, and Eleventh Business Court Divisions as required by Section 25A.009, Government Code, as added by this Act.

(b) On or before September 1, 2026, but not before July 1, 2026, the governor shall appoint judges to the Second, Fifth, Sixth, Seventh, Ninth, and Tenth Business Court Divisions as required by Section 25A.009, Government Code, as added by this Act.

SECTION 7. (a) Notwithstanding Chapter 25A, Government Code, as added by this Act, the business court is not created unless the legislature makes a specific appropriation of money for that purpose. For purposes of this subsection, a specific appropriation is an appropriation identifying the business court or an Act of the 88th Legislature, Regular Session, 2023, relating to the creation of a specialty trial court to hear certain cases or of the business court.

(b) Notwithstanding Section 25A.007(a), Government Code, as added by this Act, a court of appeals retains the jurisdiction the

25

Copy from re:SearchTX

court had on August 31, 2024, if the business court is not created as a result of Subsection (a) of this section.

SECTION 8.  The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024.

SECTION 9.  This Act takes effect September 1, 2023.

26

Copy from re:SearchTX



H.B. No. 19

_____
President of the Senate

_____
Speaker of the House

I certify that H.B. No. 19 was passed by the House on May 2, 2023, by the following vote:  Yeas 90, Nays 51, 1 present, not voting; and that the House concurred in Senate amendments to H.B. No. 19 on May 25, 2023, by the following vote:  Yeas 86, Nays 53, 1 present, not voting.

_____
Chief Clerk of the House

I certify that H.B. No. 19 was passed by the Senate, with amendments, on May 12, 2023, by the following vote:  Yeas 24, Nays 6.

_____
Secretary of the Senate

APPROVED: _6 - 9 - 23_____
           Date

_____
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
9 :00 PM O'CLOCK

JUN 0 9 2023

_____
Secretary of State

27

HGS PARTIES' RESPONSE TO THE COURT'S OCTOBER 2, 2024 ORDER - Page 35    **Supp. R. 141**

Copy from re:SearchTX

2001 Tex. Sess. Law Serv. Ch. 1090 (H.B. 2249) (VERNON'S)

VERNON'S TEXAS SESSION LAW SERVICE 2001

Seventy-Seventh Legislature, 2001 Regular Session

Additions are indicated by <<+ Text +>>; deletions by <<- Text ->>

Changes in tables are made but not highlighted.

CHAPTER 1090

H.B. No. 2249
CERTAIN SUITS AFFECTING THE PARENT-CHILD RELATIONSHIP

AN ACT relating to certain suits affecting the parent-child relationship.

Be it enacted by the Legislature of the State of Texas:

SECTION 1. Section 161.002(b), Family Code, is amended to read as follows:

<< TX FAMILY § 161.002 >>

(b) The rights of an alleged biological father may be terminated if:
 (1) after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160 <<- prior to the final hearing in the suit->>;
 (2) he has not registered with the paternity registry under Subchapter D, Chapter 160, and after the exercise of due diligence by the petitioner:
  (A) his identity and location are unknown; or
  (B) his identity is known but he cannot be located; or
 (3) he has registered with the paternity registry under Subchapter D, Chapter 160, but the petitioner's attempt to personally serve citation at the address provided to the registry and at any other address for the alleged father known by the petitioner has been unsuccessful, despite the due diligence of the petitioner.
 SECTION 2. Section 161.003(a), Family Code, is amended to read as follows:

<< TX FAMILY § 161.003 >>

 (a) The court may order termination of the parent-child relationship in a suit filed by the Department of Protective and Regulatory Services if the court finds that:
 (1) the parent has a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child;
 (2) the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will continue to render the parent unable to provide for the child's needs until the 18th birthday of the child;
 (3) the department has been the temporary or sole managing conservator of the child of the parent for <<+at least+>> <<-the->> six months preceding the <<+date of the hearing on the termination held in accordance with Subsection (c)+>> <<-filing of the petition->>;
 (4) the department has made reasonable efforts to return the child to the parent; and
 (5) the termination is in the best interest of the child.
 SECTION 3. Section 161.2011(a), Family Code, is amended to read as follows:

<< TX FAMILY § 161.2011 >>

(a) <<+A parent whose rights are subject to termination in a suit affecting the parent-child relationship and against whom criminal charges are filed that directly relate to the grounds for which termination is sought may file a motion requesting a continuance of the final trial in the suit until the criminal charges are resolved.+>> The court <<+may grant the motion only if the court finds that a continuance+>> <<-shall not proceed to final trial in a suit to terminate the parent-child relationship during the time that any criminal charges filed against a parent whose rights are subject to termination in the suit are pending if the criminal charges are directly related to the grounds for which termination of the parent's rights are sought unless it determines that it->> is in the best interest of the child. <<+ Notwithstanding any continuance granted, the court shall conduct status and permanency hearings with respect to the child as required by Chapter 263 and shall comply with the dismissal date under Section 263.401.+>>

SECTION 4. Section 161.203, Family Code, is amended to read as follows:

<< TX FAMILY § 161.203 >>

Sec. 161.203. DISMISSAL OF PETITION. A suit to terminate may not be dismissed nor may a nonsuit be taken unless the dismissal or nonsuit is approved by the court. <<+The dismissal or nonsuit approved by the court is without prejudice.+>>

SECTION 5. Section 161.204, Family Code, is amended to read as follows:

<< TX FAMILY § 161.204 >>

Sec. 161.204. TERMINATION BASED ON AFFIDAVIT OF WAIVER OF INTEREST. In a suit for termination, the court may render an order terminating <<+the parent-child relationship+>> <<-all legal relationships and rights which exist or may exist->> between a child and a man who has signed an affidavit of waiver of interest in the child, if the termination is in the best interest of the child.

SECTION 6. Section 161.205, Family Code, is amended to read as follows:

<< TX FAMILY § 161.205 >>

Sec. 161.205. ORDER DENYING TERMINATION. If the court does not order termination of the parent-child relationship, <<+the court+>> <<-it->> shall:

(1) <<+deny+>> <<-dismiss->> the petition; or

(2) render any order in the best interest of the child.

SECTION 7. Section 263.304, Family Code, is amended to read as follows:

<< TX FAMILY § 263.304 >>

Sec. 263.304. INITIAL PERMANENCY HEARING; TIME. <<+(a)+>> Not later than the 180th day after the date the court renders a temporary order appointing the department as temporary managing conservator of a child, the court shall hold a permanency hearing to review the status of, and permanency plan for, the child to ensure that a final order consistent with that permanency plan is rendered before the date for dismissal of the suit under this chapter.

<<+(b) The court shall set a final hearing under this chapter on a date that allows the court to render a final order before the date for dismissal of the suit under this chapter. Any party to the suit or an attorney ad litem for the child may seek a writ of mandamus to compel the court to comply with the duties imposed by this subsection.+>>

SECTION 8. Sections 263.401(b) and (c), Family Code, are amended to read as follows:

<< TX FAMILY § 263.401 >>

(b) <<+The+>> <<-On or before the time described by Subsection (a) for the dismissal of the suit, the->> court may <<+retain +>> <<-extend the court's jurisdiction of->> the suit <<+on the court's docket+>> for a period <<+not to exceed+>> <<-stated in the extension order, but not longer than->> 180 days after the time described by Subsection (a), if the court <<+finds that+>> <<-has->> continuing <<-jurisdiction of the suit and->> the appointment of the department as temporary managing conservator

is in the best interest of the child. If the court <<+retains the suit on the court's docket+>> <<-grants an extension->>, the <<+ court shall render an+>> <<-extension->> order <<+in which the court+>> <<-must also->>:

(1) <<+schedules+>> <<-schedule->> the new date for dismissal of the suit <<+not later than the 180th day after the time described by Subsection (a)+>>; <<-and->>

(2) <<+makes+>> <<-make->> further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit<<+; and+>>

<<+(3) sets a final hearing on a date that allows the court to render a final order before the required date for dismissal of the suit under this subsection+>>.

(c) If the court grants an extension <<+but does not+>><<-, the court shall->> render a final order or dismiss the suit on or before the <<+ required+>> date <<+for dismissal under Subsection (b), the court shall dismiss the suit. The court+>> <<- specified in the extension order and->> may not grant an additional extension <<+that extends the suit beyond the required date for dismissal under Subsection (b)+>>.

SECTION 9. Subchapter E, Chapter 263, Family Code, is amended by amending Sections 263.402, 263.403, and 263.404 and adding Sections 263.405 and 263.406 to read as follows:

<< TX FAMILY § 263.402 >>

Sec. 263.402. <<+LIMIT ON EXTENSION; WAIVER. (a) The parties to a suit under this chapter may not extend the deadlines set by the court under this subchapter by agreement or otherwise.+>>

<<+(b) A party to a suit under this chapter who fails to make a timely motion to dismiss the suit or to make a motion requesting the court to render a final order before the deadline for dismissal under this subchapter waives the right to object to the court's failure to dismiss the suit. A motion to dismiss under this subsection is timely if the motion is made before the department has introduced all of the department's evidence, other than rebuttal evidence, at the trial on the merits.+>>

<< TX FAMILY § 263.403 >>

<<+Sec. 263.403.+>> MONITORED RETURN OF CHILD TO PARENT. (a) Notwithstanding Section 263.401, the court may retain jurisdiction and not dismiss the suit or render a final order as required by that section if the court renders a temporary order that:

(1) finds that retaining jurisdiction under this section is in the best interest of the child;

(2) orders the department to return the child to the child's parent;

(3) orders the department to continue to serve as temporary managing conservator of the child; and

(4) orders the department to monitor the child's placement to ensure that the child is in a safe environment.

(b) If the court renders an order under this section, the court shall:

(1) include in the order specific findings regarding the grounds for the order; and

(2) schedule a new date, not later than the 180th day after the date the temporary order is rendered, for dismissal of the suit.

(c) If a child placed with a parent under this section must be moved from that home by the department before the dismissal of the suit or the rendering of a final order, the court shall, at the time of the move, schedule a new date for dismissal of the suit. The new dismissal date may not be later than the original dismissal date established under Section 263.401 or the 180th day after the date the child is moved under this subsection, whichever date is later.

(d) If the court renders an order under this section, the court must include in the order specific findings regarding the grounds for the order.

<< TX FAMILY § 263.404 >>

Sec. <<+263.404+>> <<-263.403->>. FINAL ORDER APPOINTING DEPARTMENT AS MANAGING CONSERVATOR WITHOUT TERMINATING PARENTAL RIGHTS. (a) The court may render a final order appointing the department as managing conservator of the child without terminating the rights of the parent of the child if the court finds that:

(1) appointment of a parent as managing conservator would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development; and

(2) it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator.

(b) In determining whether the department should be appointed as managing conservator of the child without terminating the rights of a parent of the child, the court shall take the following factors into consideration:

(1) that the child will reach 18 years of age in not less than three years;

(2) that the child is 12 years of age or older and has expressed a strong desire against termination or being adopted;

(3) that the child has special medical or behavioral needs that make adoption of the child unlikely; and

(4) the needs and desires of the child.

<< TX FAMILY § 263.405 >>

<<+Sec. 263.405. APPEAL OF FINAL ORDER. (a) An appeal of a final order rendered under this subchapter is governed by the rules of the supreme court for accelerated appeals in civil cases and the procedures provided by this section. The appellate court shall render its final order or judgment with the least possible delay.+>>

<<+(b) Not later than the 15th day after the date a final order is signed by the trial judge, a party intending to appeal the order must file with the trial court a statement of the point or points on which the party intends to appeal. The statement may be combined with a motion for a new trial.+>>

<<+(c) A motion for a new trial, a request for findings of fact and conclusions of law, or any other post-trial motion in the trial court does not extend the deadline for filing a notice of appeal under Rule 26.1(b), Texas Rules of Appellate Procedure, or the deadline for filing an affidavit of indigence under Rule 20, Texas Rules of Appellate Procedure.+>>

<<+(d) The trial court shall hold a hearing not later than the 30th day after the date the final order is signed to determine whether:+>>

<<+(1) a new trial should be granted;+>>

<<+(2) a party's claim of indigence, if any, should be sustained; and+>>

<<+(3) the appeal is frivolous as provided by Section 13.003(b), Civil Practice and Remedies Code.+>>

<<+(e) If a party claims indigency and requests the appointment of an attorney, the court shall require the person to file an affidavit of indigency and shall hear evidence to determine the issue of indigency. If the court does not render a written order denying the claim of indigence or requiring the person to pay partial costs before the 36th day after the date the final order being appealed is signed, the court shall consider the person to be indigent and shall appoint counsel to represent the person.+>>

<<+(f) The appellate record must be filed in the appellate court not later than the 60th day after the date the final order is signed by the trial judge, unless the trial court, after a hearing, grants a new trial or denies a request for a trial court record at no cost.+>>

<<+(g) The appellant may appeal the court's order denying the appellant's claim of indigence or the court's finding that the appeal is frivolous by filing with the appellate court the reporter's record and clerk's record of the hearing held under this section, both of which shall be provided without advance payment, not later than the 10th day after the date the court makes the decision. The appellate court shall review the records and may require the parties to file appellate briefs on the issues presented, but may not hear oral argument on the issues. The appellate court shall render appropriate orders after reviewing the records and appellate briefs, if any.+>>

<<+(h) Except on a showing of good cause, the appellate court may not extend the time for filing a record or appellate brief.+>>

<< TX FAMILY § 263.406 >>

Sec. <<+263.406+>> <<-263.404->>. COURT INFORMATION SYSTEM. The Office of Court Administration of the Texas Judicial System shall consult with the courts presiding over cases brought by the department for the protection of children to develop an information system to track compliance with the requirements of this subchapter for the timely disposition of those cases.

<< Note: TX FAMILY § 263.405 >>

SECTION 10. (a) Except as provided by Subsection (b) of this section, the changes in law made by this Act apply to a pending suit affecting the parent-child relationship regardless of whether the suit was filed before, on, or after the effective date of this Act.

(b) Section 263.405, Family Code, as added by this Act, applies only to an appeal of a final order under Subchapter E, Chapter 263, Family Code, as amended by this Act, filed on or after the effective date of this Act. An appeal of a final order under

Subchapter E, Chapter 263, Family Code, filed before the effective date of this Act is governed by the law in effect on the date the appeal was filed, and the former law is continued in effect for that purpose.

SECTION 11. This Act takes effect September 1, 2001.

Passed by the House on April 18, 2001, by a non-record vote; passed by the Senate on May 22, 2001: Yeas 30, Nays 0, 1 present, not voting.

Approved June 15, 2001.

Effective September 1, 2001.

TX LEGIS 1090 (2001)

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

## CHAPTER 490

### H.B. No. 410

AN ACT

relating to the property interests of spouses in connection with certain separate and community property.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Subchapter A, Chapter 3, Family Code, is amended by adding Sections 3.007 and 3.008 to read as follows:

*Sec. 3.007. PROPERTY INTEREST IN CERTAIN EMPLOYEE BENEFITS. (a) A spouse who is a participant in a defined benefit retirement plan has a separate property interest in the monthly accrued benefit the spouse had a right to receive on normal retirement age, as defined by the plan, as of the date of marriage, regardless of whether the benefit had vested.*

*(b) The community property interest in a defined benefit plan shall be determined as if the spouse began to participate in the plan on the date of marriage and ended that participation on the date of dissolution or termination of the marriage, regardless of whether the benefit had vested.*

*(c) The separate property interest of a spouse in a defined contribution retirement plan may be traced using the tracing and characterization principles that apply to a nonretirement asset.*

*(d) A spouse who is a participant in an employer-provided stock option plan or an employer-provided restricted stock plan has a separate property interest in the options or restricted stock granted to the spouse under the plan as follows:*

*(1) if the option or stock was granted to the spouse before marriage but required continued employment during marriage before the grant could be exercised or the restriction removed, the spouse's separate property interest is equal to the fraction of the option or restricted stock in which the numerator is the period from the date the option or stock was granted until the date of marriage and the denominator is the period from the date the option or stock was granted until the date the grant could be exercised or the restriction removed; and*

*(2) if the option or stock was granted to the spouse during the marriage but required continued employment after marriage before the grant could be exercised or the restriction removed, the spouse's separate property interest is equal to the fraction of the option or restricted stock in which the numerator is the period from the date of dissolution or termination of the marriage until the date the grant could be exercised or the restriction removed and the denominator is the period from the date the option or stock was granted until the date the grant could be exercised or the restriction removed.*

*(e) The computation described by Subsection (d) applies to each component of the benefit requiring varying periods of employment before the grant could be exercised or the restriction removed.*

*(f) The characterization of the marital property interest in an option or restricted stock described by Subsection (d) must be recalculated if, after the initial division of the option or stock, the vesting occurs on a date earlier than the vesting date stated in the original grant of the option or stock. The recalculation required by this subsection must adjust for the shortened vesting period and applies to options and stock granted before and during the marriage.*

*Sec. 3.008. PROPERTY INTEREST IN CERTAIN INSURANCE PROCEEDS. (a) Insurance proceeds paid or payable that arise from a casualty loss to property during marriage are characterized in the same manner as the property to which the claim is attributable.*

*(b) If a person becomes disabled or is injured, any disability insurance payment or workers' compensation payment is community property to the extent it is intended to replace earnings lost while the disabled or injured person is married. To the extent that any*

*insurance payment or workers' compensation payment is intended to replace earnings while the disabled or injured person is not married, the recovery is the separate property of the disabled or injured spouse.*

SECTION 2.   The changes in law made by this Act apply:

(1) to a suit for dissolution of a marriage pending before a trial court on or filed on or after the effective date of this Act; and

(2) with respect to Section 3.007, Family Code, as added by this Act, to the estate of a person who dies on or after the effective date of this Act.

SECTION 3.   This Act takes effect September 1, 2005.

Passed by the House on April 22, 2005, by a non-record vote; passed by the Senate on May 24, 2005: Yeas 31, Nays 0.

Approved June 17, 2005.

Effective September 1, 2005.

---

## CHAPTER 491

### H.B. No. 422

#### AN ACT

relating to park and recreation districts.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1.   Section 324.046(d), Local Government Code, is amended to read as follows:

(d) The board shall hold its meetings at a public place in *a county in which at least part of* the district *is located.*

SECTION 2.   Section 324.062(a), Local Government Code, is amended to read as follows:

(a) The board may employ managers, secretaries, stenographers, bookkeepers, accountants, technical experts, and *any* other *support personnel or agents the board considers necessary* [permanent or temporary agents and employees it requires].

SECTION 3.   Section 324.064(b), Local Government Code, is amended to read as follows:

(b) If the contract is for *an amount* [$15,000 or] less *than or equal to the amount in Section 262.023,* the board may enter into the contract without advertisement. If the contract is for more than *that amount* [$15,000], the contract is subject to the bidding provisions for contracts applicable to the county.

SECTION 4.   Section 324.095(a), Local Government Code, is amended to read as follows:

(a) Through revenue bonds or any other revenue sources, the district may not purchase a river access location except for use as a:

(1) sanitary facility;

(2) litter receptacle;

(3) drinking water facility;

(4) parking lot;

(5) road or trail;

(6) river ingress or egress facility;

(7) information booth; [or]

(8) tax collection facility;

*(9) visitor's center; or*

*(10) district office.*

SECTION 5.   Section 324.099(b), Local Government Code, is amended to read as follows:

(b) The taxes that a district may levy apply only within the district and are:

1354

FILE COPY



**Chief Justice**
SCOTT BRISTER

**Justices**
SCOTT FIELD
APRIL FARRIS

**Clerk**
CHRISTOPHER A. PRINE

# Fifteenth Court of Appeals

P.O. Box 12852, AUSTIN, TEXAS 78711
www.txcourts.gov/15thcoa.aspx/
512-463-1610

Monday, December 30, 2024

David S. Coale
Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Ave Ste 2700
Dallas, TX 75201-7919
* DELIVERED VIA E-MAIL *

Barry Barnett
5956 Sherry Ln Ste 2000
Dallas, TX 75225-8046
* DELIVERED VIA E-MAIL *

RE:     Court of Appeals Number:     15-24-00127-CV
        Trial Court Case Number:     24-BC01B-0007

Style:  Synergy Global Outsourcing, LLC
        v. Hinduja Global Solutions, Inc., and HGS Healthcare, LLC

        Please be advised that on this date, the seven-volume clerk's record has been received and filed. If the clerk's record is incomplete, appellant or any other party may seek to supplement the record. *See* Tex. R. App. P. 34.6(d). **If there is no reporter's record or the reporter's record has already been filed, appellant's brief is due 30 days (20 days in accelerated appeals) from the date of this notice.**

Sincerely,

Christopher A. Prine, Clerk

cc:     Beverly Crumley (DELIVERED VIA E-MAIL)
        Michael K. Hurst (DELIVERED VIA E-MAIL)

**Supp. R. 149**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Lindsey on behalf of Barry Barnett
Bar No. 1778700
llindsey@susmangodfrey.com
Envelope ID: 96660600
Filing Code Description: Response
Filing Description: Response in Opposition to Petition for Writ of Mandamus
Status as of 1/28/2025 7:21 AM CST

Associated Case Party: Synergy Global Outsourcing, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David S.Coale | | dcoale@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |
| Kay Ridenour | | kridenour@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |
| Beverly Congdon | | bcongdon@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |
| Tonia Ashworth | | tashworth@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |
| Maria Gonzalez | | mgonzalez@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |
| Greg Brassfield | | gbrassfield@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |
| Leo Park | | lpark@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |
| Gina Flores | | gflores@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |
| Daniela Vera Holmes | | dholmes@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |
| Ronni Bracken | | rbracken@lynnllp.com | 1/27/2025 7:05:52 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barry Barnett | 1778700 | bbarnett@susmangodfrey.com | 1/27/2025 7:05:52 PM | SENT |
| Ophelia Camina | 3681500 | ocamina@susmangodfrey.com | 1/27/2025 7:05:52 PM | SENT |
| Bill Whitehill | | BCDivision1B@txcourts.gov | 1/27/2025 7:05:52 PM | SENT |
| Ravi Bhalla | | rbhalla@susmangodfrey.com | 1/27/2025 7:05:52 PM | SENT |
| Lisa Lindsey | | llindsey@susmangodfrey.com | 1/27/2025 7:05:52 PM | SENT |
| Jeffrey Zerda | | jzerda@susmangodfrey.com | 1/27/2025 7:05:52 PM | SENT |